UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          *18-12137(JPC)(JLC)*

---

MELISSA KAYE,


                              PLAINTIFF,
                -against-


NEW YORK CITY HEALTH AND HOSPITALS CORPORATION;
ELIZABETH FORD; ABHISHEK JAIN; JONATHAN WANGEL; and
PATRICIA YANG ( as aiders and abettors)


                              DEFENDANTS.

---

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL THE PRODUCTION OF ESI AND DISCOVERY

---

*Duly Submitted by:*
Sᴘᴇᴄɪᴀʟ Hᴀɢᴀɴ, Esǫ.
Aᴛᴛᴏʀɴᴇʏ ꜰᴏʀ **MELISSA KAYE, MD.**
196-04 Hollis Avenue
Saint Albans, New York 11412
(917) 337-2439 (Telephone)
special@haganlawoffices.net

---

**TABLE OF CONTENTS**

|  | Page(s) |
|---|---|
| TABLE OF AUTHORITIES | 3 |
| I) PRELIMINARY STATEMENT | 4-5 |
| II) ARGUMENT | 5-23 |
| III) CONCLUSION | 23 |

**TABLE OF AUTHORITIES**

|  | Page(s) |
|---|---|
| Brown v. City of New York, 15-CV-4488 (KAM)(RER), 2018 Dist. LEXIS 108702 (E.D.N.Y. June 28, 2018) | 18 |
| Cole v. Towers Perrin Forster & Crosby, 256 F.R. D. 79, (D.Conn. 2009) | 5 |
| Martinez v. City of New York, 330 F.R.D. 60, 89 (E.D.N.Y. March 18, 2019) | 18 |
| Phillips v. City of New York, 15 CV 1795(JBW)(CLP), 2016 Dist. LEXIS 199167 (E.D.N.Y. Jan. 8, 2016) | 5 |
| Shim-Larkin v. City of New York, 16 CV 6099 (AJN)(KNF), 2020 U.S. Dist. LEXIS 168263 at * 51 (S.D.N.Y. Sept. 14, 2020) | 18 |

## PRELIMINARY STATEMENT

Plaintiff submits this reply memorandum in support of her motion to compel and her motion for sanctions.  Defendants' opposition to Plaintiff's motion should be denied. Defendants' opposition fails to articulate a basis sufficient to meet their burden for resisting discovery.

Defendants have failed to adduce arguments or evidence to show that Plaintiff's requests are disproportionate, irrelevant, unnecessary or burdensome.  Counsel has failed to adduce evidence to refute that her failure to produce non-party Deponent Patsos was not willful and intentional.  From the discussion herein, Plaintiff's motions should be granted. Defendants either avoid addressing Plaintiff's arguments, mischaracterize the discovery demands, or makes conclusory assertions that Plaintiff's requests are unnecessary or irrelevant. Precedent is clear, the burden is on the resisting party and again Defendants have not met their burden for resisting all of discovery disputes addressed herein.

Counsel has an extensive history of obstructing discovery.  She has been the subject of numerous motions to compel and numerous motions for sanctions.  For example, as recently as today, in the matter she referenced to justify her failure to produce Ms. Patsos, Counsel was sanctioned for her conduct during the course of a 30(b)(6) deposition.  Local 3621 et. al.  v. City of New York, et.. al., 18-CV-4476 (SLC) (ECF. Dkt. 229)  In that matter, Counsel made numerous objections and coached the deponent.  The Court finally sanctioned Counsel off the record, when she refused an order to have deponent answer a number of questions.

Counsel also has repeatedly refused to comply with the Court's orders without good cause. She has either ignored them altogether, failed to provide any explanation for doing so, or openly defied the Judges she has appeared in front of outright. In this matter, Counsel refused to participate in the drafting of a joint letter to Judge Cronan. As per the Notice of Re-Assignment, the parties were supposed to submit the letter together. Plaintiff sought out Counsel's contribution and again she was ignored. Ultimately, Plaintiff submitted the letter on her own. (ECF. Dkt. 110) Even in the briefing schedule for the motion herein, Counsel simply failed to adhere to the Court's order as to when she should respond to Plaintiff's brief. Instead, Counsel chose not to respond at all and did not do so until she was prompted by the Court to respond on November 12, 2020.

Based on the arguments and exhibits in her opening brief and the reply herein, Dr. Kaye respectfully asks that her motions to compel and for sanctions be granted. In the context of her motion for sanctions, Dr. Kaye seeks the lesser sanction of the costs associated with the stenographer's fees. However, in order to ensure that Counsel does not continue to needlessly multiply the breadth of the proceedings, Plaintiff also requests that a formal ruling be entered on the record to deter her behavior going forward. Plaintiff also seeks any additional relief that the Court deems fit and proper.

## ARGUMENT

1. **Defendants Fail to Meet the Standard for Resisting Discovery**

Parties may pursue the discovery of any non-privileged matter that is relevant and proportional to the subject matter involved in the pending litigation. Phillips v. City of New York, 15 CV 1795(JBW)(CLP), 2016 Dist. LEXIS 199167, at *6-7 (E.D.N.Y. Jan. 8, 2016) Although

the information sought need not be admissible at trial, as long as the discovery may reasonably appear to lead to the discovery of admissible evidence, such discovery has been found permissible.  Id.  Therefore, the party resisting discovery bears the burden of showing why discovery should be denied. Cole v. Towers Perrin Forster & Crosby, 256 F.R. D. 79, 80 (D.Conn. 2009)  Defendants' opposition fails to meet this burden.

2.  **Defendants Fail to Meet their Burden for Resisting Production of  ESI and Recordings Pertaining to the Memo from the Office of Corporate Compliance**

Defendants fail to explain how Plaintiff's requests will not lead to the production of relevant discovery; Defendants instead make the conclusory assertion that Dr. Kaye was not disciplined.  There are triable issues of fact as to whether the Office of Corporate Compliance's investigation was an adverse employment action in retaliation for Dr. Kaye's testimony and protected activities.

Dr. Kaye contends that the Memorandum from the Office of Corporate Compliance was indeed disciplinary and punitive.  She also asserts that it could be used as a basis for a complaint to the Medical Board, therefore potentially placing her medical license in jeopardy. In support of her position, Dr. Kaye references two emails from the named Defendants that pertain to Ms. Patsos's report.  **(Exhibit 1: Email from Mr. Wangel to Ms. Patsos dated March 20, 2019, ESI2686-ESI2687 and Exhibit 2:  Email from Dr. Ford to Ms. Yang dated May 9, 2019 ESI2804)**  In the email from Dr. Ford to Ms. Yang, Defendant Ford clearly stated that she would "follow up with Ms. Yang on Monday regarding discipline." In addition to these emails, in yet another email from Dr. Ford's supervisor, Dr. MacDonald, the subject of the email was: "did we complete the discipline."  (**Exhibit 3:  Email from Dr. MacDonald to Dr. Ford dated June 18,**

**2019 ESI2946)** Dr. MacDonald was Dr. Ford's supervisor, he was second in command to Ms. Yang.

Accordingly for purposes of any pre-trial discussions, the record should be viewed in the light most favorable of the party asserting any factual claims. Dr. Kaye contends that Defendants sought to manufacture grounds for her termination after she testified at the February 7, 2019 730 Hearing. By that time, Dr. Kaye had repeatedly complained about CHS's interference with the administration of 730 Examinations. She further contends that the timing of the correspondence suggests retaliatory intent and motive. The initial email from Mr. Wangel was about six weeks after her testimony. Additionally, Ms. Patsos's investigation took place 3 months after her testimony.

A reasonable trier of fact could conclude that an instruction for remediation to a Forensic Psychiatrist who administered forensic evaluations over the course of 20 years is in fact a punitive adverse employment action. Additionally they could determine that Defendants' position that subsequent instances of recording would lead to discipline, and the implementation of a policy to that effect were also indicative of punitive intent. Further, as discussed in the opening brief, the requested information is clearly relevant. **(Exhibit 4: ¶ 6 of the Amended Complaint stated that the Office of Corporate Compliance fabricated disciplinary charges against her after she filed and served the lawsuit herein)** Defendants fail to adduce any evidence to refute the referenced multiple emails from the named Defendants that in fact stated that the Corporate Compliance Memorandum was disciplinary. A reasonable juror could rule in favor of Plaintiff based on the written words of Dr. MacDonald and Dr. Ford alone.

**3. Defendants Have Failed to Meet their Burden for Resisting the Production of the Requested Hearing Transcripts, Recordings and Ms. Patsos's Final Report to CEO Dr. Katz**

Defendants made a partial and self-serving production of discovery in response to Plaintiff's request for the information Ms. Patsos relied upon to conduct her investigation. Defendants produced the second 730 Examination report that Dr. Kaye wrote on September 28, 2018. They also produced some of the journal articles that Ms. Patsos relied upon when she wrote her report. If Defendants' position is to be given any weight, why would they only produce the documents that bolstered their position and not the other documents and recordings? Why are the documents that Defendants produced relevant and proportional to the needs of the case, and not the documents requested by Dr. Kaye? Again, Defendants have failed to meet their burden for resisting production.

The requested discovery is relevant and proportional to the needs of the case for the following reasons. Dr. Kaye should have the first 730 Examination she conducted with the Defendant on March 12, 2018,. The March 12, 2018 exam was more comprehensive since it was the first time she had evaluated the inmate. The March 12, 2018 exam and the recordings contain information that refute Ms. Patsos's assertion that Dr. Kaye should be remediated. Dr. Kaye made copies of the recordings and examinations, therefore they are in Defendants' custody, possession and control. The March 12, 2018 and recording will clearly show that Dr. Kaye complied with U.S. v. Dusky. However, without access to this discovery the record will inaccurately be limited to the follow up less thorough examination administered on September 28, 2018. This Court should not allow Defendants to limit discovery in such a fashion.

Dr. Kaye should also have the hearing transcripts for all of the 730 examinations associated with this inmate. The record may contain evidence on how the other examiners administered their exams. Again, if Ms. Patsos relied upon these examinations in her investigation they clearly would be relevant. The examinations of Dr. Charder, Dr. Brayton, Dr. Mullan and Dr. Winkler are all relevant for purposes of comparison and for gaging Dr. Kaye's need for remediation. For example, if a forensic evaluator who had been on the job for less than a year had written a superior to Dr. Kaye then Defendants' position would have merit. However, as it stands there are triable issues of fact as to whether the evaluations of Dr. Brayton and Dr. Mullan were in fact superior and were in fact the product of pressure from CHS management to find the inmate fit. Ultimately, this discovery is relevant for Plaintiff's claims of retaliatory pretext and her claim that the memo was one of a series of material adverse employment actions designed to force her constructive discharge from CHS.

Defendants should also be compelled to produce the investigatory file and the final report that Ms. Patsos submitted to CEO Dr. Katz. The CEO/President of H + H has ultimate authority over the Office of Corporate Compliance/Ms. Patsos **(Exhibit 5: Office of Corporate Compliance Operating Procedure p. 18 Section 9(C ))** Defendants production to date shows that Ms. Patsos maintained some of the documents required in the Corporate Compliance Policy's Operating procedure. Contrary to Defendants' assertions however, Ms. Patsos would also be obligated to produce the following documents, not just the self-serving productions that Defendants have produced to date:

- Documentation pertaining to the investigatory process;

- Copies of Ms. Patsos's interview notes;

- Witness log  **(Exhibit 5:  Pgs. 37-38)**; and

- Final Report

Again, Defendants made a partial self-serving production of the Report Summary without any further explanation.  They have not stated that a final report does not exist, logically speaking it would make no sense for Ms. Patsos to entitle the document to Ms. Yang as a Summary if in fact there wasn't a final report**.  (Exhibit 6: Summary Compliance Memo dated May 9, 2019 ESI2797-ESI2800)**

4. **Defendants' Deficient Production of Salary Information**

The parties disagree about their production/disclosure of the forensic evaluators' salaries.  Plaintiff's opening brief sought the production of Dr. Winkler's salary.  Defendants' current production redacts Dr. Winkler's salary.  Counsel's brief fails to address this deficiency. Additionally, the discovery demands requested the office and official titles for all of the forensic evaluators from 2015 to present,   Defendants have not provided a complete list of all of the evaluators along with all of their respective titles both internally and externally.  Again outside of Defendants' assertions to the contrary, they have not adduced any record evidence to support their opposition.  As such, Plaintiff seeks the Court's intervention to procure compliance.

5. **Defendants' Incomplete Production of ESI and Failure to Comply with the Court's Order at the December 4, 2019 Status Hearing; Pursuant to the Status Hearing Plaintiff Seeks an ESI Protocol Issued by the Court**

a. *Plaintiff's Request that Defendants Certify Collection of ESI from all Servers for the time Period 2015 to 2020*

Defendants mischaracterize and avoid discussion of their production of emails and ESI from all of the servers for the time period and custodians prescribed by this Court.  Plaintiff's

opening brief specifically stated that ESI was hosted on multiple separate servers.  Dr. Kaye's

emails were initially hosted on Bellevue's servers.  Defendants Wangel and Yang also had emails

on the servers for the Office of Mental Health and Hygiene.  Dr. Kaye disputes Ms. Yang's

assertion that she only became involved with the Court clinics in July 2018.  It is Dr. Kaye's

position that Ms. Yang and Mr. Wangel had begun to interfere and influence the administration

of examinations as early as 2015, while they were still at their prior agency.

As a  whole on this point, Defendants' response does not address or certify that ESI was

collected from **_all_** of the involved servers from 2015 to 2020.  As stated in the opening brief, ESI

was ordered from Defendant Yang from 2015 to 2020.  Defendants only produced emails for

Defendant Yang and Wangel from one server, after they allegedly assumed formal

responsibility for the clinics in 2018.  ESI was also ordered for Dr. Kaye from 2015 to present,

again Defendants did not produce any emails from 2015 to 2018 after the transition was made

from GroupWise to Outlook.

Accordingly, Plaintiff has sought certification from Defendants that they have collected

emails from all of the servers that hosted the custodians' emails. If indeed Defendants have

collected emails from the Bellevue server, from the Office of Mental Health where Defendants

Yang and Wangel worked and from HHC/CHS, then Defendants should not have a problem

making any certification to this effect.

> b. *Defendants Fail to Comply with this Court's Order to  Collaborate  on Search Terms and to Disclose the Methodology Used to Narrow the Sub-Sets of Documents at Each Stage of Document Review*

The parties disagree regarding Defendants' compliance with this Court's order on

December 4, 2019.   Plaintiff denies that Defendants complied with the Court's order to

collaborate.  Defendants have not adduced any evidence to show that they collaborated with

Plaintiff on search terms or on how they narrowed the corpus of documents.  (**Exhibit 6:**

**Transcript of December 4, 2019 Status Hearing p. 27**)  Accordingly, Plaintiff is seeking

compliance.

> c.   *Application for Production of the Emails from Yang, Wangel and Plaintiff From 2015*
> *to Present*

Plaintiff disputes Defendant Yang's representation as to when she assumed managerial

authority over the clinics.  Plaintiff asserts that Defendants Yang and Wangel worked in concert

with the Mayor's Office as far back as 2015, when Dr. Kaye first began to raise concerns about

the use of redacted medical records for 730 Examinations.  These disputes took place when

Defendants Yang and Wangel were still at the Office of Health and Mental Hygiene.  They also

took place while Plaintiff was still at Bellevue.  Defendants have not produced any of these

emails.  However, these emails are relevant to Plaintiff's claims of retaliation under the First

Amendment.  If produced, they would show a pattern of interference and harassment in the

administration of the examinations.  Plaintiff raised concerns about malpractice and due

process in the administration of the examinations.  Clearly a complete production that includes

emails from these servers is likely to produce relevant discovery.

> d.  *Renewed Application for Production of Dr. Katz's Emails Pertaining to Dr. Kaye and*
> *Ms. Patsos Corporate Compliance Investigation*

Defendants have also failed to meet their burden for resisting the production of Dr.

Katz's emails.  Defendants mischaracterize Plaintiff's request, Dr. Katz's role and their role in

the discovery process. ***Again Defendants bear the burden for resisting production***.

Ms. Patsos reports to Dr. Katz. **(Exhibit 5: pg. 18)** The Operating procedure states that Dr. Katz has final authority over the Office of Corporate Compliance. Id. As such, any correspondence between he and Ms. Patsos regarding Dr. Kaye would be relevant to her Monell and retaliation claims. They would establish that he had final authority in the determination of whether Dr. Kaye received the "Summary Memo" or any other communication about the administration of the 730 Evaluations.

Defendants' response does not contain a denial that Dr. Katz received a report from Ms. Patsos. They also don't deny the existence of any other reports, i.e. a final report. **(Exhibit 6: Corporate Compliance Report)** Clearly there was a final report, and Plaintiff would be entitled to that report, which presumably went to Ms. Patsos's supervisor Dr. Katz. Again at a minimum Plaintiff is entitled to the final unredacted report produced in association with the Office of Corporate Compliance's investigation.

Further, Defendants don't deny that Dr. Katz's mailbox may contain ESI with email relevant to Dr. Kaye's claims. They don't list where else Plaintiff could obtain similar information. They also don't refute the assertion that Dr. Katz had ultimate authority over Plaintiff's conditions of employment and or salary., or that he engaged in any written or verbal discussions to that effect. Clearly, for these reasons, a search of Dr. Katz's mailbox for Plaintiff's name between January 2018 to present would be relevant. Plaintiff further contends, that any EDiscovery in this vein would not prove burdensome or overbroad. As such, Plaintiff proposes the following searches of Dr. Katz's mailbox for the fore mentioned time period:

- Melissa and or Kaye or Dr. Kaye ;

- Bronx Clinic and or Bronx Court Clinic;

- Plaintiff's name and termination;

- Plaintiff's name and fir!;

- Plaintiff's name and retirement;

- Plaintiff's name and complain!;

- Plaintiff's name and Corporate Compliance;

- Plaintiff's name and 730;

- Plaintiff's name and credential!;

- Plaintiff's name and exam!;

- Plaintiff's name and court;

- Plaintiff's name and or judge and or 730 and or exam;

- Plaintiff's name and Catherine Patsos (variations included);

- Plaintiff's name and hear!; and

- Plaintiff's name and disciplin!

- Exam and J.G

- M.F.

*e. Renewed Application for the Search of Ms. Swenson's Mail Box*

Defendants are non-responsive to this aspect of Plaintiff's motion. Ms. Swenson started at the Correctional Health services in March 2018. (Exhibit 8: Ms. Swenson's LinkedIn Profile) Her job title for the time relevant was Administrative Director of the Forensic Court Clinics. According to her LinkedIn Profile, Ms. Swenson "deployed a pilot program in Queens Criminal Court to optimize efficiency for 730 clinics in partnership with varied stakeholders." Plaintiff alleges that these measures resulted in malfeasance and the illegal conflation of 390 and 730

Examinations. Clearly ESI that pertained to this topic would be relevant to Plaintiff's First Amendment 1983 claims.

Ms. Swenson also claims that she "interfaced with the Courts to drive productivity and performance measures [for] Forensic Clinics citywide." Dr. Kaye makes assertions that Defendants "rigged" and interfered with the administration of the examinations. Specifically as they pertained to the examinations referenced in the 2019 email between Ms. Swenson and Mr. Morello on March 7, 2019. (Exhibit 8: March 7, 2019 Email) Ms. Swenson specifically made the statement in that email, "they" want to find him fit. ESI on this topic goes straight to the core of Dr. Kaye's claims that the exams were rigged on a micro level. However, on a macro level, this email reveals gross malfeasance and the interference with the administration of justice that this Court should also be concerned about. As stated by Plaintiff's previous correspondence to the Court, jurists are prohibited from interfering with the administration of justice.

Therefore, correspondence between Ms. Swenson and her supervisors that pertain to Judge Torres, Judge Gross and the other judges in the Bronx Supreme Court that involved Dr.Kaye's exams would be relevant. Accordingly, Plaintiff would be entitled to any relevant emails and correspondence to the Courts about the administration of 730 Exams. Plaintiff would also be entitled to any: ESI relevant to discussions Ms. Swenson had about orders from any Bronx judges from 2018 to present; any threatened orders of contempt from Bronx judges during this time period; any orders to record from Bronx judges for the fore mentioned time period; and any orders to produce medical records.

As part of her job responsibilities, Ms. Swenson also claimed that she established and executed the I-Sight database that tracked all of the 730 and 390 evaluations citywide. There are questions about Dr. Kaye's productivity and the migration of the Bronx Court Clinic onto the I-Sight system. Ms. Swenson's mailbox would contain relevant ESI on these points as well.

### f. Renewed Application for Emails from Dr. Anansa Brayton

Defendants have made the assertion that "no one wanted to work with Dr. Kaye." Dr. Brayton no longer works at the Bronx Court Clinic, and left before Dr. Kaye was constructively discharge. Therefore any email correspondence that pertained to Dr. Kaye's supervision and or relationship with Dr. Brayton would be relevant.

There were also questions about Dr. Brayton's ability to conduct 730 Examinations. Bronx stakeholders questioned Dr. Brayton's ability and they also complained about the quality of her reports. The Bronx Legal Defense Community also took issue with Dr. Brayton's supervision and her independence. They specifically sought confirmation of whether Dr. Kaye and or Dr. Jain supervised her and or had any part in her evaluations. Defendants have also produced discovery that insinuates that Dr. Kaye may have had problematic managerial. Defendant Yang inferred that these reasons attributed to the provision of any additional staff or resources to Dr. Kaye.

Lastly, emails that pertain to the 730 Hearing in front of Judge Gross where Dr. Kaye and Dr. Winkler were controverted by Dr. Brayton would clearly be relevant. To date, Defendants have not produced the controverted 730 Report pinned by Dr. Brayton. This report and any other ESI that pertained to the inmate in question would be relevant.

### g. Request for the Production of Additional Emails from Dr. Ross MacDonald

Dr. MacDonald was Dr. Kaye's indirect supervisor.  Dr. Kaye made numerous complaints of discrimination and malfeasance.  Defendants represent that the one email referenced in Plaintiff's opening brief is a complete production of relevant correspondence from Dr. MacDonald for over a 3 year period.  Plaintiff respectfully asserts that this is implausible and that Defendants' argument defies common sense.  Defendants represent to this Court that Dr. MacDonald only wrote one email about Dr. Kaye's recordings of the March 12, 2018 and September 28, 2018, even though the subject line suggests there was a more extensive email chain, the produced email was forwarded and edited.  In support of her application Plaintiff proposes the following search terms for the time period of 2015 to present:

- Plaintiff's name

- Plaintiff's name and exam!

- Plaintiff's name and record!

- Plaintiff's name and hear!

- Plaintiff's name and discipline!

- Plaintiff's name and variations of Catherine Patsos

- Plaintiff's name and complain!

- Plaintiff's name and pay

- Plaintiff's name and termination!

- Plaintiff's name and fir!

- Plaintiff's name and shift! and change and hour!

- M.F. (inmate 1's initials)

- J.G.  (inmate 2's initials)

Again Defendants have failed to adduce evidence to show that Plaintiff's requests for additional searches were burdensome and disproportionate to the needs of the litigation.

**6. Complaints of Discrimination, Deposition Transcripts and Disclosure of Lawsuits**

Counsel admitted that Defendant Yang and Dr. MacDonald had been sued for discrimination. However, Defendants' response does not address their failure to provide the requested deposition transcripts for the identified individuals. Counsel's response also does not address her failure to disclose or identify whether the other named defendants had been named or involved in EEO complaints during their tenure at HHC or the Office of Health and Mental Hygiene.

**7. Plaintiff's Motion for Sanctions for Counsel's Failure to Produce Catherine Patsos for her Deposition on October 27, 2020**

*a. Legal Standard*

Plaintiff moves for sanctions pursuant to Title 28 § 1927, Fed. R. Civ. P. 30 and 37. Generally, an attorney who multiples the proceedings in any case unreasonably and vexatiously should personally be required to satisfy any associated excess costs, expenses and attorney's fees. Shim-Larkin v. City of New York, 16 CV 6099 (AJN)(KNF), 2020 U.S. Dist. LEXIS 168263 at * 51 (S.D.N.Y. Sept. 14, 2020) Fed. R. Civ. P. 37 also provides the Court with the authority to sanction a party who fails to comply with Court orders and discovery. Brown v. City of New York, 15-CV-4488 (KAM)(RER), 2018 Dist. LEXIS 108702, at * 10 (E.D.N.Y. June 28, 2018) Ultimately the ability to impose sanctions resides in the Court's inherent authority to control the proceedings. Martinez v. City of New York, 330 F.R.D. 60, 89 (E.D.N.Y. March 18, 2019)

Plaintiff respectfully argues that Counsel has conducted herself in a manner that is sanctionable under either statute. Key this assertion is a discussion of Counsel's conduct both before and during this pandemic. Plaintiff is aware that this pandemic has imposed unprecedented hardship on everyone. In fact, the pandemic has greatly affected the practice of Plaintiff's Counsel. However, that does not excuse Defense Counsel's repeated failure to provide explanations for her conduct before and during the pandemic.

*b. Overview of Counsel's Conduct*

The discussion herein will reveal a pattern, where this conduct is concerted and is clearly part of a strategy. It will also show Counsel's entitled air, in none of these proceedings has Counsel provided good cause for her behavior. And in the one instance she was sanctioned, which took place today, it still was clear that the Court accorded her unprecedented levels of deference.

To be clear, the two other African American attorneys from her office who were sanctioned in the Shim Larkin and Cordero matters were the subjects of lengthy orders on the record. In the latter instance, the attorney who was sanctioned in <u>Cordero</u> made the New York Post. Again, it would be understandable if Counsel had some explanations for her behavior that pertained to her health or even personal issues… However, as you will see from the discussion herein she has never felt the need to justify her behavior beyond cavalier and or dismissive comments on the record. The discussion herein will show repeated deference to Counsel and if she is sanctioned, it is done so in a fashion to obscure her identity and the nature of her misconduct. Clearly, Counsel has been treated differently from the African American

attorneys in her office and from Plaintiff's Counsel in this matter. There is simply no rational explanation as to why Defense Counsel has been treated in such a fashion.

   c.   *Counsel's Non-Compliance with Court Orders in the Instant Matter and Her Conduct in Matters before other Judges in the SDNY and EDNY*

   In this matter, Counsel has defied the Court's December 4, 2019 order to comply with ESI production. Counsel has also defied the Court's order to jointly draft a letter that updates Judge Cronan on the status of the case. (ECF. Dkt. 96) Plaintiff attempted to comply with Judge Cronan's Notice of Reassignment, but Counsel failed to respond when Plaintiff asked for her input on the status report. (ECF. Dkt. 111) Even after Plaintiff submitted her own response, Counsel still did not feel compelled to submit a separate letter or even an explanation to the Judge Cronan. Additionally, Counsel ignored the briefing schedule for the motion herein, Counsel refused to comply with the schedule. At no point did she seek this Court's latitude, at no point did she apologize for her failure to comply.

   Instead, the Court made an entry and directed her to respond or lest Plaintiff's motion go unopposed. It was only at that point that Counsel saw fit to submit her response. Of course, this delayed response has had an impact on the preparation of Plaintiff's case and the work of her Counsel in other matters. However, on a larger scale, Defense Counsel's behavior should not be facilitated or ignored altogether. Such deference to Defense Counsel is unwarranted and unfair to practitioners who at least attempt to comply and who have been sanctioned for far less egregious behavior.

   Plaintiff respectfully asserts that Counsel's disregard of the Court's orders is intentional, and is not limited to the case at hand. In fact, her opposing counsel in the Local 3621 matter that Counsel brazenly referenced to justify her behavior shows an extensive record of Counsel's

tactic. Plaintiff's Counsel in that matter accused Defense Counsel of engaging in a strategy of ignoring court Orders. In the Local 3621 matter, Defense Counsel stated that she was unaware of the dozen or so orders from the Court regarding Defendants' outstanding discovery. **(Exhibit 9: Exhibit from Plaintiff's Attorney Yetta Kurland, in support of her Motion for Sanctions p. 72)** In that matter, Plaintiff's Counsel sent 7 deficiency letters between January 2020 and July 2020. Counsel was eventually sanctioned today for the first time, and even then the Court took great pains not to grant the sanction in writing or on the record. Again it is confounding and extremely troubling that Counsel continues to be accorded such extensive latitude by judges in the Southern and Eastern Districts. However what is clear from the extensive record in the Local 3621 case, Counsel has no intention of changing her ways and she does not believe that she will suffer any consequences for her conduct.

Counsel also failed to cooperate in the scheduling of depositions and the production of discovery in <u>Morales v. City of New York</u>. In that matter, Counsel delayed the taking of depositions for over 7 months and she also withheld key documents until the eve of discovery being closed. Counsel is engaging in similar conduct in the matter herein. Counsel has continued to withhold EDiscovery while she has insisted on moving forward with other depositions in this matter.

Plaintiff also seeks sanctions based on Counsel's failure to produce Ms. Patsos for her duly served notice of deposition. Counsel's contention that she had not calendared the deposition over 20 days beforehand is specious at best. Counsel was notified on October 22, 2020 about the telephone conference in the Local 3621 matter on October 27, 2020. At that time, or on the 19th when the Court initiated scheduling, Counsel could have stated that she

had a conflict.  Again, Counsel was duly served with the notice of deposition for Ms. Patsos's deposition on October 6, 2020.  Even though attorneys accidentally mis-schedule things,

Counsel's conduct surrounding the scheduling of depositions and the production of ESI was equally obstructionist in the Local 3621 matter. In that matter, Counsel refused to cooperate with the scheduling of depositions or with the production of deponents.  **(Exhibit 9: p. 43-44)**  Consistent with that pattern, in the matter herein, Counsel has yet to provide dates for the depositions of Dr. Jain, Dr. MacDonald, Ms. Swenson, and Mr. Wangel despite multiple requests.  Instead she has  lied about the close of discovery and sought to schedule Dr. Kaye's deposition before the parties' ESI and discovery disputes have been resolved.  The Court cannot and should not allow this conduct to continue.

Counsel also conducted herself in a similar obstructionist fashion in Catapano Fox v. City of New York, 14 CV 8036. On July 1, 2015 Judge Failla confronted Counsel about her willful and reckless failure to abide by her discovery deadlines.  Counsel failed to provide any explanation for her behavior even when confronted in open Court by the judge.  When confronted about her response to 2 out of 21 interrogatories, Counsel told the Court: "she thought long and hard before she decided to just object and not provide any responses." **(Exhibit 10:  Transcript of July 1, 2015 Telephone Conference p. 3:10-24; p. 5:23-25 and p.6:8-25)**  Again, despite this open defiance, Defense Counsel yet again was not sanctioned.  On yet another occasion, Counsel suffered no consequences for her behavior.

Based on the discussion herein, Plaintiff submits her application to the Court for sanctions based on Counsel's ongoing and persistent conduct.  Everyone has been impacted by the pandemic, additionally no one is perfect in their practice before this Court.  Plaintiff's

Counsel has admittedly struggled with deadlines; however the difference is that the behavior was never willful. The other difference is that Plaintiff's Counsel has sought the Court's latitude in other matters before this Court, has even divulged personal medical information and has apologized. Defense Counsel has never had the need to do any of those things and it is clear that she doesn't feel that she has to.

It is also clear that this is Counsel's litigation strategy, that she employs to the detriment of the administration of justice and in blatant disregard of the Court's sovereignty. Again Exhibits 9 and 10 show a brazen disregard for the Court, its orders and the Federal Rules of Civil Procedure. Counsel should not be rewarded for her behavior and Dr. Kaye should not have to pay the costs for litigating these motions.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motions to compel and for sanctions in their entirety.

Dated: Queens, New York           _____/s/_____
      November 18, 2020               Special Hagan, Esq.
                                              Law Offices of Special Hagan
                                            196-04 Hollis Avenue
                                            Saint Albans, New York 11412
                                            (917) 337-2439
                                            special@haganlawoffices.net
                                            *Attorney for Plaintiff*