USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/9/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                :

MELISSA KAYE,                       :
                                :
                  Plaintiff,       :

                                :

           -v-                   :
                                :

NEW YORK CITY HEALTH AND       :
HOSPITALS CORPORATION, *et al.*,    :
                                :

                Defendants.     :
-----------------------------------------------------------X

**MEMORANDUM ORDER**

18-CV-12137 (JPC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

"Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention." *Roelke v. Zip Aviation, LLC,* 15-CV-6284 (JGK) (JLC), 2020 WL 5752228, at *3 (S.D.N.Y. Sept. 25, 2020) *(quoting Zhao v. U.S. Dep't of Homeland Sec.*, No. 06-CV-106S (HBS), 2010 WL 4642929, at *3 (W.D.N.Y. Nov. 17, 2010) (citation and alteration omitted)). Unfortunately, this straight-forward, single-plaintiff employment discrimination action continues to require far more judicial intervention than should be necessary. Currently before the Court is plaintiff Melissa Kaye's latest motion to compel and for sanctions. For the reasons discussed below, the motion is granted in part and denied in part.

I.

A review of the procedural posture of this case is necessary to provide context before considering the present motion.

1

This case, originally filed in December, 2018, was referred to me for general pretrial supervision by the Honorable J. Paul Oetken, the district judge originally assigned to the case, in November, 2019 (Dkt. No. 51).[1]  Shortly thereafter, I held a conference to address various discovery issues, including the scope and production of electronically stored information ("ESI") (Dkt. No. 55).  At that time, the Court extended the fact discovery deadline until April 9, 2020.  Shortly after this conference, Kaye sent two letters complaining about deficiencies in defendants' production (Dkt. Nos. 56, 58), which the Court rejected as it was not clear whether any relief was being sought at that time (Dkt. No. 59).

In early January, 2020, Kaye again sent two letters in rapid succession (on January 6 and 7) (Dkt. Nos. 60 and 62) concerning the production of discovery, but before defendants could respond, Kaye filed a third letter (Dkt. No. 65), and then following defendants' response, a fourth letter (Dkt. No. 67).  In a Memorandum Order dated January 21, 2020, the Court denied Kaye's various requests for court intervention without prejudice (Dkt. No. 68).

Less than a week later, on January 27, 2020, Kaye filed a letter-motion seeking to compel disclosure, once again, of certain ESI and sought other relief as well (Dkt. No. 69), and followed up that letter-motion with another letter-motion two days later (Dkt. No. 71).  The Court then held another conference on February 5, 2020, at which it denied without prejudice plaintiff's various requests for relief either as premature or as moot.

---

[1] The case has since been reassigned to the Honorable John P. Cronan.

At the end of March, shortly before the extended fact discovery deadline, the parties sought another extension of the fact discovery deadline, this time until June 15, 2020 (Dkt. No. 80), which the Court granted.  In that same letter, Kaye again raised her dissatisfaction with defendants' ESI production.  Following defendants' response (Dkt. No. 82) and yet another letter from Kaye in reply (Dkt. No. 83), the Court then denied the application for a conference without prejudice to a future application if plaintiff could identify with particularity the deficiencies in defendants' production rather than make only generalized complaints about process (Dkt. No. 85).  Kaye objected to the Court's ruling, but the objections were overruled (Dkt. No. 89).

The twice-extended discovery deadline of June 15, 2020 came and went, and the Court heard nothing from the parties until September 16, 2020, when plaintiff, without consultation with defendants, requested permission to submit a revised case management plan, attributing the three-month delay in making such a request to the pandemic and to unspecified personal issues faced by both plaintiff and her attorney (Dkt. No. 92).  As Kaye had not consulted with defendants, the Court directed the parties to meet and confer and propose a revised schedule, specifying what additional discovery needed to be taken (Dkt. No. 93).

The parties then submitted dueling proposed case management plans, and requested a conference (Dkt. Nos. 94, 97, 98).  In an order dated October 8, 2020, the Court addressed a number of issues, including yet another complaint that defendants' production remained deficient, and scheduled a conference on October

27.  In that order, the Court directed Kaye, by October 20, to supplement her prior submissions to identify specific documents (or categories of documents) that had not been produced in this case that she believed were relevant and proportional to the litigation, as well as certain "diversity data" (because she had not specified what she was seeking) and legal authority that supported the production of that information (Dkt. No. 99).

Kaye failed to comply with the Court's October 8th order and did not provide any supplemental submission on October 20.  Instead, on October 26, one day before the conference the Court had scheduled, she wrote seeking court intervention to compel the production of a non-party witness, Catherine Patsos, for her deposition the next day (Dkt. No. 100).  In that letter, Kaye's counsel reported that she had contacted defense counsel that afternoon to inform her that a court reporter would be providing logistical information for the deposition, only to learn that defense counsel had not calendared the deposition and would not be available.  Plaintiff then filed another letter the next day (Dkt. No. 101), just hours before the scheduled conference with the Court, "express[ing her] concern about Defense Counsel's compliance with discovery."

At the October 27 conference, the Court further extended the fact discovery deadline until January 15, 2021 (and the expert discovery deadline to March 21, 2021) (Dkt. No. 102).  Absent good cause shown, and given the history of the case, the Court made clear there would be no further extensions.  The Court also gave

Kaye another opportunity to comply with its October 8th directive to provide the additional information it had identified, directing Kaye to do so by October 29.

Rather than make the supplemental submission as directed by the Court, Kaye instead filed, without permission, a 17-page "Motion to Compel" with several exhibits ("Pl. Mem.") (Dkt. No. 104).[2]  Following defendants' response to the motion (Dkt. No. 108), Kaye requested – and the Court gave – permission to file reply papers (Dkt. No. 110).  Kaye then filed a 23-page reply memorandum of law and a declaration with 10 exhibits on November 18, 2020 ("Reply Mem.") (Dkt. Nos. 112/113, 114).

Just a few days later, on November 23, Kaye filed another letter seeking the Court's intervention because defense counsel had failed to confirm the rescheduled Patsos deposition on November 24.  Separately, Kaye complained that defendant New York City Health and Hospitals Corporation ("H+H") had impermissibly contacted her about a complaint she had filed with them more than 10 months previously (and submitted subpoenas for the Court to "so order" to obtain records from both the New York City Department of Investigation ("DOI") and the Board of Correction ("BOC")) (Dkt. No. 118).  As the letter did not identify any specific relief sought from the Court with respect to the deposition, nor indicate that plaintiff's counsel had met and conferred about the other discovery requested, the Court determined that it would be premature for it to take action with respect to any of

---

[2] While denominated a "motion" on the docket, it is actually a memorandum of law. Plaintiff's counsel thus failed to comply with Local Rule 7.1, which requires, *inter alia*, the filing of both a notice of motion and a separate memorandum of law.

the issues identified in the letter (Dkt. No. 119). The Court issued its order to that effect that same day, after business hours, so that the parties would be aware that the Court had received the letter Kaye had sent.

Later that night, at 10:37 p.m., plaintiff's counsel filed a letter-motion seeking an order from the Court confirming that "Counsel will produce Ms. Patsos tomorrow for" her deposition and directing defendants to "cease and desist from engaging in ex parte communications and further harassment" of her client (Dkt. No. 120).[3] The Court took this letter-motion under advisement, and directed defendants to respond, which they did, on December 1, 2020 ("Def. Resp.") (Dkt. No. 122). In their response, defendants confirmed the Patsos deposition had taken place and that Kaye's counsel had been afforded the seven hours under the rules to question her. They also noted that they were unaware of any DOI investigation given the confidentiality of such matters, and had only learned about it from plaintiff's counsel. Additionally, they objected to the production of materials related to any DOI investigation or from the BOC without a showing of its relevance to the claims and defenses in the case.

Finally, on December 3, plaintiff's counsel sent a letter in support of her prior filings (cumbersomely attaching all of her prior filings as exhibits), and complained that Patsos had not been produced for a full seven hours as required by the Federal

---

[3] It should go without saying that it is neither realistic nor appropriate to ask a judge at 10:30 p.m. to intervene and order a litigant to produce a witness for a deposition the next morning. There are remedies a party has if an adversary does not produce a witness for a scheduled deposition; seeking an order for production from the Court late the night before the deposition is not one of them.

Rules, and that she "intends to seek the Court's intervention to resume."  Dkt. No.

123.  Plaintiff's counsel also requested that the Court "make an on record

admonishment to DOI and or Counsel to cease and desist with any further ex parte

contact."  Lastly, plaintiff's counsel reiterated the need for the DOI and BOC

materials.[4]

## II.

## A.

Kaye's first amended complaint alleges that she has been the subject of

discrimination based on sex.  Amended Complaint ("Am. Comp."), ¶ 1 (Dkt. No. 29).

Specifically, she alleges that from 1999 to 2017 she was paid less than her male

comparators despite having more experience and certifications.  *Id.* ¶ 2.  She also

alleges that defendants retaliated against her due to certain protected activities, by

excluding her from meetings she had previously attended to perform her job

functions, reducing her job title, and changing her work schedule.  *Id.* ¶ 3.  She

claims that her work schedule was changed within three months of her filing a

complaint with the Equal Employment Opportunity Commission on May 22, 2018,

and that she was forced to work a nine-hour work day when others similarly

situated to her did not once she filed her EEOC complaint.  *Id.* ¶¶ 3, 13.

---

[4] Even though the Court had not yet ruled on plaintiff's motion to compel, on
December 4 plaintiff nonetheless filed objections pursuant to Rule 72 of the Federal
Rules of Civil Procedure "in anticipation" of the Court's decision (Dkt. No. 124).
Such "anticipatory" objections are not cognizable under the Federal Rules, and
plaintiff cites no authority for such objections.

In addition, Kaye alleges that defendants illegally rescinded the approval of her request for leave under the Family Medical Leave Act, *id.* ¶ 4, and that she was retaliated against when she "voiced her concerns about the 730 Evaluation Process of inmates on Rikers Island," and about "the operations and staff at the Forensic Psychiatry Evaluation Court Clinics. *Id.* ¶ 5. Kaye began her career at H+H in 1999 as an attending physician level III and was promoted to medical director of the Bronx Forensic Psychiatric Court Clinic in 2004. *Id.* ¶¶ 17-19. She alleges that her title was reduced to director in 2018 in retaliation for her protected activities. *Id.* ¶ 19.

In answering the amended complaint, defendants asserted as defenses, *inter alia,* that all of their actions were taken for legitimate, non-discriminatory and non-retaliatory reasons, and that they have not violated any constitutional or other rights in their treatment of Kaye. Answer to Amended Complaint (Dkt. No. 34), ¶¶ 165, 166.

## B.

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. The Rule has been amended over time to strike "the proper balance between the need for evidence, and the avoidance of undue burden and expense." *O'Garra v. Northwell Health*, No. 16-CV-2191 (DRH) (AYS), 2018 WL 502656, at *1 (E.D.N.Y. Jan. 22, 2018) (citation omitted). As of the most recent amendments in 2015, the scope of discovery is now defined to consist of information that is relevant to the parties' "claims and defenses." *Id.* at 2. No longer is discovery permitted on

8

"any matter relevant to the subject matter involved in the action," as used to be the case. *Id*. Moreover, and significantly, permissible discovery under the current Rule 26 must also be "proportional to the needs of the case." *Id*. As one judge has observed, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Management Group*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (citation omitted).

The party seeking discovery "bears the burden of initially showing relevance," *New Falls Corp. v. Soni,* No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020) (citing, *inter alia, Mandell v. The Maxon Co., Inc.*, No. 06-CV- 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)), and as such, he or she "must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *O'Garra*, 2018 WL 502656, at *2 (quoting *Mamakos v. United Airlines, Inc.,* No. 14-CV-7294, 2018 WL 4861392, at *2 (E.D.N.Y. Sept. 28, 2018)).[5]  It is well-established that a motion to compel is "left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)).  Moreover, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018)

---

[5] Plaintiff mistakenly argues that it is the party resisting discovery who bears the burden of showing why discovery should be denied.   Pl. Reply at 6 (citing *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)) (pre-2015 Amendments case citing to Ninth Circuit case discussing deposition discovery).

(alteration in original) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)).

Given the parties' claims and defenses, and the applicable standards, the Court now turns to Kaye's various applications for relief.

C.

1.    Request for Order Governing Electronic Discovery:  As a preliminary matter, Kaye has renewed her request for "an order from the court to govern electronic discovery in this matter going forward."  Pl. Mem. at 4.  This request is essentially an untimely motion for reconsideration of the Court's Memorandum Order dated January 21, 2020 (Dkt. No. 68), in which the Court denied such relief (as did the Court at the December 4, 2019 conference) (Dkt. No. 55).  Kaye did not file objections to that decision.  Additionally, the fact discovery deadline is only a month away, and it is too late for such a request at this juncture of the case.

2.    Request for 730 Hearing Recordings and Related Material:  Kaye contends that, to date, defendants have only produced the 730 Examination that she wrote on September 28, 2018.  Pl. Mem. at 5.  She seeks "the same documents and recordings that Ms. Patsos relied upon to make her assessment."  Pl. Mem. at 5-6.  Specifically, she seeks the following:

- The full hearing transcript in front of Justice Michael Gross, including the testimonies of the prosecution's expert Dr. Nicole Charder; Dr. Kaye's co-evaluator, Dr. Barry Winkler; and Dr. Kaye's testimony;
- Dr. Kaye's recordings of the March 12, 2018 and September 28, 2018 730 Examinations;
- Dr. Kaye's 730 Evaluation Report for the March 12, 2018 examination;
- The evaluation Reports for Dr. Anansa Brayton and Dr. Louise Mullan;

- The Order from Judge Montero which originally directed the 730 Examination of the defendant;
- Catherine Patsos's Final Report to CEO Katz;
- Catherine Patsos's Notes and Witness List as maintained by her office; and
- Minutes from Audit Committees and executive sessions that addressed Plaintiff's complaints between 2015 and 2020.

Pl. Mem. at 6. She contends that these documents and recordings are relevant, their production does not pose an undue burden, and the request for them is proportional to the matters raised by her claims. *Id.*

In response, defendants argue that none of the information requested is "remotely relevant to the prosecution of her claims." Def. Resp. at 2. This is so, they say, because the material requested is not relevant to whether Kaye complied with the standards of the profession. They note that Kaye has admitted that she used her personal cellphone to audio-record the CPL 730 evaluations, and that she was not disciplined as a result. Instead, it was recommended that she be retrained on the custom and practice of conducting 730 competency evaluations. *Id.* at 1-2. Defendants add that there was no formal written policy against audio-recording 730 evaluations at the time Kaye did so, and as a result of the investigation, policies to that effect were recommended. *Id.* at 2.

In reply, Kaye claims that she was, in fact, disciplined, or, at a minimum, that an instruction for remediation to an experienced forensic psychiatrist could constitute an adverse employment action. Reply Mem. at 7. She contends the requested discovery is both relevant and proportional to the needs of the case in order to develop a complete record. *Id.* at 8.

11

While the record before the Court lacks clarity on many of the issues related to this document production, it appears that defendants are simply relying on relevance arguments; they have not articulated any burden in producing the requested documents.  To that end, it is not clear from the record why defendants produced the September 28, 2018 examination that Kaye wrote and not the March 12, 2018 examination.  Moreover, it is not clear why defendants say Kaye was not disciplined when an exhibit they provided explicitly recommended that Kaye "**be disciplined** in the form of counseling, and retrained on the custom and practice of conducting 730 competency evaluations." (Def. Resp., Ex. 1) (Dkt. No. 108-1) (emphasis added).  In any event, in an abundance of caution, and because Kaye has at least set forth an articulable basis as to the relevance and proportionality of these materials, the Court hereby orders their production, except for the following: (a) Patsos's notes and witness list need not be produced, as her final report should provide sufficient information regarding her recommendations; and (b) the minutes from the Audit Committee's sessions that addressed plaintiff's complaints between 2015 and 2020 need not be produced, as that demand is overly broad and vague and does not appear to be proportional to the claims presented in the case.  As to the other materials, defendants are directed to produce them no later than **December 18 at 5:00 p.m.** and are encouraged to do so on a rolling basis if possible.

3.    <u>Salary, Title, and Promotional Information for Kaye's Comparators</u>:

Kaye is seeking salary, title, and promotional information related to those who are

similarly situated to her.  She contends this is related to her claim that she was

paid less than her male comparators.  Pl. Mem. at 8.  Defendants do not contest this

request, and have agreed to produce the records of Barry Winkler, Elizabeth Owens,

Daniel Munday, and Steven Ciric.  Def. Resp. at 2.  In reply, Kaye claims that

Winkler's salary has not been provided, as it should.  Reply Mem. at 10.  She also

seeks a list of all of the forensic evaluators from 2015 to the present.  *Id.*  However,

she does not explain the need for such a list, which presumably would go far beyond

her comparators.  As no showing has been made to justify the production of such a

list, the Court will not require its production.  As to the other records, to the extent

they have not yet been produced, they must be provided no later than **December

18 at 5:00 p.m.**

4.    <u>EEO-1 Reports and Affirmative Action Plans</u>:  Kaye is seeking EEO-1

reports to the Department of Labor because such demographic data "may reveal

that there was an underutilization of women in the Attending Physician Level III

job title."  Pl. Mem. at 8.  She also claims this information is relevant to her claim

brought pursuant to *Monell v. Department of Social Services of City of New York*,

436 U.S. 658 (1978).  Defendants oppose the request, contending that "[n]othing in

the EEO-1 reports or the affirmative action plans will address Plaintiff's purported

need for the information or her claims of disparate treatment and retaliation" while

employed by defendants.  Def. Resp. at 2.

The Court is not persuaded that this is appropriate discovery in this case. Kaye herself offers only that "[t]he demographic data may reveal that there was an underutilization of women in the Attending Physician Level III job title."  Pl. Mem. at 8.  This proffer is too speculative to justify production.  In arguing that this information is relevant to her *Monell* claim, Kaye also posits that defendants "may have also insisted on keeping [her] in the [same] title to hide problematic policies and practices from their federal and state oversights."  *Id.* at 9.   But, as defendants point out, this is not a pattern or practice case, and whether there was an underutilization of women does not affect Kaye's claims for relief.  Accordingly, the request for this discovery is denied.

    5.    Complaint Information and Prior Lawsuits:  Kaye seeks information about prior instances of discriminatory conduct, and in particular complaint information and prior lawsuits.  Pl. Mem. at 10.  Defendants claim this information was previously produced.  Def. Resp. at 2.  It appears this issue is moot; if not, Kaye may raise it in a further submission on December 30, as is discussed below.

    6.    ESI Disputes:  Kaye raises a number of specific disputes related to the production of electronic discovery.  As noted above, the Court has already made several rulings on the subject, to which no objections were filed (except one, which was overruled).  The Court briefly addresses the ESI issues raised in Kaye's most recent submissions:

        (a) Defendants' ESI Methodology:  Kaye continues to seek information about defendants' methodology beyond what has been provided.  The Court

14

has previously denied this "discovery on discovery" in its January 21st
Memorandum Order.  To date, including in the most recent motion papers,
Kaye has not provided sufficient information to the Court to justify the relief
she is seeking.  In the absence of any compelling argument, the Court is of
the view that H+H as the responding party is "best situated" to decide how to
search for and produce the ESI responsive to Kaye's discovery requests.  *See,
e.g., Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3,
2020) (citing, *inter alia,* The Sedona Principles, Third Edition, 19 SEDONA
CONF. J. 1, Principle 6).  As the court in *Livingston* aptly observed, plaintiff's
"insistence that the [defendant] must collaborate with them to establish a
review protocol and validation process has no foothold in the federal rules
governing discovery."  *Id.*

(b) <u>Yang's Emails</u>:  Kaye complains that not all emails from "Plaintiff and
Defendant Yang from 2015 to present" have been produced.  Pl. Mem. at 13.
Defendants disagree.  Kaye has identified some emails in her motion papers,
such as emails from the Office of Mental Hygiene and stakeholders.  If there
are specific emails that Kaye can identify that have not been produced, she
should identify them to defendants and seek their production.  Additionally,
to the extent they have not done so, Defendants should confirm, in writing,
that they have provided Kaye with all of Yang's emails for the relevant time
period, and provide that confirmation no later than **December 18 at 5:00
p.m.**

(c) <u>CEO Katz's Emails</u>:  Kaye has renewed her request for CEO Katz's emails.
Pl. Mem. at 14.  Defendants oppose the request, contending that Katz does
not have final decision-making authority regarding Kaye's salary (which is
instead dictated by a collective bargaining agreement), and that there is no
evidence that Katz was required to "approve and enforce" the corporate
compliance report.  Def. Resp. at 2-3.  On the record presented, the Court
does not believe Kaye has met her burden, or that, given the other sources of
information available to her, Katz has unique information.  If Kaye believes
that Katz has unique information, she may depose him (and if any documents
are identified during the course of the deposition that have not been
produced, she may seek such production).  Accordingly, this renewed request
is denied.

(d) <u>Andrea Swenson Emails</u>:  Kaye is seeking a larger time frame to apply to
the search of emails for Andrea Swenson.  Pl. Mem. at 15.  Defendants
contend, and the Court agrees, that it is unclear from the motion papers why
a broader time frame is necessary.  This application is denied.

(e) <u>Anansa Brayton Emails</u>:  Kaye insists that "more EDiscovery [be]
produced" with respect to Dr. Brayton, without explaining in sufficient detail
for the Court to be persuaded that more than what has already been
produced is necessary.  Nothing Kaye has offered explains the nexus between
her claims of disparate treatment and retaliation and the additional ESI she
is seeking.  This application is denied.

16

(f) <u>Ross McDonald Emails</u>:  Kaye claims there must be additional responsive emails given the production that has been made to date of Dr. McDonald's emails.  Pl. Mem. at 16.  Defendants have represented that they have produced all emails concerning the investigation into Kaye's use of her personal cellphone to make recordings of 730 evaluations.  Kaye's speculation, without more, is insufficient to justify a further production.  If Kaye believes that McDonald engaged in certain discussions that are relevant to her claims, she may pursue them at a deposition.  This application is denied.

7.    <u>Patsos' Deposition</u>:  Kaye has spilled a lot of ink about the Patsos' deposition.  Suffice it to say that it took place on November 24, so any relief seeking to compel the deposition is denied as moot.  Defendants report that plaintiff's counsel was afforded the seven hours allowed under the Federal Rules to question the witness.  Dkt. No. 122.  Nonetheless, plaintiff's counsel has written to the Court and stated that the deposition included more than 90 minutes of breaks, and therefore she is entitled to additional time.  Dkt. No. 123.  Plaintiff's counsel says she "intends to seek the Court's intervention to resume." Dkt. No. 123.  The law is clear that "[o]nly time spent actually taking the deposition, not breaks, counts toward the seven hours." *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198 (LAK) (JCF), 2009 WL 72441, at *4 (S.D.N.Y. Jan. 7, 2009).

The Court directs the parties to meet and confer to resolve this dispute.  As officers of the court, counsel should be able to resolve such a disagreement without

court intervention.  The only way the Court could make a ruling on this issue is if the parties submitted the entire deposition transcript for review, and that is, in the Court's view, a burdensome task unnecessary under the circumstances.  However, should the parties submit the dispute, the Court hereby puts them on notice that if Kaye is correct, then defendants will have to incur the cost of the continued deposition; if defendants are correct, then Kaye will have to reimburse defendants for the cost of litigating the dispute.

       8.   <u>Alleged Ex Parte Communications and Harassment</u>:  Kaye alleges that defendants improperly contacted her 10 months after she filed a complaint with their offices.  Dkt. No. 120.  She is seeking the Court's intervention to direct defendants to "cease and desist from engaging in ex parte communications and further harassment."  In response, defendants submit that they are unaware of any investigation by the New York City Department of Investigation ("DOI"), as such investigations are confidential.  In fact, they contend that they first learned of the DOI's contact with Kaye only after her counsel had copied them on related correspondence.

       It is not clear from the record whether there is any basis for the Court to get involved at this time.  If the DOI is conducting an investigation prompted by correspondence submitted by Kaye to the Office of the Inspector General for the New York State Unified Court System, then that investigation should run its course without court interference.  If Kaye wishes all contact from the DOI to come

through her attorney, she can so advise DOI representatives to that effect.  Any request for relief is denied at this time.

9.  <u>Production of DOI and BOC Materials</u>:  Kaye has submitted subpoenas to both the DOI and the BOC for the Court's approval seeking documents pertaining to her complaints against H+H and its employees.  Defendants contend that the parties have not met and conferred about the requested information from either the DOI or the BOC, and in any event object to the production of records from either agency.  Dkt. No. 122.  Defendants observe that any complaints Kaye has filed were submitted long after she commenced this case, and it is not clear how any production from the DOI or the BOC pertain to the claims and defenses in this action.  Moreover, to the extent there is an ongoing investigation, they argue that any materials would be protected by the law enforcement privilege.

As a threshold matter, the Court does not understand why plaintiff's counsel has submitted the subpoenas to be "so ordered," when under Rule 45(a)(3), "[a]n attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court."  She has not explained why she cannot issue the subpoenas herself.  Moreover, given the impending discovery deadline, the Court believes that ordering the parties to meet and confer at this point – to the extent a meet and confer is required in these circumstances – "would only further delay . . . resolving these issues on the merits."  *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, No. 07-CV-7983 (DAB) (HBP), 2017 WL 4129644, at *2 (S.D.N.Y. Sept. 18,

2017) (quoting *Time Inc. v. Simpson*, No. 02-CV-4917 (MBM) (JCF), 2002 WL

31844914, at *2 (S.D.N.Y. Dec. 18, 2002).[6]

In any event, the Court, in the interest of efficiency, deems defendants'

opposition to be tantamount to a motion to quash these subpoenas.  It is not clear

based on the current record how complaints that Kaye submitted to investigative

bodies well after she filed her complaint in federal court, and the investigations

related thereto, would relate to her claims in this case (and provide discovery she

has not already received).  Kaye claims that the BOC's records of her complaint

would be relevant because she reported "malfeasance; the rigging of 730

examinations; and the violation of defendants' constitutional rights and due

process."  Dkt. No. 123.  None of these topics pertains to Kaye's claims set forth in

her pleadings.  She adds that "[i]ntegral to the allegations in the lawsuit herein is

[her] allegations [sic] that she experienced retaliation when she engaged in various

forms of protected activity regarding those claims."  *Id.*  It is not clear, however, how

any investigation by the BOC, conducted after the filing of her lawsuit, would shed

light on whether her claims against H+H have merit.   Moreover, while Kaye

dismisses the privilege implications of her subpoenas, the law enforcement privilege

appears to be applicable here.  It is well-settled that the purpose of the privilege is

---

[6] As the court in *Nimkoff* observed, there are cases holding that the Federal Rules
do not impose a "meet and confer" requirement for the enforcement of a Rule 45
subpoena.  The issue is a bit more complicated when the third parties in this case –
the DOI and the BOC – would presumably be represented in this action by the
Office of the Corporation Counsel, which also represents the named defendants.
The Court leaves for another day the issue of whether a meet-and-confer is required
in advance of the issuance of a Rule 45 subpoena in such circumstances.

"to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re The City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (quoting *In re Dep't of Investigation of City of New* York, 856 F.2d 481, 484 (2d Cir. 1988)).  Kaye does not explain why such a privilege should be overruled in these circumstances.

Accordingly, the Court will not sign the subpoenas on the present record; moreover, to the extent the subpoenas are deemed operative, the Court hereby quashes them as the information sought appears not to be relevant to plaintiff's claims set forth in her first amended complaint.  However, if Kaye can more clearly articulate how the information sought from the DOI and the BOC through the subpoenas specifically pertain to her claims, and how documents could be provided despite an ongoing investigation that would likely cause them to be privileged (and how the documents would not duplicate what has already been produced), the Court will revisit this ruling upon a renewed application.  Such an application may only be made after a pre-motion conference in January, as discussed below.[7]

### D.

Finally, Kaye seeks the court reporter costs she incurred in scheduling Patsos' deposition on October 27, only to have defense counsel advise her counsel at

---

[7] Kaye also contends more broadly that the preservation of defendants' constitutional rights (that is, defendants in the state system subject to forensic examinations) is a matter of public concern.  While that is, of course, true, it has no bearing on Kaye's claims for relief.

21

the last minute that she was unavailable, thus causing its cancellation.  Pl. Mem. at
16-17.  It is uncontested that Kaye's counsel noticed Patsos' deposition for October
27, and provided proper notice.  *See* Declaration of Assistant Corporation Counsel
dated November 11, 2020, Dkt. No. 108-4, ¶ 3.   While Kaye's counsel should have
confirmed the deposition earlier than the day before – especially given the current
pandemic circumstances – counsel for defendants has provided no viable excuse for
her inability to attend, other than that she simply failed to calendar the deposition.
*Id.* ¶ 7 ("failure to calendar the noticed depositions/subpoenas was a law office
error").  The fact that she avers that her conduct was "in no way willful or made in
bad faith" is of no moment, as proof of bad faith is not required in these
circumstances.  *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-
CV-816 (WHP) (GWG), 298 F.R.D. 145, 150-51 (S.D.N.Y. 2014).  Having received
proper notice of the deposition, she could have affirmatively reached out to
plaintiff's counsel to indicate her unavailability at any time before the deposition
but did not do so.

Because defendants have failed to offer a substantial justification for their
actions or that imposing the modest sanctions sought would be otherwise unjust,
the Court awards Kaye the court reporter cancellation fee.  It is well-settled that
courts "routinely order reimbursement of court reporters' costs when imposing
sanctions under Rule 37(d)(3)," the applicable rule in these circumstances.  *See, e.g.,
Bacote v. Riverbay Corp.*, No. 16-CV-1599 (GHW), 2016 WL 7496139, at *2
(S.D.N.Y. Dec. 29, 2016) (citations omitted).   Accordingly, the Court grants Kaye's

22

motion for sanctions and orders defendants to pay the court reporters' fee that Kaye
was forced to incur.

III.

Before concluding, a few comments about compliance with Court rules and
future submissions to the Court.

It should go without saying that "[a] scheduling order is not a frivolous piece
of paper, idly entered, which can be cavalierly disregarded without peril." *Bouveng
v. NYG Capital* LLC, No. 14-CV-5474 (PGG) (JLC), 2017 WL 6210853, at *5
(S.D.N.Y. Dec. 7, 2017) (alteration in original) (quotations omitted).  Yet counsel
have continually violated court orders and the Court's Individual Rules.  To be
clear, Rule II.B.1 of the Court's Individual Rules requires good faith conferral.
Counsel must respond promptly (normally within one business day) to any request
from another party to confer unless an emergency prevents such a response.  If the
dispute is not resolved after the conferral, the moving party shall file on ECF a
letter-motion setting forth the basis of the dispute and the need for the anticipated
motion.  The letter-motion must certify that the conferral took place between
counsel and set forth a number of other particulars.  The party opposing the
requested relief should submit a letter to the Court within two business days unless
the parties agree otherwise or an extension is sought.  There is no provision for
reply letters.  If a party believes that the issue in dispute should be decided based
on more formal briefing, the party must so state in a separate letter application.

Rule I.A states explicitly that letters may not exceed five pages in length unless otherwise permitted by the Court. Rule II.E provides that memoranda of law are limited to 25 pages and reply memoranda are limited to 10 pages, unless prior permission has been granted. Additionally, all memoranda must be in 12-point font or larger. It is well-established that a failure to comply with a court's individual rules of practice is grounds for the denial of the relief sought. *See, e.g., Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 464 n.4 (S.D.N.Y. 2010) (condemning party's "thinly veiled attempt to skirt Rule III.H of this Court's Individual Rules" and further noting that "all future submissions in this case *must* comply with the Court's Individual Rules or they will be rejected"); *see also P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*, No. 18-CV-9232 (JPO), 2019 WL 4805862, at *4 (S.D.N.Y. Sept. 30, 2019 ) ("within the Court's discretion to strike the brief in its entirety as untimely, or to strike the overlength pages of the brief for exceeding the court's length requirements").

The violations of these rules and the Court's orders are too numerous to count. To name just a few, plaintiff's counsel (1) has filed a myriad of reply letters without permission; (2) sometimes exceeds the permitted page limits of letter-motions; (3) often files letters and not letter-motions despite the Court's admonition on more than one occasion not to do so; and (4) frequently files duplicates of the same letters (see, e.g., Dkt. Nos. 69/70, 83/84, 104/105, and 118/119), thus confusing the record.

24

Beyond these violations, plaintiff's counsel also frequently makes applications to the Court without engaging in good faith in the meet-and-confer process.  As many courts have held, the failure to meet and confer in good faith with opposing counsel is "sufficient reason by itself to deny [a party's] motion to compel." *Vaigasi*, 2016 WL 616386, at *11 (collecting cases).[8]  Additionally, plaintiff's counsel recently filed a 23-page reply memorandum (Dkt. No. 113), well in excess of the Court's rules, and her memoranda appear to use fonts smaller than 12-point.  The reply memorandum was in support of a motion that plaintiff never had permission to file, and followed counsel's failure to comply with the Court's October 8th order

---

[8] Complaining that counsel for defendants is unresponsive to her inquiries, plaintiff's counsel has argued that her adversary has an alleged "extensive history of obstructing discovery" in other cases, claiming that she has been the subject of "numerous motions to compel and numerous motions for sanctions."  Rep. Mem. at 4.  Such an argument is entirely unjustified (and plaintiff's counsel, not surprisingly, cites no authority for the proposition that if a lawyer was subject to a motion to compel or for sanctions in another case before another judge involving other parties, it somehow has relevance in the case at hand).  Even more concerning, plaintiff's counsel raised this argument for the first time in her reply papers, which is improper sandbagging.  *See, e.g., Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) ("arguments may not be made for the first time in a reply brief") (quotation omitted); *Wolters Kluwer Financial Services Inc. v. Scivantage*, No. 07-CV-2352 (HB), 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) ("It is established beyond peradventure that it is improper to sandbag one's opponent by raising new matters in reply.") (quotation omitted).  Any reference to alleged misconduct by defense counsel in other cases besides this one in any future submissions will not be considered by the Court.  As Justice Sandra Day O'Connor once aptly observed: "incivility disserves the client because it wastes time and energy: time that is billed at hundreds of dollars an hour, and energy that is better spent working on the client's case than working over the opponent . . .  It is enough for the ideas and positions of the parties to clash; it is wasteful and self-defeating for the lawyers to do so as well."  Sandra Day O'Connor, <u>Professionalism</u>, 78 Or. L. Rev. 385, 389 (1999) (cited in *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG), 2009 WL 10706564, at *14 (E.D.N.Y. June 3, 2009)).

requiring the submission of a supplemental letter (not motion papers).  Instead, and belatedly, plaintiff's counsel filed 40 pages of briefs.

On the other side, defense counsel (1) appears not to respond to plaintiff's counsel within one business day of an issue being raised as required by the Court's rules; (2) ignores many of plaintiff's filings (including ones where her professional reputation is called into question – which should presumably trigger an immediate response);  and (3) frequently needs prompting from the Court to respond to plaintiff's various submissions when the Court's rules are clear that, absent an extension request, the responding party has two business days to respond.

In addition, both sides entirely ignored the extended discovery deadline of June 15, 2020.

In the remaining period of discovery, these violations must stop.  Moreover, in an effort to control the management of this case, and in light of the circumstances presented by the pandemic requiring both counsel and the Court to work from home, the Court will no longer allow counsel to submit letters (or letter-motions) whenever they feel like it.  Instead, the Court directs that any remaining fact discovery disputes in advance of the January 15, 2021 cutoff may be presented by either side in a single letter-motion **by December 30, 2020** with responses due **by January 8, 2021**.  Such letter motions or responses **may not exceed 10 pages** (unless a party makes a request in advance and can justify the enlargement).  There will be no reply letters (unless solicited by the Court).  Any issues that arise in the last two weeks of fact discovery, *i.e.*, between December 30 and January 15, 2021,

can be raised at a status conference to be held on **January 19, 2021 at 11:00 a.m**. by telephone.  Counsel should mark their calendars accordingly.

IV.

For the reasons set forth herein, plaintiff's motion is granted in part and denied in part.  The Clerk is respectfully directed to close Docket Numbers 104, 105, and 120, and mark Nos. 104 and 105 as granted in part and denied in part, and mark No. 120 as denied.

**SO ORDERED.**

Dated: December 9, 2020
      New York, New York

JAMES L. COTT
United States Magistrate Judge