

**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**
125 Worth Street • New York • New York 10013

Ann Rozakis
Assistant Vice President
Labor Relations

## M E M O R A N D U M

**HUMAN RESOURCES
DIRECTOR
346 Broadway – 711**

**TO:**      Human Resources Directors
Labor Relations Officers
Payroll Managers

**FROM:**   Ann Rozakis

**DATE:**   April 1, 2009

**SUBJECT:**   2008 – 2010 Clinicians Unit Collective Bargaining Agreement

Enclosed for your information and guidance is a copy of the executed Clinicians Unit collective bargaining agreement entered into by the City of New York, the Health and Hospitals Corporation, and the Doctors Council. The agreement covers the period of March 15, 2008 through March 27, 2010.

The agreement includes two general wage increases: 4%, effective 3/15/2008, and 4%, effective 3/15/2009. The increases do not apply to "additions to gross." Additionally, effective March 15, 2010, the bargaining unit will have available to it an additional compensation fund of 0.25% to purchase recurring benefits. There will be no Welfare Fund increase during the term of this agreement. The agreement also commits the parties to seek to expand the permissible limits on residency to include six additional counties, and to broaden the Transit Check program to include the purchase of commuter tickets and transit debit cards.

If you have any questions concerning the implementation of this agreement please call me at (212) 788-2190.

Enclosure
c:      Frank J. Cirillo
Nancy Doyle
Walter Otero
Larry Migdal
Martin Gence
John Yan
Scott Van Orden
James Darcy

N Y C H & H CORP PERSONNEL
2009 APR -6 AM 10: 20



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

TO: HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM: JAMES F. HANLEY, COMMISSIONER

SUBJECT: EXECUTED CONTRACT: CLINICIANS

TERM: MARCH 15, 2008 TO MARCH 27, 2010

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations and the Health and Hospitals Corporation on behalf of the City of New York and the Doctors Council on behalf of the incumbents of positions listed in Article 1 of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: **FEB 2 4 2009**

```
OFFICE OF LABOR RELATIONS
         REGISTRATION
OFFICIAL              CONTRACT




NO:                      DATE:
09013          FEB 2 4 2009
```

D000601

# 2008-2010 CLINICIANS AGREEMENT

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ...................................2

ARTICLE II - DUES CHECKOFF .............................................................................4

ARTICLE III - SALARIES .......................................................................................4

ARTICLE IV - PERSONNEL AND PAY PRACTICES.................................................24

ARTICLE V - WELFARE FUND .............................................................................25

ARTICLE VI - PRODUCTIVITY AND PERFORMANCE............................................26

ARTICLE VII - EMPLOYEES' INDEMNIFICATION..................................................27

ARTICLE VIII - GRIEVANCE PROCEDURE ............................................................28

ARTICLE IX - JOB SECURITY .............................................................................34

ARTICLE X - TIME AND LEAVE ...........................................................................35

ARTICLE XI - BULLETIN BOARDS: EMPLOYER FACILITIES .................................36

ARTICLE XII - NO STRIKES.................................................................................36

ARTICLE XIII - CITYWIDE ISSUES.......................................................................36

ARTICLE XIV - UNION ACTIVITY .........................................................................36

ARTICLE XV - LABOR-MANAGEMENT COMMITTEE ..............................................36

ARTICLE XVI - FINANCIAL EMERGENCY ACT .....................................................37

ARTICLE XVII - APPENDICES .............................................................................37

ARTICLE XVIII - SAVINGS CLAUSE......................................................................37

09.013

D000602

# 2008-2010 CLINICIANS AGREEMENT

**AGREEMENT** entered into this 24th day of Feb 2009, by and between the City of New York and related public employers pursuant to and limited to their respective elections or statutory requirement to be covered by the New York City Collective Bargaining Law and their respective authorizations to the City to bargain on their behalf and the New York City Health and Hospitals Corporation (hereinafter referred to jointly as the "Employer"), and the Doctors Council, (hereinafter referred to as the "Union"), for the period from March 15, 2008 to March 27, 2010.

## WITNESSETH :

**WHEREAS**, the parties hereto have entered into collective bargaining and desire to reduce the results thereof to writing,

**NOW, THEREFORE**, it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

### Section 1.

The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the bargaining unit set forth below, consisting of employees of the Employer, wherever employed, whether full-time, part-time per annum, hourly, per session, or per diem, in the below listed title(s), and in any successor title(s) that may be certified by the Board of Certification of the Office of Collective Bargaining to be part of the unit herein for which the Union is the exclusive collective bargaining representative and in any positions in Restored Rule X titles of the Classified Service the duties of which are or shall be equated by the City Personnel Director and the Director of the Budget for salary purposes to any of the below listed title(s):

| TITLE | TITLE CODE NUMBER |
|---|---|
| Anesthesiologist | 531100 |
| Assistant Anesthesiologist | 531050 |
| Assistant Director of Service (including specialties) | 52120ff |
| Assistant Pathologist | 533050 |
| Assistant Psychiatrist | 532070 |
| Assistant Roentgenologist | 535050 |
| Associate Medical Examiner (OCME) | 53871 |
| Attending Dentist | 970310, 970320, 970330, 97020 |
| Attending Physician I (including specialties) | 970210, 97021 |
| Attending Physician II (including specialties) | 97022, 970220 |
| Attending Physician III (including specialties) | 970230, 97023 |
| Chiropractor | 53015 |
| City Clinician (P/T) | 53036 |
| City Clinician | 53035 |
| City Dentist | 50211 |
| City Dentist (P/T) | 50212 |
| City Medical Examiner | 06481, 53859 |
| City Medical Specialist | 53039 |
| City Medical specialties (P/T) | 53040 |
| City Veterinarian | 50711 |
| City Veterinarian (P/T) | 50712 |
| Clinician | 52810 |

D000603

| TITLE | TITLE CODE NUMBER |
|---|---|
| Dentist | 50210, 502100 |
| Dentist  Level I | 964410 |
| Dentist  Level II | 964420 |
| Dentist Level A | 963910, 50217 |
| Dentist Level B | 963920, 50217 |
| Director of Chiropractic (MAP) | 53016 |
| Director of Optometry (MAP) | 54287 |
| Health Officer in Training | 52701 |
| Junior Medical Examiner (OCME) | 53865 |
| Junior Public Health Officer (including specialties) | 52800,01 |
| Medical Inspector (including specialties) | 52811,52814 |
| Medical Investigator | 53864 |
| Medical Officer (Department of Correction) | 06422 |
| Medical Officer (Sanitation) | 53770 |
| Medical Specialist (including specialties [except NYCTA] ) | 52909ff,52895 |
| Medical Specialist (Ophthalmology ) | 52921 |
| Medical Specialist (Otolaryngology) | 52923 |
| Medical Specialist (P/T Department of Correction) | 06238 |
| Medical Specialist (Sanitation) | 05367 |
| Medical Subspecialist (DOH) | 06637 |
| Neuropathologist | 534100 |
| Pathologist | 533100 |
| Optometrist (incl. P/T HHC) | 53014, 530140 |
| Physiatrist | 53030, 530300 |
| Physician | 53010 |
| Physician Level I | 530100, 963100 |
| Physician Level II | 963200 |
| Physician Specialist | 005300 |
| Podiatrist (incl. P/T HHC) | 53011, 530110 |
| Primary Care Physician (Communicare) | 06608 |
| Primary Care Physician (Communicare/Managed Care) | 005070 |
| Principal Veterinarian | 50765 |
| Psychiatrist | 08475, 53210, 532100, 965340 |
| Psychiatrist (Per Hour) | 53211 |
| Public Health Officer (including specialties) | 52802, 52803 |
| Radiation Therapist | 53511 |
| Roentgenologist | 535100 |
| Senior Anesthesiologist | 53135 |
| Senior Clinician | 52835 |
| Senior Dentist | 50235, 502350 |
| Senior Medical Specialist | 52936ff,52896 |
| Senior Medical Specialist (including specialties) | 52936ff,52896 |
| Senior Medical Specialist (P/T Dept. of Correction) | 06239 |
| Senior Pathologist | 533350 |
| Senior Psychiatrist | 53235, 965350, 532350 |
| Senior Public Health Officer (including specialties) | 52804,05 |
| Senior Radiation Therapist | 53513 |
| Senior Roentgenologist | 535350 |
| Supervising Anesthesiologist | 53160 |
| Supervising Pathologist | 533600 |
| Supervising Psychiatrist | 53260, 965360, 532600 |
| Supervising Roentgenologist | 535600 |
| Veterinarian | 50710 |

## Section 2.

The terms "employee" and "employees" as used in this Agreement shall mean only those persons in the unit described in Section 1 of this Article.

*0 9 0 1'*

D000604

## ARTICLE II - DUES CHECKOFF

<u>Section 1.</u>

a.  The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in accordance with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Relating to the Checkoff of Union Dues" and in accordance with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Procedures for Orderly Payroll Check-Off of Union Dues and Agency Shop Fees."

b.  Any employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form acceptable to the City, which bears the signature of the employee.

<u>Section 2.</u>

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - SALARIES

<u>Section 1.</u>

a.  This Article III is subject to the provisions, terms and conditions of the Alternative Career and Salary Pay Plan Regulations, dated March 15, 1967 (as amended), except that the specific terms and conditions of this Article shall supersede any provisions of such Regulations inconsistent with this Agreement subject to the limitations of applicable provisions of law.

b.  Unless otherwise specified, all annualized salary provisions of this Agreement, including minimum and maximum salaries, advancement or level increases, general increases, education differentials and any other salary adjustments, are based upon a normal work week of 21.5, 37.5 or 40 hours as set forth in Schedule A of Sections 2(a) and 2(b) of this Article. In accordance with Article IX, Section 24 of the 1995–2001 Citywide Agreement, an Employee who works on a full-time, per-diem basis shall receive their base salary (including salary increment schedules) and/or additions-to-gross payment in the same manner as a full-time, per-annum employee. An employee who works on a part-time per annum basis and who is eligible for any salary adjustments provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed on the relationship between the number of hours regularly worked each week by such employee and the number of hours in the said normal work week, unless otherwise specified.

c.  Employees paid pursuant to Schedule A of Sections 2(a) and 2(b) of this Article who work on a part-time per diem or hourly basis and who are eligible for any salary adjustment provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed as follows, unless otherwise specified:

09013
D000605

| Per diem rate - | 1/261 of the appropriate minimum basic salary. |
|---|---|
| Hourly Rate - | 21.5 hour week basis - 1/1122.3 of the appropriate minimum basic salary. |
| | 37.5 hour week basis - 1/1957.5 of the appropriate minimum basic salary. |
| | 40 hour week basis – 1/2088 of the appropriate minimum basic salary. |

d. The maximum salary for a title shall not constitute a bar to the payment of any salary adjustment or pay differentials provided for in this Agreement but the said increase above the maximum shall not be deemed a promotion.

e. "Per session employees" shall for the purpose of Schedule B of Sections 2(a) and 2(b) of this Article be paid on an hourly or per tour basis, as indicated therein, which shall not affect their "per session" status.

### Section 2.

Employees in the following title(s) shall be subject to the following specified salaries, salary adjustments, and/or salary ranges:



09.013.
D000606

| a.  Effective March 15, 2008 | Work Week | i. Minimum [1] | | ii. Maximum |
|---|---|---|---|---|
| | | (1) Hiring Rate | (2) Incumbent Rate | |
| SCHEDULE A – ANNUALLY PAID EMPLOYEES | | | | |
| Anesthesiologist [2] | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Assistant Anesthesiologist [2] | 21-1/2 | $47,510 | $50,915 | $72,479 |
| Assistant Pathologist [2] | 21-1/2 | $47,510 | $50,915 | $72,479 |
| Assistant Psychiatrist [2] | 21-1/2 | $47,510 | $50,915 | $72,479 |
| Assistant Roentgenologist [2] | 21-1/2 | $47,510 | $50,915 | $72,479 |
| Associate Medical Examiner (OCME) [6] | 37-1/2 | $113,314 | $121,429 | Flat Rate |
| Attending Dentist Level I 970310 | 40 | $99,271 | $106,381 | Flat Rate |
| Attending Dentist Level II 970320 | 40 | $104,242 | $111,707 | |
| | | $109,450 | $117,283 | |
| | | $114,923 | $123,156 | |
| | | $120,667 | $129,308 | |
| Attending Dentist Level III 970330 | 40 | $126,699 | $135,771 | |
| | | $133,032 | $142,556 | |
| | | $139,684 | $149,685 | |
| | | $146,669 | $157,169 | |
| | | $154,002 | $165,031 | |
| Attending Physician I (including specialties) [2][3][4] | 40 | | | Flat Rate |
| | | $99,271 | $106,381 | |
| Attending Physician II (including specialties) [2][4] | 40 | $104,242 | $111,707 | |
| | | $109,450 | $117,283 | |
| | | $114,923 | $123,156 | |
| | | $120,667 | $129,308 | |
| Attending Physician III (including specialties) [2][4] | 40 | $126,699 | $135,771 | |
| | | $133,032 | $142,556 | |
| | | $139,684 | $149,685 | |
| | | $146,669 | $157,169 | |
| | | $154,002 | $165,031 | |
| City Clinician Level I [2] | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| City Clinician Level II [2] | 37-1/2 | $94,423 | $101,185 | Flat Rate |
| City Dentist Level I | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| City Dentist Level II | 37-1/2 | $94,423 | $101,185 | Flat Rate |
| City Medical Examiner Level I [2][5] | 37-1/2 | $118,011 | $126,460 | |

| a.  Effective March 15, 2008 | Work Week | i. Minimum [1] | | ii. Maximum |
| | | (1) Hiring Rate | (2) Incumbent Rate | |
|---|---|---|---|---|
| | | $123,910 | $132,784 | |
| | | $129,813 | $139,106 | |
| | | $135,709 | $145,425 | |
| | | $141,608 | $151,748 | |
| City Medical Examiner Level II  [2 & 5] | 37-1/2 | $143,295 | $153,559 | |
| | | $149,615 | $160,328 | |
| | | $155,940 | $167,105 | |
| | | $162,261 | $173,879 | |
| | | $168,583 | $180,654 | |
| City Medical Specialist Level I  [2] | 37-1/2 | $92,452 | $99,075 | Flat Rate |
| City Medical Specialist Level II  [2] | 37-1/2 | $97,438 | $104,416 | Flat Rate |
| City Medical Specialist Level III  [2] | 40 | $130,345 | $139,679 | $165,077 |
| City Medical Specialist Level IV  [2] | 40 | $137,364 | $147,203 | $196,271 |
| City Veterinarian Level I | 37-1/2 | $71,579 | $76,706 | Flat Rate |
| City Veterinarian Level II | 37-1/2 | $78,830 | $84,477 | Flat Rate |
| Clinician  [6] | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| Clinician (DOH only) | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| Dentist  [5] | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| Dentist Level A  [6] | 40 | $94,926 | $101,719 | Flat rate |
| Dentist Level B  [6] | 40 | $100,639 | $107,846 | Flat rate |
| Dentist  Level I | 37-1/2 | $89,061 | $95,440 | Flat Rate |
| Dentist  Level II | 37-1/2 | $94,423 | $101,185 | Flat Rate |
| Health Officer in Training | 37-1/2 | $61,403 | $65,800 | $71,328 |
| Junior Medical Examiner (OCME) | 37-1/2 | $80,854 | $86,641 | Flat rate |
| Junior Public Health Officer (including specialties) | 37-1/2 | $61,403 | $65,800 | $71,328 |
| Medical Inspector (including specialties) | 37-1/2 | $87,202 | $93,444 | Flat rate |
| Medical Investigator | 37-1/2 | $64,589 | $69,214 | Flat rate |
| Medical Officer (Sanitation) | 21-1/2 | $42,283 | $45,311 | Flat rate |
| Medical Specialist (Ophthalmology )  [6] | 37-1/2 | $92,452 | $99,075 | Flat rate |
| Medical Specialist (Otolaryngology)  [6] | 37-1/2 | $92,452 | $99,075 | Flat rate |
| Medical Specialist (including specialties) | 37-1/2 | $92,452 | $99,075 | Flat rate |
| Medical Specialist (Sanitation) | 37-1/2 | $92,452 | $99,075 | Flat rate |
| Medical Subspecialist (DOH)  [2] | 40 | $137,364 | $147,203 | |
| | | $146,525 | $157,016 | |

09013

D000608

| a. Effective March 15, 2008 | Work Week | i. Minimum [1] | | ii. Maximum |
| | | (1) Hiring Rate | (2) Incumbent Rate | |
| --- | --- | --- | --- | --- |
| | | $155,681 | $166,830 | |
| | | $164,837 | $176,643 | |
| | | $173,997 | $186,456 | |
| | | $183,153 | $196,271 | |
| Neuropathologist [2] | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Pathologist [2] | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Physiatrist [2] | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Physician [2] | 37-1/2 | $89,061 | $95,440 | Flat rate |
| Physician Specialist [2] | 40 | $137,364 | $147,203 | |
| | | $146,525 | $157,016 | |
| | | $155,681 | $166,830 | |
| | | $164,837 | $176,643 | |
| | | $173,997 | $186,456 | |
| | | $183,153 | $196,271 | |
| Primary Care Physician (Communicare/Managed Care) [2 & 7] | 37-1/2 [7] | | | |
| Board Eligible - Less than 2 years experience | | $129,840 | $139,137 | $148,414 |
| Board Eligible - 2 to 5 years of experience | | $132,725 | $142,230 | $151,506 |
| Board Eligible - 5 or more years of experience | | Primary Care Physicians who do not obtain board certification within five years of eligibility are not qualified | | |
| Board Certified - Less than 2 years experience [7] | | $141,380 | $151,506 | $160,782 |
| Board Certified - 2 to 5 years of experience [7] | | $144,265 | $154,597 | $163,872 |
| Board Certified - 5 or more years of experience [7] | | $150,039 | $160,782 | $170,056 |
| Primary Care Physician (Communicare) [7] | 37-1/2 [7] | $129,840 | $139,137 | $148,414 |
| Board Eligible - Less than 2 years experience | | $132,725 | $142,230 | $151,506 |
| Board Eligible - 2 to 5 years of experience | | | | |
| Board Eligible - 5 or more years of experience | | Primary Care Physicians who do not obtain board certification within five years of eligibility are not qualified | | |
| Board Certified - Less than 2 years experience [7] | | $141,380 | $151,506 | $160,782 |
| Board Certified - 2 to 5 years of experience [7] | | $144,265 | $154,597 | $163,872 |
| Board Certified - 5 or more years of experience [7] | | $150,039 | $160,782 | $170,056 |
| Principal Veterinarian | 37-1/2 | $78,830 | $84,477 | Flat rate |
| Psychiatrist [2] | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Public Health Officer (including specialties) | 37-1/2 | $92,550 | $99,176 | $110,108 |
| Radiation Therapist | 21-1/2 | $54,116 | $57,989 | $75,583 |
| Roentgenologist [2 6] | 21-1/2 | $54,116 | $57,989 | $75,583 |

8013
D000609

|  | Work Week | i. Minimum [1] | | ii. Maximum |
|---|---|---|---|---|
| a.  Effective March 15, 2008 | | (1) Hiring Rate | (2) Incumbent Rate | |
| Senior Anesthesiologist | 21-1/2 | $60,872 | $65,233 | $78,688 |
| Senior Clinician [6] | 37-1/2 | $94,423 | $101,185 | Flat rate |
| Senior Dentist [6] | 37-1/2 | $94,423 | $101,185 | Flat rate |
| Senior Medical Specialist (including specialties) | 37-1/2 | $97,438 | $104,416 | Flat rate |
| Senior Pathologist [2] | 21-1/2 | $60,872 | $65,233 | $78,688 |
| Senior Psychiatrist [2] | 21-1/2 | $60,872 | $65,233 | $78,688 |
| Senior Public Health Officer (including specialties) [6] | 37-1/2 | $102,619 | $109,970 | Flat rate |
| Senior Radiation Therapist | 21-1/2 | $60,872 | $65,233 | $78,688 |
| Senior Roentgenologist [2] | 21-1/2 | $60,872 | $65,233 | $78,688 |
| Supervising Anesthesiologist | 21-1/2 | $65,244 | $69,916 | $79,717 |
| Supervising Pathologist [2] | 21-1/2 | $65,244 | $69,916 | $79,717 |
| Supervising Psychiatrist [2] | 21-1/2 | $65,244 | $69,916 | $79,717 |
| Supervising Roentgenologist [2] | 21-1/2 | $65,244 | $69,916 | $79,717 |
| Veterinarian [6] | 37-1/2 | $71,579 | $76,706 | Flat rate |

SCHEDULE B - HOURLY & PER TOUR PAID EMPLOYEES

|  | | | | |
|---|---|---|---|---|
| Anesthesiologist | N/A | $63.89 | $68.44 | Hrly Rt |
| Assistant Director of Service (including specialties) | N/A | $63.89 | $68.44 | Hrly Rt |
| Assistant Anesthesiologist | N/A | $57.75 | $61.89 | Hrly Rt |
| Assistant Pathologist | N/A | $57.75 | $61.89 | Hrly Rt |
| Assistant Psychiatrist | N/A | $57.75 | $61.89 | Hrly Rt |
| Assistant Roentgenologist | N/A | $57.75 | $61.89 | Hrly Rt |
| Chiropractor | N/A | $27.31 | $29.28 | Hrly Rt |
| City Clinician (P/T) | N/A | $57.75 | $61.89 | Hrly Rt |
| City Medical Specialist (P/T) Level I | N/A | $63.89 | $68.44 | Hrly Rt |
| City Medical Specialist (P/T) Level II | N/A | $63.89 | $68.44 | Hrly Rt |
| City Medical Specialist (P/T) Level III | N/A | $62.94 | $67.43 | $79.70 |
| City Medical Specialist (P/T) Level IV | N/A | $66.32 | $71.08 | $94.76 |
| City Dentist (P/T) Level I | N/A | $57.75 | $61.89 | Hrly Rt |
| City Dentist (P/T) Level II | N/A | $64.30 | $68.90 | Hrly Rt |
| City Veterinarian (P/T) | N/A | $48.83 | $52.33 | Hrly Rt |
| Clinician | N/A | $57.75 | $61.89 | Hrly Rt |
| Dentist [6] | N/A | $57.75 | $61.89 | Hrly Rt |
| Dentist Level I | N/A | $57.75 | $61.89 | Hrly Rt |

D000610

| a.  Effective March 15, 2008 | Work Week | i. Minimum [1] | | ii. Maximum |
|---|---|---|---|---|
| | | (1) Hiring Rate | (2) Incumbent Rate | |
| Dentist Level II | N/A | $64.30 | $68.90 | Hrly Rt |
| Director of Chiropractic (MAP) | N/A | $38.02 | $40.76 | Hrly Rt |
| Director of Optometry (MAP) | N/A | $48.83 | $52.33 | Hrly Rt |
| Medical Investigator | N/A | $253.76 | $271.94 | Per Tour |
| Medical Officer (Department of Correction) Level I | N/A | $74.98 | $80.37 | Hrly Rt |
| Medical Officer (Department of Correction) Level II | N/A | $83.32 | $89.30 | Hrly Rt |
| Medical Specialist (except NYCTA) | N/A | $63.89 | $68.44 | Hrly Rt |
| Medical Specialist (P/T Department of Correction) | N/A | $63.89 | $68.44 | Hrly Rt |
| Neuropathologist [2] | N/A | $63.89 | $68.44 | Hrly Rt |
| Optometrist | N/A | $48.83 | $52.33 | Hrly Rt |
| Pathologist [2] | N/A | $63.89 | $68.44 | Hrly Rt |
| Physiatrist | N/A | $63.89 | $68.44 | Hrly Rt |
| Physician | N/A | $57.75 | $61.89 | Hrly Rt |
| Physician Level I (Per Hour) [2] | N/A | $57.75 | $61.89 | Hrly Rt |
| Physician Level II (Per Hour) [2] | N/A | $63.89 | $68.44 | Hrly Rt |
| Physician Specialist [2] | N/A | $66.33 | $71.09 | $94.76 |
| Podiatrist | N/A | $52.20 | $55.92 | Hrly Rt |
| Podiatrist [2] | N/A | $52.20 | $55.92 | Hrly Rt |
| Psychiatrist | N/A | $63.89 | $68.44 | Hrly Rt |
| Psychiatrist (Per Hour) [2] | N/A | $63.89 | $68.44 | Hrly Rt |
| Radiation Therapist | N/A | $63.89 | $68.44 | Hrly Rt |
| Roentgenologist [2] | N/A | $63.89 | $68.44 | Hrly Rt |
| Senior Dentist [6] | N/A | $64.30 | $68.90 | Hrly Rt |
| Senior Medical Specialist | N/A | $63.89 | $68.44 | Hrly Rt |
| Senior Medical Specialist (P/T Dept. of Correction) | N/A | $63.89 | $68.44 | Hrly Rt |
| Veterinarian [6] | N/A | $48.83 | $52.33 | Hrly Rt |

## b. Effective March 15, 2009

| | Work Week | i. Minimum [1] | | ii. Maximum |
|---|---|---|---|---|
| | | (1) Hiring Rate | (2) Incumbent Rate | |
| **SCHEDULE A – ANNUALLY PAID EMPLOYEES** | | | | |
| Anesthesiologist [2] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Assistant Anesthesiologist [2] | 21-1/2 | $49,410 | $52,952 | $75,378 |
| Assistant Pathologist [2] | 21-1/2 | $49,410 | $52,952 | $75,378 |
| Assistant Psychiatrist [2] | 21-1/2 | $49,410 | $52,952 | $75,378 |
| Assistant Roentgenologist [2] | 21-1/2 | $49,410 | $52,952 | $75,378 |
| Associate Medical Examiner (OCME) [6] | 37-1/2 | $117,847 | $126,286 | Flat rate |
| Attending Dentist Level I 970310 | 40 | $103,242 | $110,636 | Flat Rate |
| Attending Dentist Level II 970320 | 40 | $108,412 | $116,175 | |
| | | $113,828 | $121,974 | |
| | | $119,520 | $128,082 | |
| | | $125,494 | $134,480 | |
| Attending Dentist Level III 970330 | 40 | $131,767 | $141,202 | |
| | | $138,353 | $148,258 | |
| | | $145,271 | $155,672 | |
| | | $152,536 | $163,456 | |
| | | $160,162 | $171,632 | |
| Attending Physician I (including specialties) [2] [3] [4] | 40 | | | Flat Rate |
| | | $103,242 | $110,636 | |
| Attending Physician II (including specialties) [2] [4] | 40 | $108,412 | $116,175 | |
| | | $113,828 | $121,974 | |
| | | $119,520 | $128,082 | |
| | | $125,494 | $134,480 | |
| Attending Physician III (including specialties) [2] [4] | 40 | $131,767 | $141,202 | |
| | | $138,353 | $148,258 | |
| | | $145,271 | $155,672 | |
| | | $152,536 | $163,456 | |
| | | $160,162 | $171,632 | |
| City Clinician Level I [2] | 37-1/2 | $92,623 | $99,258 | Flat rate |
| City Clinician Level II [2] | 37-1/2 | $98,200 | $105,232 | Flat rate |
| City Dentist Level I | 37-1/2 | $92,623 | $99,258 | Flat rate |
| City Dentist Level II | 37-1/2 | $98,200 | $105,232 | Flat rate |
| City Medical Examiner Level I [2 & 5] | 37-1/2 | $122,731 | $131,518 | |
| | | $128,866 | $138,095 | |

D000612

| b. Effective March 15, 2009 | Work Week | i. Minimum [1] | | ii. Maximum |
|---|---|---|---|---|
| | | (1) Hiring Rate | (2) Incumbent Rate | |
| | | $135,006 | $144,670 | |
| | | $141,137 | $151,242 | |
| | | $147,272 | $157,818 | |
| City Medical Examiner Level II [2 & 5] | 37-1/2 | $149,027 | $159,701 | |
| | | $155,600 | $166,741 | |
| | | $162,178 | $173,789 | |
| | | $168,751 | $180,834 | |
| | | $175,326 | $187,880 | |
| City Medical Specialist Level I [2] | 37-1/2 | $96,150 | $103,038 | Flat rate |
| City Medical Specialist Level II [2] | 37-1/2 | $101,336 | $108,593 | Flat rate |
| City Medical Specialist Level III [2] | 40 | $135,559 | $145,266 | $171,680 |
| City Medical Specialist Level IV [2] | 40 | $142,859 | $153,091 | $204,122 |
| City Veterinarian Level I | 37-1/2 | $74,442 | $79,774 | Flat rate |
| City Veterinarian Level II | 37-1/2 | $81,983 | $87,856 | Flat rate |
| Clinician [6] | 37-1/2 | $92,623 | $99,258 | Flat rate |
| Clinician (DOH only) | 37-1/2 | $92,623 | $99,258 | Flat rate |
| Dentist [6] | 37-1/2 | $92,623 | $99,258 | Flat rate |
| Dentist Level A [6] | 40 | $98,723 | $105,788 | Flat rate |
| Dentist Level B [6] | 40 | $104,665 | $112,160 | Flat rate |
| Dentist Level I | 37-1/2 | $92,623 | $99,258 | Flat rate |
| Dentist Level II | 37-1/2 | $98,200 | $105,232 | Flat rate |
| Health Officer in Training | 37-1/2 | $63,859 | $68,432 | $74,181 |
| Junior Medical Examiner (OCME) | 37-1/2 | $84,088 | $90,107 | Flat rate |
| Junior Public Health Officer (including specialties) | 37-1/2 | $63,859 | $68,432 | $74,181 |
| Medical Inspector (including specialties) | 37-1/2 | $90,690 | $97,182 | Flat rate |
| Medical Investigator | 37-1/2 | $67,173 | $71,983 | Flat rate |
| Medical Officer (Sanitation) | 21-1/2 | $43,974 | $47,123 | Flat rate |
| Medical Specialist (Ophthalmology ) [6] | 37-1/2 | $96,150 | $103,038 | Flat rate |
| Medical Specialist (Otolaryngology) [6] | 37-1/2 | $96,150 | $103,038 | Flat rate |
| Medical Specialist (including specialties) | 37-1/2 | $96,150 | $103,038 | Flat rate |
| Medical Specialist (Sanitation) | 37-1/2 | $96,150 | $103,038 | Flat rate |

D000613

| | | | | |
|---|---|---|---|---|
| Medical Subspecialist (DOH) [2] | 40 | $142,859 | $153,091 | |
| | | $152,386 | $163,297 | |
| | | $161,908 | $173,503 | |
| | | $171,430 | $183,709 | |
| | | $180,957 | $193,914 | |
| | | $190,479 | $204,122 | |
| Neuropathologist [2] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Pathologist [2] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Physiatrist [2] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Physician [2] | 37-1/2 | $92,623 | $99,258 | Flat rate |
| Physician Specialist [2] | 40 | $142,859 | $153,091 | |
| | | $152,386 | $163,297 | |
| | | $161,908 | $173,503 | |
| | | $171,430 | $183,709 | |
| | | $180,957 | $193,914 | |
| | | $190,479 | $204,122 | |
| Primary Care Physician (Communicare/Managed Care) [2 6] [7] | 37-1/2 [7] | | | |
| Board Eligible - Less than 2 years experience | | $135,034 | $144,702 | $154,351 |
| Board Eligible - 2 to 5 years of experience | | $138,034 | $147,919 | $157,566 |
| Board Eligible - 5 or more years of experience | | Primary Care Physicians who do not obtain board certification within five years of eligibility are not qualified | | |
| Board Certified - Less than 2 years experience [7] | | $147,035 | $157,566 | $167,213 |
| Board Certified - 2 to 5 years of experience [7] | | $150,036 | $160,781 | $170,427 |
| Board Certified - 5 or more years of experience [7] | | $156,041 | $167,213 | $176,858 |
| Primary Care Physician (Communicare) [7] | 37-1/2 [7] | | | |
| Board Eligible - Less than 2 years experience | | $135,034 | $144,702 | $154,351 |
| Board Eligible - 2 to 5 years of experience | | $138,034 | $147,919 | $157,566 |
| Board Eligible - 5 or more years of experience | | Primary Care Physicians who do not obtain board certification within five years of eligibility are not qualified | | |
| Board Certified - Less than 2 years experience [7] | | $147,035 | $157,566 | $167,213 |
| Board Certified - 2 to 5 years of experience [7] | | $150,036 | $160,781 | $170,427 |
| Board Certified - 5 or more years of experience [7] | | $156,041 | $167,213 | $176,858 |
| Principal Veterinarian | 37-1/2 | $81,983 | $87,856 | Flat rate |
| Psychiatrist [2] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Public Health Officer (including specialties) | 37-1/2 | $96,252 | $103,143 | $114,512 |
| Radiation Therapist | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Roentgenologist [2 6] | 21-1/2 | $56,281 | $60,309 | $78,606 |
| Senior Anesthesiologist | 21-1/2 | $63,307 | $67,842 | $81,836 |

DOCTORS COUNCIL

D000614

| | | | | |
|---|---|---|---|---|
| Senior Clinician [6] | 37-1/2 | $98,200 | $105,232 | Flat rate |
| Senior Dentist [6] | 37-1/2 | $98,200 | $105,232 | Flat rate |
| Senior Medical Specialist (including specialties) | 37-1/2 | $101,336 | $108,593 | Flat rate |
| Senior Pathologist [2] | 21-1/2 | $63,307 | $67,842 | $81,836 |
| Senior Psychiatrist [2] | 21-1/2 | $63,307 | $67,842 | $81,836 |
| Senior Public Health Officer (including specialties) [6] | 37-1/2 | $106,724 | $114,369 | Flat rate |
| Senior Radiation Therapist | 21-1/2 | $63,307 | $67,842 | $81,836 |
| Senior Roentgenologist [2] | 21-1/2 | $63,307 | $67,842 | $81,836 |
| Supervising Anesthesiologist | 21-1/2 | $67,854 | $72,713 | $82,906 |
| Supervising Pathologist [2] | 21-1/2 | $67,854 | $72,713 | $82,906 |
| Supervising Psychiatrist [2] | 21-1/2 | $67,854 | $72,713 | $82,906 |
| Supervising Roentgenologist [2] | 21-1/2 | $67,854 | $72,713 | $82,906 |
| Veterinarian [6] | 37-1/2 | $74,442 | $79,774 | Flat rate |

SCHEDULE B - HOURLY & PER TOUR PAID EMPLOYEES

| | | | | |
|---|---|---|---|---|
| Anesthesiologist | N/A | $66.45 | $71.18 | Hrly Rt |
| Assistant Director of Service (including specialties) | N/A | $66.45 | $71.18 | Hrly Rt |
| Assistant Anesthesiologist | N/A | $60.06 | $64.37 | Hrly Rt |
| Assistant Pathologist | N/A | $60.06 | $64.37 | Hrly Rt |
| Assistant Psychiatrist | N/A | $60.06 | $64.37 | Hrly Rt |
| Assistant Roentgenologist | N/A | $60.06 | $64.37 | Hrly Rt |
| Chiropractor | N/A | $28.40 | $30.45 | Hrly Rt |
| City Clinician (P/T) | N/A | $60.06 | $64.37 | Hrly Rt |
| City Medical Specialist (P/T) Level I | N/A | $66.45 | $71.18 | Hrly Rt |
| City Medical Specialist (P/T) Level II | N/A | $66.45 | $71.18 | Hrly Rt |
| City Medical Specialist (P/T) Level III | N/A | $65.46 | $70.13 | $82.89 |
| City Medical Specialist (P/T) Level IV | N/A | $68.97 | $73.92 | $98.55 |
| City Dentist (P/T) Level I | N/A | $60.06 | $64.37 | Hrly Rt |
| City Dentist (P/T) Level II | N/A | $66.87 | $71.66 | Hrly Rt |
| City Veterinarian (P/T) | N/A | $50.78 | $54.42 | Hrly Rt |
| Clinician | N/A | $60.06 | $64.37 | Hrly Rt |
| Dentist [6] | N/A | $60.06 | $64.37 | Hrly Rt |
| Dentist Level I | N/A | $60.06 | $64.37 | Hrly Rt |
| Dentist Level II | N/A | $66.87 | $71.66 | Hrly Rt |
| Director of Chiropractic (MAP) | N/A | $39.54 | $42.39 | Hrly Rt |
| Director of Optometry (MAP) | N/A | $50.78 | $54.42 | Hrly Rt |

14        DOCTORS COUNCIL

D000615

| | | | | |
|---|---|---|---|---|
| Medical Investigator | N/A | $263.91 | $282.82 | Per Tour |
| Medical Officer (Department of Correction) Level I | N/A | $77.98 | $83.58 | Hrly Rt |
| Medical Officer (Department of Correction) Level II | N/A | $86.65 | $92.87 | Hrly Rt |
| Medical Specialist (except NYCTA) | N/A | $66.45 | $71.18 | Hrly Rt |
| Medical Specialist (P/T Department of Correction) | N/A | $66.45 | $71.18 | Hrly Rt |
| Neuropathologist [2] | N/A | $66.45 | $71.18 | Hrly Rt |
| Optometrist | N/A | $50.78 | $54.42 | Hrly Rt |
| Pathologist [2] | N/A | $66.45 | $71.18 | Hrly Rt |
| Physiatrist | N/A | $66.45 | $71.18 | Hrly Rt |
| Physician | N/A | $60.06 | $64.37 | Hrly Rt |
| Physician Level I (Per Hour) [2] | N/A | $60.06 | $64.37 | Hrly Rt |
| Physician Level II (Per Hour) [2] | N/A | $66.45 | $71.18 | Hrly Rt |
| Physician Specialist [2] | N/A | $68.98 | $73.93 | $87.62 |
| Podiatrist | N/A | $54.29 | $58.16 | Hrly Rt |
| Podiatrist [2] | N/A | $54.29 | $58.16 | Hrly Rt |
| Psychiatrist | N/A | $66.45 | $71.18 | Hrly Rt |
| Psychiatrist (Per Hour) [2] | N/A | $66.45 | $71.18 | Hrly Rt |
| Radiation Therapist | N/A | $66.45 | $71.18 | Hrly Rt |
| Roentgenologist [2] | N/A | $66.45 | $71.18 | Hrly Rt |
| Senior Dentist [6] | N/A | $66.87 | $71.66 | Hrly Rt |
| Senior Medical Specialist | N/A | $66.45 | $71.18 | Hrly Rt |
| Senior Medical Specialist (P/T Dept. of Correction) | N/A | $66.45 | $71.18 | Hrly Rt |
| Veterinarian [6] | N/A | $50.78 | $54.42 | Hrly Rt |

1 See Article III, Section 4
2 Appointments by the Health & Hospitals Corporation to this position above the hiring rate will be handled on a case by case basis.
3 See Article IV, Section 1
4 See Article III, Section 2(d).
5 See Article IV, Section 3
6 For present incumbents only.
7 See Article III, Section 2(d)

c.   **Special terms and conditions applicable to Attending Physicians**

Each employee in the Attending Physician title shall be reviewed annually by his/her Department Chairperson and/or Medical Director in order to determine his/her eligibility for assignment to a higher level within the Attending Physician title (e.g., to Attending Physician level II or III). The Department Chairperson or Medical Director shall submit a recommendation with respect thereto to the Executive Director. The Executive Director shall review such recommendations with reference to the performance, qualifications, and experience of the employee; the level of duties and responsibilities which the employee has exercised; and the staffing requirements of the department or unit.

D000616

The Health and Hospitals Corporation shall have final authority with respect to any such recommendation, and the provisions of this section shall be subject to proceedings up to, but not beyond Step II of the grievance procedure, as set forth at Article VIII hereof.

d.   **Special terms and conditions applicable to Primary Care Physicians**

    i.    Employees serving in the titles of Primary Care Physician (Communicare/Managed Care) and Primary Care Physician (Communicare) shall be subject to a <u>**minimum**</u> work week of **37-1/2** hours which shall include the following requirements:

        (1)    A minimum of six out-patient clinical sessions (five clinical sessions for OB/GYN), including one evening and/or one weekend session.

        (2)    Direct participation in 24-hour telephone coverage for a reasonable number of primary care patients, including all of the employee's panel of patients.

        (3)    Participation in in-patient care of the employee's patients and in-patient teaching rounds.

        (4)    Participation in administrative functions (*e.g.* Quality Assurance Committee, Peer Review Committee, et al) required of a physician in a Communicare/Managed Care practice.

    ii.    Employees serving in the titles of Primary Care Physician (Communicare/Managed Care) and Primary Care Physician (Communicare) shall <u>**not**</u> receive any additional compensation for overtime, being on-call, night shifts, or work performed on holidays.

    iii.    Leave accrual rates for employees serving in the titles of Primary Care Physician (Communicare/Managed Care) and Primary Care Physician (Communicare) shall be based on a work week of 37-1/2 hours.

    iv.    A labor/management committee shall be established to review the operation and effect of the scheduling provisions set forth in this Section 2(d).

    v.    Patient loads; scheduling of evening, weekend, and holiday out-patient clinical sessions; and phone coverage shall be equitably distributed among all employees within the service or Communicare/Managed Care practice.

    vi.    As employees serving in the titles of Primary Care Physician (Communicare/Managed Care) and Primary Care Physician (Communicare) are required as a condition of employment to maintain their credentials and in-patient attending privileges, such employees shall be permitted time off from their regular schedule, subject to the scheduling needs of the service or Communicare/Managed Care practice, to meet the requirements of Continuing Medical Education which are a prerequisite to maintaining such credentials and in-patient attending privileges.

    vii.    Qualified Primary Care Physicians (Communicare/Managed Care) or Primary Care Physicians (Communicare), who are reassigned from the Board Eligible Salary Schedule to the Board Certified Salary Schedule without a break in service, shall be reassigned at the same experience level.

DOCTORS COUNCIL 9013
D000617

<u>Section 3. Wage Increases</u>

A.   **Additional Compensation Funds**

Effective March 15, 2010, the bargaining unit shall have available funds not to exceed 0.25% to purchase recurring benefits, mutually agreed to by the parties, other than to enhance the general wage increases set forth in Section 3 or the hiring rate for new employees set forth in Section 4.  The funds available shall be based on the December 31, 2007 payroll, including spinoffs and pensions.

B.   **General Wage Increase**

    a.   The general increases, effective as indicated, shall be:

        i.   Effective March 15, 2008, Employees shall receive a general increase of 4%.

        ii.   Effective March 15, 2009, Employees shall receive an additional general increase of 4%.

        iii.   Part-time per annum, per diem, per session, hourly-paid and per tour Employees (including seasonal appointees) and Employees whose normal work year is less than a full calendar year shall receive the increases provided in subsections 3(B)(a)(i) and 3(B)(a)(ii) on the basis of computations heretofore utilized by the parties for all such Employees.

    b.   The increases provided for in Section 3B(a) above shall be calculated as follows:

        i.   The general increase in Section 3B(a)(i) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on March 14, 2008;

        ii.   The general increase in Section 3B(a)(ii) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on March 14, 2009.

    c.   i.   The general increases provided for in this Section 3 shall be applied to the base rates, incremental salary levels and the minimum "hiring rates," minimum "incumbent rates" and maximum rates (including levels), if any, fixed for the applicable titles.

        ii.   The general increases provided for in this Section 3 shall <u>not</u> be applied to the "additions-to-gross" or assignment differentials.



D000618

### Section 4. New Hires

a.  For the purposes of Sections 4(c) and 4(d), employees 1) who were in active pay status before March 15, 2008, and 2) who are affected by the following personnel actions after said date shall not be treated as "newly hired" employees and shall be entitled to receive the indicated minimum "incumbent rate" set forth in subsections 2(a)(i)(2) and 2(b)(i)(2) of this Article III:

    i.   Employees who return to active status from an approved leave of absence.

    ii.  Employees in active status (whether full or part-time) appointed to permanent status from a civil service list, or to a new title (regardless of jurisdictional class or civil service status) without a break in service of more than 31 days.

    iii. Employees who were laid off or terminated for economic reasons who are appointed from a recall/preferred list or who were subject to involuntary redeployment.

    iv.  Provisional employees who were terminated due to a civil service list who are appointed from a civil service list within one year of such termination.

    v.   Permanent employees who resign and are reinstated or who are appointed from a civil service list within one year of such resignation.

    vi.  Employees (regardless of jurisdictional class or civil service status) who resign and return within 31 days of such resignation.

    vii. A provisional employee who is appointed directly from one provisional appointment to another.

    viii. For employees whose circumstances were not anticipated by the parties, the First Deputy Commissioner of Labor Relations is empowered to issue, on a case-by-case basis, interpretations concerning application of this Section 4. Such case-by-case interpretations shall not be subject to the dispute resolution procedures set forth in Article VIII of this Agreement.

b.  The appointment rate for any employee newly hired after March 15, 2008, shall be the applicable minimum "hiring rate" set forth in subsections 2(a)(i)(1) and 2(b)(i)(1) of this Article III. Upon completion of one year of service, such employee shall be paid the indicated minimum "incumbent rate" for the applicable title that is in effect on the one year anniversary of the employee's original date of appointment as set forth in subsections 2(a)(i)(2) and 2(b)(i)(2) of this Article III.

c.  i.   For a title subject to an incremental pay plan, the employee shall be paid the appropriate increment based upon the employee's length of service. Section 2, Schedule A of this Article III reflects the correct amounts and has been adjusted in accordance with the provisions of Section 3B(c)(i) of this Article III.

    ii.  Employees who change titles or levels before attaining one year of service will be treated in the new title or level as if they had been originally appointed to said title or level on their original hiring date.


D000619

d.   The First Deputy Commissioner of Labor Relations may, after notification to the affected union(s), exempt certain hard to recruit titles from the provisions of subsection 4.

## Section 5.

Each general increase provided herein, effective as of each indicated date, shall be applied to the rate in effect on the date as specified in Section 3 of this Article. In the case of a promotion or other advancement to the indicated title on the effective date of the general increase specified in Section 3 of this Article, such general increase shall not be applied, but the general increase, if any, for the title formerly occupied, effective on the date indicated shall be applied.

## Section 6.

In the case of an Employee on leave of absence without pay the salary rate of such Employee shall be changed to reflect the salary adjustments specified in Article III.

## Section 7.

A person permanently employed by the Employer who is appointed or promoted on a permanent, provisional, or temporary basis in accordance with the Personnel Rules and Regulations of the City of New York or, where the Personnel Rules and Regulations of the City of New York are not applicable to a public employer, such other Rules or Regulations as are applicable to the public employer, without a break in service to any of the following title(s) from another title in the direct line of promotion or from another title in the Career and Salary Plan, the minimum rate of which is exceeded by at least 8 percent by the minimum rate of the title to which appointed or promoted, shall receive upon the date of such appointment or promotion either the minimum basic salary for the title to which such appointment or promotion is made, or the salary received or receivable in the lower title plus the specified advancement increase, whichever is greater:

| Title: | 3/15/08 |
|---|---|
| Senior Dentist (annually paid only) | $1,733 |
| Senior Public Health Officer | $2,081 |

## Section 8.  Assignment Differentials & Longevity Payments

a.   Employees in the title of Attending Physician II (title code number 97022) shall receive a payment in the amounts specified below, separate and apart from the employee's salary rate, for Board Certification in an approved specialty area if they have been hired for and are assigned to work in that area:

**Effective**
**March 15, 2008**
$2,900

DOCTORS COUNCIL 9013

D000620

Proration of this payment, for employees in this title working less than the full-time work week of 40 hours shall be computed on the basis of the weekly average number of hours in the fiscal year actually worked by the affected employee compared to the weekly number of hours in the normal work year for the title of Attending Physician II.

b.  A payment in the amounts specified below shall be paid to each hourly-paid Clinician, Dentist, and Physician Level I, Dentist Level I when specifically assigned to the performance of supervisory duties:

**Effective**
**March 15, 2008**
$5.82 per hour

c.  A longevity differential, separate from the employee's basic rate, shall be paid to qualified incumbents in an indicated per annum title listed below upon completion of the applicable years of continuous service in positions listed in this Agreement. Authorized unpaid leaves of absence shall not constitute a break in service and shall not be credited as service. Said differentials shall be paid at the specific annual rates set forth below and are not cumulative.

    i.

| | |
|---|---|
| Attending Dentist II | Dentist |
| Attending Physician II | Medical Inspector |
| Junior Medical Examiner | Medical Investigator |
| Associate Medical Examiner | Physician |
| City Clinician Level I | Junior Public Health Officer |
| City Dentist Level I | Public Health Officer |
| City Medical Examiner | Veterinarian |
| City Veterinarian Level I | |
| Clinician | |

| Years of Service | 3/15/08 |
|---|---|
| After 5 years | $2,849 |
| After 10 years | $5,960 |
| After 15 years | $9,331 |

    ii.

| | |
|---|---|
| Attending Dentist III | Senior Dentist |
| Attending Physician III | Senior Medical Specialist |
| City Clinician Level II | Senior Public Health Officer |
| City Dentist Level II | Physician Specialist |
| City Medical Specialist Level II | Primary Care Physician (Communicare) * |
| City Veterinarian Level II | Primary Care Physician (Communicare/Managed |
| Medical Subspecialist | Care) * |
| Senior Clinician | Principal Veterinarian |

* The five year longevity step shall not apply to employees in the indicated titles who were not serving in a title covered by this Agreement at the time of their appointment to the title.

| Years of Service | 3/15/08 |
|---|---|
| After 5 years | $3,371 |
| After 10 years | $7,004 |
| After 15 years | $10,897 |

d.  i.  The proration of the differentials listed in subsection 8(c), for employees in these titles working less than the full-time work week specified in Article III, Section 2, Schedule A, shall be computed on the basis of the weekly average



D000621

number of hours in the fiscal year actually worked by the affected employee compared to the weekly number of hours in the normal work year for the specified title. (Refer to Article III, Section 2 for the corresponding work week.)

ii.   All hourly-paid employees paid pursuant to Schedule B receiving the applicable per hour differential pursuant to subsection 7(h) and whose positions are reclassified pursuant to Article IV, Section 2 of this Agreement shall have $1468 deducted from the longevity differentials provided in subsection 7(c) above. Said deduction shall be pro rated for all such reclassified employees working less than the full-time work week specified in Article III, Section 2, Schedule A pursuant to subsection 7(d)(i) above. All hourly-paid employees whose position will be reclassified pursuant to Article IV, Section 2 and who are not entitled to the payment of any differential pursuant to subsection 7(h) shall receive credit for service rendered prior to their reclassification for purpose of payment pursuant to this subsection 7(d).

e.   A differential in the amounts specified below shall be paid to each full-time per annum employee in a title listed in Article III, Section 2, Schedule A, who is assigned on a regular and continuing basis to the performance of duties in a prison facility of the Department of Correction:

Effective
March 15, 2008
$2,900

f.   A differential in the amounts per hour specified below shall be paid to hourly-paid employees in a title listed in Article III, Section 2, Schedule B, for each hour in the performance of assigned duties in a prison facility of the Department of Correction:

Effective
March 15, 2008
$2.42 per hour

g.   The payment specified below shall be paid to each hourly-paid City Medical Specialist Level II, Physician Level II, Director of Optometry and Senior Medical Specialist for the performance of supervisory duties:

Effective
March 15, 2008
$5.82 per hour

h.   A longevity payment in the amounts per hour specified below, separate from the **employee's** hourly rate, shall be paid to **employees** in an hourly-paid title listed in Article III, Section 2, Schedule B, who have completed five (5) years of service or one thousand (1,000) sessions, whichever is first achieved, effective the first day of January or July next succeeding the day of such completion of service or sessions. This longevity payment shall not be paid in combination with payments made pursuant to subsection 8(c).

D000622

Effective
**March 15, 2008**
$0.81 per hour

i.     A differential in the amounts specified below shall be paid to each hourly-paid Podiatrist who is duly designated and performs the duties of Chief of Section:

Effective
**March 15, 2008**
$6.03 per hour

j.     A differential in the amounts specified below shall be paid to hourly-paid Psychiatrists employed by the Human Resources Administration and the Department of Mental Health, Retardation and Alcoholism Services; or employed on a per diem basis to perform field duties by the Health and Hospitals Corporation and assigned to "Project HELP."

Effective
**March 15, 2008**
$12.60 per hour

## Section 9. Annuity Fund

a.     The parties shall continue to contribute to an annuity fund for certain employees covered by this Agreement subject to the terms of a signed supplemental agreement approved by the Corporation Counsel.

b.     **Covered Employees:**

      i.     Annualized employees paid pursuant to Schedule A who work who work 978-3/4 or more hours in a calendar year (for titles with a 21.5 or 37-1/2 hour work week), or who work 1,044 or more hours in a calendar year (for titles with a 40 hour work week.)

      ii.     Hourly or per tour employee of Mayoral Agencies paid pursuant to Schedule B who work 978-3/4 hours in a calendar year.

      iii.     Hourly employees of the Health and Hospitals Corporation paid pursuant to Schedule B who works 1,044 or more hours in a calendar year. Hourly employees of the Health and Hospitals Corporation who were transferred to the Health and Hospitals Corporation from the Department of Health, or who were hired into those services since, shall be subject to the provisions of Section 9(b)(ii), above.

c.     **Definitions**

      scheduled days off:   An employee's regular days off ("RDOs"). For example, Saturday and Sunday would be the scheduled days off for a full-time per annum employee working a Monday through Friday schedule.



DOCTORS COUNCIL

D000623

**d.**        **Regular Contributions.**

     **i.**      Contributions on behalf of each covered employee shall continue to be remitted by the employer to the mutually agreed upon annuity fund at the rate of $2.57 for each hour actually worked subject to:

         **a.**     the provisions of Section 9(e);

         **b.**     the annual maximum payments set forth in Section 9(d)(iii); and

         **c.**     the terms of a signed supplemental agreement executed by the Employer and the Union and approved by the Corporation Counsel.

     **ii.**     The frequency and schedule of payments shall be addressed in the supplemental agreement.

     **iii.**    Maximum Annual Payment:

| Normal Work Week | Effective March 15, 2008 |
|---|---|
| 21.5 hours | $2,683 |
| 37.5 hours | $4,695 |
| 40 hours (incl. PCPs @ 37.5) | $5,031 |

**e.**     For the purpose of Sections 9(c) and 9(d), excluded from normal working hours are all scheduled time off or cash payments in lieu thereof, all time in non-pay status, and all paid overtime or work in excess of the normal work week. "All hours in non-pay status" as used in this Section 9(e) shall be defined as including, but not limited to, the following:

     **i.**      time on preferred or recall lists;

     **ii.**     time on the following approved unpaid leaves:

         **(1)**    maternity/childcare leave;

         **(2)**    military leave;

         **(3)**    unpaid time while on jury duty;

         **(4)**    unpaid leave for union business pursuant to Executive Order 75;

         **(5)**    unpaid leave pending workers' compensation determination;

         **(6)**    unpaid leave while on workers' compensation option 2;

         **(7)**    approved unpaid time off due to illness or exhaustion of paid sick leave;

09013
D000624

      (8)    approved unpaid time off due to family illness; and

      (9)    other pre-approved leaves without pay;

  iii.    time while on absence without leave;

  iv.    time while on unapproved leave without pay; or

  v.    time while on unpaid suspensions.

f.  The per annum contribution rates and the one-time lump sum payment paid on behalf of eligible part-time per annum, hourly paid, per session and per diem employees whose normal work year is less than a full calendar year shall be adjusted in the same proportion heretofore utilized by the parties for all such Employees as the per annum contribution rates are adjusted for full-time Employees.

## ARTICLE IV - PERSONNEL AND PAY PRACTICES

### Section 1.  Attending Physician

Employees in the title of Attending Physician I shall be automatically promoted to the title of Attending Physician II, upon completion of five (5) years of post-medical school practice, of which at least two and one-half (2-1/2) years must be within the municipal system.  There shall be no automatic promotions from the Attending Physician II title to Attending Physician III.

### Section 2.  Per Session Annualization

a.    Each hourly-paid physician and dentist employed by the Health & Hospitals Corporation who is regularly employed 20 hours or more per week and who has completed one year of such regular employment shall be reclassified as an Attending Physician, provided that said employee meets the qualifications for the per annum title.

b.    Employees reclassified under subsection 2(a) above, shall not be subject to a diminution of salary rate as a result of the reclassification.

c.    The reclassification of hourly-paid employees provided herein shall be involuntary unless an affected employee is a member of the New York City Retirement System and can demonstrate upon notification that the employee's pension benefits will be adversely affected.

### Section 3.  City Medical Examiners

a.    Appointment to the annual salary rates for City Medical Examiner listed in Article III, section 3(b) shall be based upon the relative training and experience of the appointee.

D000625

b.   Seniority in title for purposes implementing the provisions of Article III, Section 8(c), and Article X, shall accrue from the date of appointment to City Medical Examiner. For purposes of this provision time served in the title of Associate Medical Examiner shall count as time served as City Medical Examiner.

c.   For purposes implementing the disciplinary provisions of Article VIII, Sections 1(d) or 1(e); the job security provisions of Article IX, Section 3; and for purposes of dismissal or reduction in level during the contractually required one year of satisfactory service; City Medical Examiner Level I and II shall be deemed separate titles, and seniority shall accrue from the date of assignment to said Level I or II, except that time served in the title of Associate Medical Examiner shall count as time served in City Medical Examiner Level I.

d.   Employees assigned to City Medical Examiner II pursuant to subsection 3(f) shall be required to serve satisfactorily for nine (9) months to qualify for disciplinary rights pursuant to Article VIII, Subsections 1(d) and 1(e) upon a reduction in level, and the Union may appeal any reduction in level during said nine month qualifying period which it alleges to have been made for arbitrary and capricious reasons up to and including Step III of the contractual disciplinary procedure, but not beyond.

e.   Employees who do not complete required satisfactory service for City Medical Examiner II pursuant to subsection 3(d) or who are reduced in level for economic reasons shall retain tenure in the lower level position of City Medical Examiner I provided they have completed the year of satisfactory service for City Medical Examiner I or the probationary period for Associate Medical Examiner.

f.   Employees reclassified or appointed as City Medical Examiner Level I who have or obtain board certification in an approved specialty shall be appointed as City Medical Examiner Level II within sixty (60) days of providing proof of such certification to the Chief Medical Examiner, provided they meet the other qualifications set forth in the Job Specification for the title.

### Section 4. Holidays

Employees in Mayoral Agencies who work at least 1,044 hours per annum shall be entitled to receive twelve (12) paid holidays per year.

## ARTICLE V - WELFARE FUND

### Section 1.

In accordance with the election by the Union pursuant to the provisions of Article XIII of the 1995-2001 Citywide Agreement between the City of New York and related public employers and District Council 37, AFSCME, AFL-CIO, or its successor Agreement(s), the Welfare Fund provisions of that 1995-2001 Citywide Agreement as amended or any successor(s) thereto shall apply to employees covered by this Agreement.

09013

D000626

Section 2.

a.   Notwithstanding the provisions of Article XIII of the 1995-2001 Citywide Agreement, the Welfare Fund contribution rates for employees paid pursuant to Schedule B who actually work at least 375 hours in a calendar year, and all per annum employees not covered by Section 1 above, shall be 50 percent of the full-time Welfare Fund contribution rates.

b.   Notwithstanding any other provision of this Section 2, the Welfare Contribution rate on behalf of all employees (except per-session employees of the New York City Health and Hospitals Corporation) working half-time or greater based on the full-time hours set forth in Schedule A and on behalf of Medical Investigators completing 100 tours of duty in a calendar year shall be based on the full-time rate paid pursuant to Section 1.

Section 3.

The Union agrees to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.

Section 4.

In accordance with the Health Benefits Agreement dated January 11, 2001, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active employee to widow(er)s, domestic partners and/or children of any employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code.  The cost of providing this benefit shall be funded by the Stabilization Fund.

## ARTICLE VI - PRODUCTIVITY AND PERFORMANCE

### Introduction

Delivery of municipal services in the most efficient, effective and courteous manner is of paramount importance to the Employer and the Union. Such achievement is recognized to be a mutual obligation of both parties within their respective roles and responsibilities. To achieve and maintain a high level of effectiveness, the parties hereby agree to the following terms:

## Section 1. - Performance Levels

a.   The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise performance standards or norms notwithstanding the existence of prior performance levels, norms or standards. Such standards, developed by usual work measurement procedures, may be used to determine acceptable performance levels, to prepare work schedules and to measure the performance of each employee or group of employees. Notwithstanding the above, questions concerning the practical impact that decisions

9013
D000627

on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of performance standards or norms hereunder.

b.   Employees who work at less than acceptable levels of performance may be subject to disciplinary measures in accordance with applicable law.

## Section 2. - Supervisory Responsibility

a.   The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise standards for supervisory responsibility in achieving and maintaining performance levels of supervised employees for employees in supervisory positions listed in Article I, Section 1, of this Agreement. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of standards for supervisory responsibility hereunder.

b.   Employees who fail to meet such standards may be subject to disciplinary measures in accordance with applicable law.

## Section 3. - Performance Compensation

The Union acknowledges the Employer's right to pay additional compensation for outstanding performance.

The Employer agrees to notify the Union of its intent to pay such additional compensation.

## ARTICLE VII - EMPLOYEES' INDEMNIFICATION

## Section 1.

The City shall be liable for and save harmless each employee covered hereunder for any claim for damages and/or personal injuries alleged to have been sustained by a claimant as a result of any action or omission occurring in the performance of the employee's duties and within the scope of his or her employment.

## Section 2.

The foregoing is conditioned upon the following:

a.   Each employee hereunder shall promptly forward to his/her agency of employment all summonses or notices of whatsoever nature, pertaining to claims received or served upon them or each of them.

b.   Each employee hereunder shall cooperate fully in aiding the City to investigate, adjust, settle or defend each claim, action or proceeding.

c.   The defense of all claims, actions and proceedings within the purview of this Article shall be conducted by the City.  The Corporation Counsel of the City shall appear



D000628

and defend such actions and proceedings on behalf of each employee covered hereunder.

d.    No settlement shall be made without the approval of the City, including the Comptroller, and in accordance with procedures previously employed to settle actions involving municipal employees.

e.    In the event of any appeal from a judgment against an employee hereunder, the City will promptly satisfy the judgment or stay the execution thereof by filing the appropriate bonds or instruments, so that execution shall not issue against the employee.

## ARTICLE VIII - GRIEVANCE PROCEDURE

### Section 1. - Definition:

The term "Grievance" shall mean:

a.    A dispute concerning the application or interpretation of the terms of this Agreement;

b.    A claimed violation, misinterpretation or misapplication of the rules or regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment; provided, disputes involving the Personnel Rules and Regulations of the City of New York or the Rules and Regulations of the Health and Hospitals Corporation with respect to those matters set forth in the first paragraph of Section 7390.1 of the Unconsolidated Laws shall not be subject to the grievance procedure or arbitration;

c.    A claimed assignment of employees to duties substantially different from those stated in their job specifications;

d.    A claimed wrongful disciplinary action taken against:

  i.    a permanent employee covered by Section 75(1) of the Civil Service Law;

  ii.   a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation;

  iii.  a non-competitive per annum employee appointed in a title in Section 3(a) of Article III hereof who was employed prior to September 1, 1983 or who has completed one year of service; or

  iv.   a per diem, hourly-paid or per tour employee of a Mayoral Agency who is regularly employed 17-1/2 or more hours per week and has completed one year of such employment; upon whom the agency head has served written charges of incompetence or misconduct while the employee is serving in the employee's permanent title or which affects the employee's permanent or continued status of employment.

e.    Per diem, hourly-paid or per tour employees in Mayoral Agencies who have been employed fewer than 17-1/2 hours but at least 4 years on a regular basis of at least ten (10) hours per week, will not be subject to termination of employment for arbitrary or capricious reasons; and any issues hereunder shall be subject to the contractual grievance procedure up to and including Step III (OLR) only.

9013
D000629

## Section 2.

The Grievance Procedure, except for grievances as defined in Sections I(d), and 1(e) of this Article, shall be as follows:

Employees may at any time informally discuss with their supervisors a matter which may become a grievance. If the results of such a discussion are unsatisfactory, the employees may present the grievance at **Step I**.

All grievances must be presented in writing at all steps in the grievance procedure. For all grievances as defined in Section I(c), no monetary award shall in any event cover any period prior to the date of the filing of the **Step I** grievance unless such grievance has been filed within thirty (30) days of the assignment to alleged out-of-title work.

**Step I**   The employee and/or the Union shall present the grievance in the form of a memorandum to the person designated for such purpose by the agency head no later than 120 days after the date on which the grievance arose except that grievances alleging a miscalculation of salary rate resulting in a payroll error of a continuing nature shall be presented no later than 120 days after the first date on which the grievant discovered the payroll error. The employee may also request an appointment to discuss the grievance and such request shall be granted. The person designated by the Employer to hear the grievance shall take any steps necessary to a proper disposition of the grievance and shall issue a determination in writing by the end of the third work day following the date of submission.

> **NOTE:**   The following STEP I(a) shall be applicable only in the Health and Hospitals Corporation in the case of grievances arising under Section 1(a) through 1(c) of this Article and shall be applied prior to **Step II** of this Section:
>
> **STEP I(a)**   An appeal from an unsatisfactory determination at **Step I** shall be presented in writing to the person designated by the agency head for such purpose. The appeal must be made within five (5) work days of the receipt of the **Step I** determination. A copy of the grievance appeal shall be sent to the person who initially passed upon the grievance. The person designated to receive the appeal at this Step shall meet with the employee and/or the Union for review of the grievance and shall issue a determination to the employee and/or the Union by the end of the fifth work day following the day on which the appeal was filed.

**STEP II**   An appeal from an unsatisfactory determination at **STEP I** or **STEP I(a)**, where applicable, shall be presented in writing to the agency head or the agency head's designated representative who shall not be the same person designated in **STEP I**. The appeal must be made within five (5) work days of the receipt of the **STEP I** or **STEP I(a)** determination. The agency head or designated representative, if any, shall meet with the employee and/or the Union for review of the grievance and shall issue a determination in writing by the end of the tenth work day following the date on which the appeal was filed.

**STEP III**   An appeal from an unsatisfactory determination at **STEP II** shall be presented by the employee and/or the Union to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the **STEP II** determination. The grievant or the Union should submit copies of the **STEP I** and **STEP II** grievance filings and any agency responses thereto. Copies of such appeal shall be sent to the agency head. The Commissioner of Labor Relations or the Commissioner's designee shall review all appeals from **STEP II** determinations and shall issue a determination on such appeals within fifteen (15) work days following the date on which the appeal was filed.

**STEP IV**   An appeal from an unsatisfactory determination at **STEP III** may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) work days of receipt of the **STEP III** determination. In addition, the Employer shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance". The Employer shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accordance with the Consolidated Rules of the Office of Collective Bargaining. The costs and fees of such arbitration shall be borne equally by the Union and the Employer.

D000630

The arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement. The arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules. The arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law.

## Section 3.

As a condition to the right of the Union to invoke impartial arbitration set forth in this Article, the employee or employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the employee and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

## Section 4. Disciplinary Procedure

In any case involving a grievance under Section I(d) or 1(e) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**   Following the service of written charges, a conference with such employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement.  The employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference.

If the employee is satisfied with the determination in **STEP A** above, the employee may choose to accept such determination as an alternative to and in lieu of a determination made pursuant to the procedures provided for in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.  As a condition of accepting such determination, the employee shall sign a waiver of the employee's right to the procedures available to him or her under Section 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.

**STEP B(i)**   If the Employee is not satisfied with the determination at **STEP A** above, then the Employer shall proceed in accordance with the disciplinary procedures set forth in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.  As an alternative for employees covered by subsections 1(d)(i) and (ii) or as the procedure for employees covered by subsection 1(d)(iii), the Union with the consent of the employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement, including the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure.  As a condition for submitting the matter to the Grievance Procedure the employee and the Union shall file a written waiver of the right to utilize the procedures available to the employee pursuant to Section 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any.  Notwithstanding such waiver, the period of an employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

Because non-competitive per annum employees, appointed in titles listed in Section 2(a) of Article III hereof, are not covered by the disciplinary procedures set forth in Section 75 of the Civil Service Law, such employees may proceed only in accord with the Grievance Procedure if not satisfied with the decision at **STEP A**, above.

**STEP B(ii)**   If the election is made to proceed pursuant to the Grievance Procedure, an appeal from the determination of **STEP A** above, shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) working days of the receipt of the determination. The agency head or designated representative shall meet with the employee and the Union for review of the grievance and shall issue a determination to the employee and the

DOCTORS COUNCIL
D000631

Union by the end of the tenth working day following the day on which the appeal was filed. The agency head or designated representative shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D**.

**STEP C**    If the grievant is not satisfied with the determination of the agency head or designated representative, the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) working days.

**STEP D**    If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement. This step is not applicable for those employees utilizing this procedure pursuant to Article VIII, Section 1(e).

### Section 5.

A grievance concerning a large number of employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

### Section 6.

If a determination satisfactory to the Union at any level of the Grievance Procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at **STEP III** of the Grievance Procedure; or if a satisfactory **STEP III** determination has not been so implemented, the Union may institute a grievance concerning such failure to implement at **STEP IV** of the Grievance Procedure.

### Section 7.

If the Employer exceeds any time limit prescribed at any step in the Grievance Procedure, the grievant and/or the Union may invoke the next step of the procedure, except that only the Union may invoke impartial arbitration under **STEP IV**.

### Section 8.

The Employer shall notify the Union in writing of all grievances filed by employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

### Section 9.

Each of the steps in the Grievance Procedure, as well as time limits prescribed at each step of this Grievance Procedure, may be waived by mutual agreement of the parties.



D000632

### Section 10.

A non-Mayoral agency not covered by this Agreement but which employs employees in titles identical to those covered by this Agreement may elect to permit the Union to appeal an unsatisfactory determination received at the last step of its Grievance Procedure prior to arbitration on fiscal matters only to the Commissioner of Labor Relations. If such election is made, the Union shall present its appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the last step determination. The Union should submit copies of the grievance filings at the prior steps of its Grievance Procedure and any agency responses thereto. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or the Commissioner's designee, shall review all such appeals and answer all such appeals within fifteen (15) work days. An appeal from a determination of the Commissioner of Labor Relations may be taken to arbitration under procedures, if any, applicable to the non-Mayoral agency involved.

### Section 11.

The grievance and the arbitration procedure contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievances" herein. This shall not be interpreted to preclude either party from enforcing the arbitrator's award in court. This Section shall not be construed in any manner to limit the statutory rights and obligations of the Employer under Article XIV of the Civil Service Law.

### Section 12. Disciplinary Rights of Dentists and Senior Dentists.

Incumbents in the classes of positions of Dentist and Senior Dentist who on November 30, 1988 were employed 12-1/2 or more hours per week by the City of New York and continue to be so employed shall be deemed covered by Article VIII, subsection 1(d)(iv), provided they have completed or shall complete one year of such employment.

### Section 13. Expedited Arbitration Procedure.

a.   The parties agree that there is a need for an expedited arbitration process which would allow for the prompt adjudication of grievances as set forth below.

b.   The parties voluntarily agree to submit matters to final and binding arbitration pursuant to the New York City Collective Bargaining Law and under the jurisdiction of the Office of Collective Bargaining. An arbitrator or panel of arbitrators, as agreed to by the parties, will act as the arbitrator of any issue submitted under the expedited procedure herein.

c.   The selection of those matters which will be submitted shall include, but not limited to, out-of-title cases concerning all titles, disciplinary cases wherein the proposed penalty is a monetary fine of one week or less or written reprimand, and other cases pursuant to mutual agreement by the parties. The following procedures shall apply:

    i.   SELECTION AND SCHEDULING OF CASES:

        (1)   The Deputy Chairperson for Disputes of the Office of Collective Bargaining shall propose which cases shall be subject to the procedures set forth in this Section 14 and notify the parties of propose hearing dates for such cases.

DOCTORS COUNCIL
09013
D000633

(2)    The parties shall have ten business days from the receipt of the Deputy Chairperson's proposed list of cases and hearing schedule(s) raise any objections thereto.

(3)    If a case is not proposed by the Deputy Chairperson for expedited handling, either party may, at any time prior to the scheduling of an arbitration hearing date for such case, request in writing to the other party and to the Deputy Chairperson of Disputes of the Office of Collective Bargaining that said case be submitted to the expedited procedure. The party receiving such request shall have ten business days from the receipt of the request to raise any objections thereto.

(4)    No case shall be submitted to the expedited arbitration process without the mutual agreement of the parties.

ii.    **CONDUCT OF HEARINGS:**

(1)    The presentation of the case, to the extent possible, shall be made in the narrative form. To the degree that witnesses are necessary, examination will be limited to questions of material fact and cross examination will be similarly limited. Submission of relevant documents, etc., will not be unreasonably limited and may be submitted as a "packet" exhibit.

(2)    In the event either party is unable to proceed with hearing a particular case, the case shall be rescheduled. However, only one adjournment shall be permitted. In the event that either party is unable to proceed on a second occasion, a default judgment may be entered against the adjourning party at the Arbitrator's discretion absent good cause shown.

(3)    The Arbitrator shall not be precluded from attempting to assist the parties in settling a particular case.

(4)    A decision will be issued by the Arbitrator within two weeks. It will not be necessary in the Award to recount any of the facts presented. However, a brief explanation of the Arbitrator's rationale may be included. Bench decisions may also be issued by the Arbitrator.

(5)    Decisions in this expedited procedure shall not be considered as precedent for any other case nor entered into evidence in any other forum or dispute except to enforce the Arbitrator's award.

(6)    The parties shall, whenever possible, exchange any documents intended to be offered in evidence at least one week in advance of the first hearing date and shall endeavor to stipulate to the issue in advance of the hearing date.

09013 DOCTORS COUNCIL D000634

# ARTICLE IX - JOB SECURITY

## Section 1.

Except for employees of the Health and Hospitals Corporation ("HHC"), provisions pertaining to the abolition of positions, reductions in staff, demotions and preferred lists, as set forth in Article XVII of the 1995-2001 Citywide Agreement between the City of New York and District Council 37, AFSCME, AFL-CIO, shall be applicable as if fully herein set forth.

## Section 2.

a.   With respect to those employees of the HHC, Section 7.6 of the Health and Hospitals Corporation Personnel Rules and Regulations (hereinafter "§ 7.6"), as currently in effect, shall be applicable with respect to the abolition of positions, reductions in staff, demotion and preferred lists, except as hereinafter set forth:

   i.   In the case of incumbents in the title of Attending Physician I, II and III, seniority as applied pursuant to § 7.6 shall be defined according to approved specialties, which for the purposes hereof shall be determined by the departmental assignment of the individual employee.

   ii.   Any variation in the determination of one's specialty, as set forth in Section 2(a)(i) of this Article, whereby an employee's specialty is not defined by his/her departmental assignment and he/she is rendering essential services to the employer in a subspecialty or inter-departmental capacity not otherwise available, the provisions of this Article may be waived upon such request from the Executive Director of an affected HHC facility to the HHC Senior Vice President, Quality Assurance, for recommendation to the Executive Vice President of the HHC. Notice of the same, including reasons for such action, shall be provided to the Union as soon as practicable and subject to the concurrence of the Union. In the event there is no agreement the matter may be submitted directly to arbitration.

   iii.   In the event a subspecialist is laid off or demoted hereunder and such subspecialist has been functioning programmatically in such subspecialty in his/her employment with the HHC, he/she may elect reappointment to the first available position according to his/her seniority in such specialty (department) and/or subspecialty.

b.   Notwithstanding anything hereinbefore set forth, should a vacancy arise in a position which presently carries or requires an academic appointment, the HHC shall be obligated only to give first consideration to employees subject to recall hereunder in the specialty involved, but in the event no employee is recalled to fill such vacancy the employees on the preferred list shall retain their eligibility for other vacancies which do not so require or carry academic appointments.

c.   The eligibility for recall of a person on the preferred list shall not continue for a period longer than four years from the date of separation.

## Section 3.

Layoffs or demotions for economic purposes of hourly-paid employees of Mayoral agencies shall be made in the following order:

09013

D000635

**a.**  Such employees who have completed less than one year of service and/or who regularly work less than ten hours per week;

**b.**  Such employees who regularly work at least ten but less than 17-1/2 hours per week and have completed one year of such service; and

**c.**  Such employees who regularly work 17-1/2 or more hours per week and who have completed one year of such service. Layoffs or demotions for economic purposes among this group of employees shall be accomplished in inverse order of seniority and such seniority shall be determined by length of service in the employee's Bureau of assignment and the approved specialty, if any, in which the employee is employed.

### Section 4.

Except as provided in Section 3 above, the foregoing provisions of this Article shall apply only to per-annum employees, irrespective of the work week which they are assigned.

## ARTICLE X - TIME AND LEAVE

### Section 1.

Pursuant to Article V of the 1990-92 Citywide Agreement (as amended) between the City of New York and District Council 37, AFSCME, AFL-CIO, or its successor Agreements, said Article V shall continue to apply to those per annum employees in positions paid pursuant to Article III, Section 2, Schedule A of this Agreement, except that (1) the annual leave accrual rate for *full-time* per annum employees hired after July 1, 1985, shall continue at a rate as set forth in Table A of Article VI, Section 5, of said 1990-92 Citywide Agreement (as amended) in lieu of the accrual rates set forth in Table B of said Article VI, Section 5, and (2) the annual leave accrual rate for *part-time* per annum employees hired after July 1, 1985, shall continue at a rate as set forth in Article V, subsection 19(b)(i), of said 1990-92 Citywide Agreement (as amended) in lieu of the accrual rates set forth in Article V, subsection 19(b)(ii).

### Section 2.

**a.**  Employees in positions paid pursuant to Article III, Section 2, Schedule B of this Agreement, shall accrue as follows:

| Years In Service | Accrual |
|---|---|
| At the beginning of the employee's 1st year | 1 hour for 15 hours worked |
| At the beginning of the employee's 5th year | 1 hour for 11 hours worked |

**b.**  Sessional employees who accrue leave credits shall continue to be subject to a maximum accumulation of fifty (50) sessions of annual leave.

### Section 3.

**a.**  Part-time hourly rated incumbents in the classes of positions paid pursuant to Article III, Section 2, Schedule B of this Agreement, shall continue to be entitled to one

DOCTORS COUNCIL 
D000636

hour of sick leave for every twenty (20) hours actually worked, with no maximum accrual. Such part-time hourly rated incumbents shall continue to be entitled to receive a terminal leave allowance computed on the basis of one session of terminal leave for each two unused sessions of sick leave to a maximum of ninety (90) sessions of terminal leave.

b.    All other part-time hourly rated incumbents in the classes of positions listed in Article III, Section 2, Schedule B, shall be entitled to sick leave, if any, pursuant to the provisions of Article V of the 1990-1992 Citywide Agreement (as amended) between the City of New York and District Council 37, AFSCME, AFL-CIO.

## ARTICLE XI - BULLETIN BOARDS: EMPLOYER FACILITIES

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for the employees to read. All notices shall be on Union stationery, and shall be used only to notify employees of matters pertaining to Union affairs. Upon request to the responsible official in charge of a work location, the Union may use Employer premises for meetings during employees' lunch hours, subject to availability of appropriate space and provided such meetings do not interfere with the Employer's business.

## ARTICLE XII - NO STRIKES

In accordance with the New York City Collective Bargaining Law, as amended, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE XIII - CITYWIDE ISSUES

This Agreement is subject to the provisions, terms and conditions of the Agreement which has been or may be negotiated between the City and the Union recognized as the exclusive collective bargaining representative on Citywide matters which must be uniform for specified employees, including the employees covered by this Agreement.

Employees in Rule X titles shall receive the benefits of the Citywide Agreement unless otherwise specifically excluded herein.

## ARTICLE XIV - UNION ACTIVITY

Time spent by employee representatives in the conduct of labor relations with the City and on Union activities shall be governed by the terms of Executive Order No. 75, as amended, dated March 22, 1973, entitled "Time Spent on the Conduct of Labor Relations between the City and Its Employees and on Union Activity" or any other applicable Executive Order.

## ARTICLE XV - LABOR-MANAGEMENT COMMITTEE

<u>Section 1.</u>

The Employer and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty employees covered by this Agreement.



D000637

## Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the Grievance Procedure shall not be appropriate items for consideration by the labor-management committee.

## Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. Each committee shall select a chairperson from among its members at each meeting. The chairpersonship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

## Section 4.

The labor-management committee shall meet at the call of either the Union members or the Employer members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide, to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## Section 5. Special Provisions Applicable to the Department of Health

a.   Labor-Management meetings shall be held at the call of the Union or Department of Health ("DOH") at times mutually agreeable to both parties. Said labor-management meetings may be called by the Union or DOH to consider and report on, among other things, on-call practices and continuing medical education. However, matters subject to the grievance procedure and economic issues shall not be appropriate items for consideration at such labor-management meetings.

b.   All labor-management meetings shall be scheduled through the DOH Director of Labor Relations. At least one (1) week in advance of the meeting the party requesting the meeting shall provide to the DOH Director of Labor Relations a written agenda of matters to be discussed. The DOH Director of Labor Relations shall arrange for appropriate levels of DOH management to participate.

## ARTICLE XVI - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York as amended.

## ARTICLE XVII - APPENDICES

The Appendix or Appendices, if any, attached hereto and initialed by the undersigned shall be deemed a part of this Agreement as if fully set forth herein.

## ARTICLE XVIII - SAVINGS CLAUSE

In the event that any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.


D000638

WHEREFORE, we have hereunto set our hands and seals this 24th day February of 2009

FOR THE CITY OF NEW YORK AND RELATED
PUBLIC EMPLOYERS AS DEFINED HEREIN:

BY: *James F. Hanley*
JAMES F. HANLEY
Commissioner of Labor Relations

FOR THE NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION

BY: _____
Frank J. Cirillo
Senior Vice President

FOR DOCTORS COUNCIL:

BY: *Barry Liebowitz* MD
BARRY LIEBOWITZ, M.D.
President

APPROVED AS TO FORM:

BY: _____
PAUL T. REPHEN
Acting Corporation Counsel

BY _____
RONALD H. SHECHTMAN
Union Counsel

DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD: _____

UNIT:  Clinicians

TERM:        March 15, 2008 – March 27, 2010

OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL                       CONTRACT

NO:
**09.013**

DATE:
FEB 2 4 2009

D000639



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Barry Liebowitz, M.D., President
Doctors Council
50 Broadway, 11th Floor, Suite 1101
New York, NY 10004

### Re: 2008-2010 Doctors Council Agreement

Dear Dr. Liebowitz:

This letter will confirm the status of certain agreements reached prior to the negotiations for the 2008-2010 Doctors Council Agreement ("DCA") between the City of New York and the New York City Health and Hospitals Corporation, and the Doctors Council.

1.   The following provisions (based on the letter attached to the 1984-1987 DCA dated October 2, 1986, captioned "Longevity Differential") concerning the proration of prior per-session service upon appointment to a per annum title eligible for longevity differentials pursuant to Article III, Section 8(c) of the 1995-2000 DCA shall be continued during the term of the 2005-2008 DCA.

    a.    Incumbent employees who are members of the New York City Employees Retirement System ("NYCERS") or per-session employees who were appointed to a per annum title between July 1, 1982 and June 30, 1987, shall have their per-session service pro-rated in accordance with the methodology employed by NYCERS in determining service credit for per-session employees

    b.    Any per-session employee who shall be appointed to a per annum position after June 30, 1987, and who is not a member of NYCERS shall have his/her per-session service pro-rated based on the ratio of hours worked in each year as a per-session versus the number of hours listed for the per annum title in Article III.

    c.    Nothing contained in these provisions shall modify any previous agreements on pro-ration of per-session time, except as it applies to the application to Article III, Section 8(c).

2.   The following terms and conditions (based on the letter attached to the 1984-1987 DCA dated October 2, 1986 and captioned "1984-87 Doctors Council Agreement") shall be continued during the term of the 2008-2010 DCA. It is understood that the welfare fund payments described in paragraph 2(e) shall be continued solely for those Attending Physicians, if any, to whom payments were made during the term of said 1984-1987 DCA.

    a.    The Employer shall make hepatitis B vaccine available at no cost to employees covered by the 2008-2010 DCA. In the event that the cost of such vaccine provided to said employees exceeds $25,000, the Doctors Council Welfare Fund shall reimburse the Employer for any such excess



D000640

b.     The Employer shall provide the Doctors Council with list(s) of Employees and their addresses, insofar as such information is available

c.     To the extent that the PMS and HHC payroll programs permit and when available to all employees paid via said payroll programs:

   i.     all employees will be paid bi-weekly,

   ii.    time and leave statements will be regularly provided to all employees, and

   iii.   percentage due/fee deduction shall be available.

d.     With reference to and notwithstanding anything appearing to the contrary in Article V, Section 2(b) of the 1995-2000 DCA, a tour of duty for Medical Investigators for purposes of said Section 2(b) is understood by the parties to range between 5 and 24 hours. The City and the Doctors Council reserve all other rights and claims with respect to the definition or application for any other purpose of the number of hours in a tour for Medical Examiners.

e.     The New York City Health and Hospitals Corporation will make welfare fund payments to the Doctors Council on behalf of Attending Physicians employed more than (10) hours but less than 18-3/4 hours per week in the amount equal to that paid other part-time per annum employees covered by 1984-1987 DCA  These payments shall be made annually, or pro-rated and paid on such other basis as the HHC makes welfare fund contributions in its normal course of business on behalf of employees on the payroll as of July 1, 1984, July 1, 1985, and/or July 1, 1986. There shall be no presumption that this shall continue beyond the term of the 1984-1987 DCA.

3.     Based on the side letter captioned "Kings County Hospital Emergency Room" (dated February 13 1990), all Physicians and Attending Physicians assigned to the King County Hospital Emergency Room shall receive the salary rates set forth below in lieu of the hourly and annual rates, including any assignment differential(s), contained in the 2008-2010 DCA. The annual salary as listed below shall be based on a full-time work week of 40 hours.

|  | Effective March 15, 2008 | Effective March 15, 2009 |
|---|---|---|
| Hourly Rate Hiring Rate * | $74.79 | $77.78 |
| Hourly Rate Incumbent Rate | $80.15 | $83.35 |
| Annual Rate Hiring Rate * | $156,159 | $162,405 |
| Annual Rate Incumbent Rate | $167,344 | $174,038 |

* See Article III, Section 4 of 2008-2010 Clinicians Agreement

09013

D000641

4.   The matters set forth herein shall take effect upon the date of execution of the 2008-2010 DCA and are coterminous therewith.

If the terms of this Agreement are in accordance with your understandings, please execute it in the spaces provided below.

Sincerely,

JAMES F. HANLEY

AGREED ON BEHALF OF
THE DOCTORS COUNCIL

BY: _____
BARRY LIEBOWITZ, M.D.
President

AGREED ON BEHALF OF NEW YORK CITY
HEALTH & HOSPITALS CORPORATION

BY: _____
FRANK J. CIRILLO
Senior Vice President

D000642



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Barry Liebowitz, M.D.
President
Doctors Council
50 Broadway, 11th Floor, Suite 1101
New York, NY 10004

Re: <u>2008-2010 Doctors Council Memorandum of Understanding</u>

Dear Dr. Liebowitz:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

Each agency that employs at least ten (10) members of the Doctors Council bargaining unit will consider suggestions in the labor management committee process as stated in Article XV that take advantage of doctors' perspectives that may enhance procedures or processes in such a manner as to improve the productivity of the employees and/or agency, as well as the quality of patient care.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF
DOCTORS COUNCIL

BY _____

BARRY LIEBOWITZ, M.D
President

09013.

D000643



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Barry Liebowitz, M.D.
President
Doctors Council
50 Broadway, 11th Floor, Suite 1101
New York, NY 10004

Re: <u>2008-2010 Doctors Council Memorandum of Understanding</u>

Dear Dr. Liebowitz:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

<u>Transit Check</u>

The parties agree that the City will expand the current Transit Check program to offer to eligible employees the ability to purchase a Transit Debit Card through payroll deductions in accordance with IRC Section 132. In addition to the current MTA Surface and Subway lines, the Transit Debit Card may be used to purchase tickets for mass transit commutation only (i.e. LIRR, LI MTA Buses, MetroNorth). The administrative fee for this benefit will be borne by the participants and will be deducted on a prorated basis from the participating employee's paycheck. After one year of experience with this benefit, the City will examine the level of participation and the associated costs of providing this benefit to determine whether or not the administrative fee requires adjustment.

The parties further agree to examine the possible expansion of this benefit to include other regional mass transit carriers.

<u>Residency</u>

The parties agree to support an amendment to Section 12-119 et seq. of the Administrative Code for the purpose of expanding permissible limits on residency to include the City of New York and Nassau, Westchester, Suffolk, Orange, Rockland or Putnam counties – with certain exceptions and limitations and except as may be prohibited by any other law requiring residency for appointment to certain positions including, but not limited to, the Public Officers Law – for employees covered by the terms of this Agreement

Consistent with the above, Mayoral Directive 78-13, as amended July 26, 1978, and any other covered Employer's rules, regulations and/or operating procedures, shall be similarly modified to conform to the understanding of the parties.

Upon enactment of legislation to implement the provisions herein, employees shall be subject to Section 1127 of the New York City Charter.



09013

D000644

Labor Management Committee on Pension Issues

There shall be a joint Labor Management Committee on Pensions with the appropriate parties.   The committee shall analyze the actual costs and additional contribution rate(s) for members of the New York City Employees' Retirement System (NYCERS) and the Board of Education Retirement System (BERS) associated with Chapter 96 of the Laws of 1995.   Such analysis shall be based on, among other factors, the actual number of people who elected to participate under the provisions of said Chapter 96 of the Laws of 1995 as of September 26, 1995.  The committee shall make recommendations regarding the establishment of revised additional contribution rate(s) and other remedies it deems appropriate so as to reflect the actual cost to members of NYCERS and BERS.  Regardless of the comparison of actual costs to additional contributions for members of NYCERS and BERS, there shall be no adjustment to contributions under Chapter 96 without first considering the contributions by the employer to NYCERS and BERS on behalf of all employees, and the comparison of those contributions to actual costs

The parties further agree to discuss the following issues:

Chapter 96 Reopener
Chapter 96 Escape
Age and Vesting Requirements
Member Contribution Amounts and Duration
Benefit Formula Changes
Service Credits
Any other areas the parties mutually agree to

Continuation of Certain Health Benefits

The parties acknowledge that collective bargaining regarding health benefits is within the purview of negotiations between the Municipal Labor Committee and the City.  Cost-containment initiatives in the City Health Benefits Program shall be discussed with the Municipal Labor Committee.

Salary Review Panel

A Salary Review Panel shall be established to review selected titles and occupational groups to determine whether or not salary adjustments or other compensation modifications appear to be indicated and, based on their findings, to make such recommendations as are appropriate.   No recommendation for salary modifications and/or other adjustments shall be implemented unless and until the parties have agreed on the source(s) of funding

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF
DOCTORS COUNCIL

BY _____
BARRY LIEBOWITZ, M.D.
President

09013

D000645

# NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

125 Worth Street • New York, New York 10013 • Room 516, (212) 566-8038

J. Emilio Carrillo, MD, MPH
President

### OPERATING PROCEDURE 20-40[*]
### GROUP 12
### EMPLOYEE PERFORMANCE EVALUATION

DATE:       May 11, 1991

TO:         Distribution "D"

FROM:       J. Emilio Carrillo, M.D., M.P.H.

==========================================================================

1.  **PURPOSE**:

    The purpose of this procedure is to establish, consistent
    with the Corporation's Personnel Rules and Regulations, a
    uniform method of evaluating the performance of the
    Corporation's Group 12 employees.

2.  **SCOPE**:

    This procedure is applicable to all persons occupying Group
    12 positions in the Corporate Plan of Titles.

---

[*]This supersedes Operating Procedure 20-40, "Employee
Performance Appraisal," dated March 26, 1979.

D000646

3. **POLICY**:

All Group 12 employees shall receive a formal, written
evaluation on the prescribed HHC form from their
supervisor/manager in accordance with the following schedule:

A.    Each employee shall receive a written evaluation at
      least once a year.

B.    An evaluation shall also be prepared by an employee's
      current supervisor/manager at the time the employee is
      transferred, promoted or resigns.

C.    Probationary employees shall receive at least one
      written interim evaluation during their probationary
      period, to be completed no later than midway through
      the probationary period.  A final evaluation shall be
      completed before the end of the probationary period.

D.    A rating of Satisfactory or better indicates that the
      employee is competent to perform the duties, activities
      and responsibilities inherent in his/her position.

E.    A follow-up evaluation is required if an employee has
      received an overall evaluation which is less than
      Satisfactory.  The period of time for the follow-up
      evaluation shall be established by the supervisor but
      it shall not exceed three months.

      In such cases, the employee must be notified as soon as
      possible of the requirement for a follow-up evaluation
      and the dates of the evaluation period.  If the overall
      rating in the follow-up evaluation is less than
      Satisfactory, disciplinary action should be considered
      with a view towards either demoting or terminating the
      employee.

F.    All evaluations shall become part of the employee's
      personnel record.

-2-

D000647

4. PROCEDURE:

A.   Performance evaluations shall be prepared in accordance
     with "Evaluation of Group 12 Employees – Guidelines for
     Supervisors/Managers" (Form HHC 1654, Jan 91) using the
     appropriate official Corporate evaluation form.

     If an employee's title is listed on Attachment A,
     "Group 12 Criteria-Based Performance Evaluations", the
     title-specific evaluation form shall be requested from
     Administrative Services.  Updated lists of certified
     "Criteria-Based Performance Evaluations" shall be
     issued from time to time by Corporate Human Resources.

     If the employee's title is <u>not</u> listed on Attachment A,
     Form HHC 20-29 (R Feb 79) shall be used as the
     performance evaluation form.

B.   The employee shall be made aware of the major tasks and
     related factors before or at the beginning of the
     evaluation period.

C.   After a performance evaluation has been completed, the
     supervisor/manager shall submit it to his or her
     supervisor (the "reviewer") for review.  When that is
     completed, the reviewer shall sign the evaluation and
     return it to the supervisor/manager.

D.   The supervisor/manager shall then meet with the
     employee to review the evaluation.

E.   The employee shall sign the evaluation, indicating only
     that a copy of the evaluation has been received, not
     that the employee necessarily agrees with its contents.
     If the employee refuses to sign the evaluation, the
     supervisor/manager must include the following statement
     above the signature lines on the evaluation form:

     "On (month-day-year), I personally gave a copy of this
     Performance Evaluation to (Employee's Name) and that
     he/she received a copy but refused to sign for and
     acknowledge same."

F.   The supervisor/manager shall retain a copy of the
     evaluation for the department file and submit the
     signed original to the facility Human Resources
     Department.  The original evaluation shall be retained
     in the employee's personnel file.

-3-

D000648

G.    If the employee wishes to rebut all or part of the evaluation, Form HHC 1329 shall be given to the employee. The employee must submit the rebuttal, within ten calendar days, to the supervisor/manager. The rebuttal shall then be reviewed by the reviewer within fifteen calendar days. If any changes in the appraisal result, the employee shall be notified by the reviewer, and a copy of the revised document provided. Only the original revised document shall be retained in the employee's personnel file; the original rebuttal shall be returned to the employee. If the employee wishes to rebut all or part of the revised appraisal, he/she may do so by following the procedures described above.

If no changes in the appraisal result, the original rebuttal shall be attached to the original document and retained in the employee's personnel file as part of the evaluation.

5. **RESPONSIBILITY**:

A.    Central Office Cost Group Managers, facility Executive Directors and NFCC Administrators shall ensure compliance with this policy and procedure within their facilities.

B.    Each Human Resources Director shall be responsible to the Central Office Cost Group Manager, Executive Director or NFCC Administrator for compliance with this Operating Procedure within the facility.

6. **EFFECTIVE DATE**:

This policy and procedure is effective immediately.

-4-

D000649

ATTACHMENT A

GROUP 12 CRITERIA-BASED
PERFORMANCE EVALUATIONS

ACTIVITY THERAPIST
ASSISTANT HEAD NURSE
ASSOCIATE MEDICAL RECORD SPECIALIST
ASSOCIATE NURSE PRACTITIONER LEVEL I
ASSOCIATE NURSE PRACTITIONER LEVEL II
ASSOCIATE STAFF AUDIOLOGIST LEVEL I
ASSOCIATE STAFF AUDIOLOGIST LEVEL II
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL I
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL II
ASSOCIATE SUPERVISING DIETITIAN LEVEL A
ASSOCIATE SUPERVISING DIETITIAN LEVEL B
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL I
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL II
AUDIOLOGY CLINICIAN

CASEWORKER
CERTIFIED RESPIRATORY CARE TECHNICIAN
CERTIFIED OCCUPATIONAL THERAPY ASSISTANT
CERTIFIED PHYSICAL THERAPY ASSISTANT
CHIEF PSYCHOLOGIST
CLINICAL DIETETIC TECHNICIAN
COOK

DENTAL ASSISTANT
DENTAL HYGIENIST
DIETARY AIDE
DIETITIAN

FOOD SERVICE SUPERVISOR

HEAD DIETITIAN
HEAD NURSE
HOSPITAL CARE INVESTIGATOR
HOSPITAL SECURITY OFFICER
HOUSEKEEPER
HOUSEKEEPING AIDE

INSTITUTIONAL AIDE

LICENSED PRACTICAL NURSE

MEDICAL RECORD SPECIALIST
MEDICAL UTILIZATION REVIEW ANALYST
MEDICAL-SURGICAL TECHNICIAN

MARCH, 1991

D000650

NUCLEAR MEDICINE TECHNOLOGIST LEVEL I
NUCLEAR MEDICINE TECHNOLOGIST LEVEL II
NURSE PRACTITIONER
NURSE'S AIDE
NURSE'S AIDE (TRANSPORT ESCORT)

OCCUPATIONAL THERAPIST
OPERATING ROOM TECHNICIAN

PHARMACIST
PHARMACIST INTERN
PHLEBOTOMIST
PHYSICAL THERAPIST
PHYSICIAN ASSISTANT
PHYSICIAN ASSISTANT II
PRINCIPAL HOSPITAL CARE INVESTIGATOR
PSYCHOLOGIST
PSYCHOLOGIST-IN-TRAINING

RADIOGRAPHER
REHABILITATION COUNSELOR
REHABILITATION TECHNICIAN
RESPIRATORY CARE THERAPIST LEVEL I
RESPIRATORY CARE THERAPIST LEVEL II
RESPIRATORY CARE TECHNICIAN
RESPIRATORY CARE TECHNICIAN TRAINEE

SENIOR ACTIVITY THERAPIST
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL I
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL II
SENIOR ASSOCIATE PHARMACIST LEVEL A
SENIOR ASSOCIATE PHARMACIST LEVEL B
SENIOR ASSOCIATE PHARMACIST LEVEL C
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL I
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL II
SENIOR COOK
SENIOR HOSPITAL CARE INVESTIGATOR
SENIOR HOUSEKEEPER
SENIOR MEDICAL UTILIZATION REVIEW ANALYST
SENIOR PSYCHOLOGIST
SENIOR REHABILITATION COUNSELOR
SENIOR SOCIAL WORKER
SENIOR SPECIAL OFFICER
SENIOR RESPIRATORY CARE THERAPIST LEVEL I
SENIOR RESPIRATORY CARE THERAPIST LEVEL II
SOCIAL WORKER
SPECIAL OFFICER
SPEECH CLINICIAN
STAFF NURSE


**March, 1991**

D000651

SUPERVISING ACTIVITY THERAPIST
SUPERVISING AUDIOLOGIST
SUPERVISING DENTAL ASSISTANT
SUPERVISING HOSPITAL CARE INVESTIGATOR
SUPERVISING HOUSEKEEPER

SUPERVISING MEDICAL RECORD SPECIALIST
SUPERVISING NUCLEAR MEDICINE TECHNOLOGIST
SUPERVISING SPEECH PATHOLOGIST
SUPERVISING THERAPIST (OCCUPATIONAL THERAPY; PHYSICAL THERAPY)
SUPERVISOR I (SOCIAL WORK)
SUPERVISOR II (SOCIAL WORK)
SUPERVISOR III (SOCIAL WORK)
SUPERVISOR OF NURSES
SUPERVISING RADIOGRAPHER

March, 1991

**NEW YORK CITY**
**HEALTH AND HOSPITALS**
**CORPORATION**

**CRITERIA-BASED**
**PERFORMANCE**
**EVALUATION SYSTEM**

## EVALUATION OF GROUP 12 EMPLOYEES
## GUIDELINES FOR SUPERVISORS/MANAGERS

**OBJECTIVE**

The Corporation's Criteria-Based Performance Evaluation system for Group 12 employees is intended to more effectively evaluate employee performance. Guided by requirements of the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO), a performance evaluation system has been implemented to provide clearly defined criteria, based on duties and responsibilities as outlined in the relevant job description. The system also allows for objectivity and consistency.

The major goals of our system are to:
• Clarify job responsibilities and performance standards.
• Inform employees of their performance level in an objective manner.
• Provide documented recognition of accomplishments.
• Improve communications between the supervisor/manager and the employee.
• Identify training and development needs.
• Set goals and develop plans for future improvement.

**PRE-EVALUATION CONFERENCE**

At the beginning of the evaluation period, you will meet with each employee to review the content of the evaluation form, clarify the responsibilities listed and identify the performance level required to attain a rating of "SATISFACTORY" for the position.

**EVALUATION FORM**

The evaluation form is divided into various sections containing statements of responsibilities directly related to the major duties of a specific position description. Also included are statements for evaluating interpersonal and communication skills. This format will assist you in identifying areas where your employee may be particularly strong or need improvement. We recognize that in certain instances an employee may perform additional minor duties on an occasional basis; however, these duties should not markedly contribute to the overall evaluation. When a responsibility is not relevant to an employee's job, you must note it as "Not Applicable" (NA) in the comments column of the evaluation form.

**RATING SCALE**

The evaluation scale is a 5-tier system ranging from "Outstanding" to "Unsatisfactory". As a supervisor/manager, you determine the expected level of performance required to attain a "Satisfactory" rating for each of the responsibilities appearing on the evaluation form. This level of expectation should be clearly communicated to your employee during the pre-evaluation conference. Since this serves as your standard for evaluating the employee's performance, you must set standards that are realistic and attainable.

Consider the following elements when rating employees:
• the employee's level of performance compared to the expected level of performance.
• the frequency and relative importance of each responsibility rated.
• the existence of external or extenuating circumstances which may have affected the performance.

**OVERALL EVALUATION**

In determining an employee's overall rating, consider the performance during the entire evaluation period and also focus on the frequency and importance of each responsibility. There are no arithmetical calculations required for this process. The overall evaluation is a global rating of the employee's work performance.

**REVIEW PROCESS**

To ensure consistency, validity, and objectivity, each evaluation is reviewed and signed by your own supervisor/manager (the reviewer) before it is shared with the employee.

After an evaluation is signed by the reviewer, you then discuss the evaluation and rating with the employee. The goal is to help the employee understand his/her level of performance in comparison to the standard, and to discuss plans for further improvement or development.

D000653

# NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

125 Worth Street • New York, New York 10013 • Room 516, (212) 566-8038

J. Emilio Carrillo, MD, MPH
President

## CHANGE NO. 1

## OPERATING PROCEDURE 20-40

## GROUP 12 EMPLOYEE PERFORMANCE EVALUATION

DATE:               August 12, 1991

TO:                 Distribution "D"

FROM:               J. Emilio Carrillo, M.D., M.P.H.

1.   The annexed Attachment A, "Group 12 Criteria-Based Performance Evaluations", dated August, 1991 is hereby substituted for the March, 1991 list annexed to this Procedure.

2.   All other provisions of this Operating Procedure not changed herein shall remain in full force and effect.

3.   This change is effective immediately.

JEC:saw
Attachment

D000654

ATTACHMENT A

GROUP 12 CRITERIA-BASED
PERFORMANCE EVALUATIONS

ACTIVITY THERAPIST
ADDICTION COUNSELOR
ADDICTION SPECIALIST
ASSISTANT ADDICTION COUNSELOR
ASSISTANT HEAD NURSE
ASSISTANT MEDIA SERVICES TECHNICIAN
ASSOCIATE MEDICAL RECORD SPECIALIST
ASSOCIATE NURSE PRACTITIONER LEVEL I
ASSOCIATE NURSE PRACTITIONER LEVEL II
ASSOCIATE RADIOGRAPHER LEVEL I
ASSOCIATE RADIOGRAPHER LEVEL II
ASSOCIATE STAFF AUDIOLOGIST LEVEL I
ASSOCIATE STAFF AUDIOLOGIST LEVEL II
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL I
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL II
ASSOCIATE SUPERVISING DIETITIAN LEVEL A
ASSOCIATE SUPERVISING DIETITIAN LEVEL B
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL I
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL II
ASSOCIATE ULTRASOUND TECHNOLOGIST
AUDIOLOGY CLINICIAN

CASEWORKER
CERTIFIED OCCUPATIONAL THERAPY ASSISTANT
CERTIFIED PHYSICAL THERAPY ASSISTANT
CERTIFIED RESPIRATORY CARE TECHNICIAN
CHIEF PSYCHOLOGIST
CLINICAL DIETETIC TECHNICIAN
COOK

DENTAL ASSISTANT
DENTAL HYGIENIST
DIETARY AIDE
DIETITIAN

ELECTROCARDIOGRAPH TECHNICIAN
ELECTROENCEPHALOGRAPH TECHNICIAN

FOOD SERVICE SUPERVISOR

HEAD DIETITIAN
HEAD NURSE
HOSPITAL CARE INVESTIGATOR
HOSPITAL SECURITY OFFICER
HOUSEKEEPER
HOUSEKEEPING AIDE
INSTITUTIONAL AIDE

AUGUST, 1991

D000655

LICENSED PRACTICAL NURSE

MEDIA SERVICES TECHNICIAN LEVEL I
MEDIA SERVICES TECHNICIAN LEVEL II
MEDICAL RECORD SPECIALIST
MEDICAL UTILIZATION REVIEW ANALYST
MEDICAL-SURGICAL TECHNICIAN
MORTUARY TECHNICIAN

NUCLEAR MEDICINE TECHNOLOGIST LEVEL I
NUCLEAR MEDICINE TECHNOLOGIST LEVEL II
NURSE PRACTITIONER
NURSE'S AIDE
NURSE'S AIDE (TRANSPORT ESCORT)

OCCUPATIONAL THERAPIST
OPERATING ROOM TECHNICIAN

PHARMACIST
PHARMACIST INTERN
PHLEBOTOMIST
PHYSICAL THERAPIST
PHYSICIAN ASSISTANT
PHYSICIAN ASSISTANT II
PRINCIPAL HOSPITAL CARE INVESTIGATOR
PRINCIPAL MORTUARY TECHNICIAN
PSYCHOLOGIST
PSYCHOLOGIST-IN-TRAINING

RADIOGRAPHER
REHABILITATION COUNSELOR
REHABILITATION TECHNICIAN
RESPIRATORY CARE TECHNICIAN
RESPIRATORY CARE TECHNICIAN TRAINEE
RESPIRATORY CARE THERAPIST LEVEL I
RESPIRATORY CARE THERAPIST LEVEL II

SENIOR ACTIVITY THERAPIST
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL I
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL II
SENIOR ASSOCIATE PHARMACIST LEVEL A
SENIOR ASSOCIATE PHARMACIST LEVEL B
SENIOR ASSOCIATE PHARMACIST LEVEL C
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL I
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL II
SENIOR COOK
SENIOR ELECTROCARDIOGRAPH TECHNICIAN
SENIOR HOSPITAL CARE INVESTIGATOR
SENIOR HOUSEKEEPER
SENIOR MEDICAL UTILIZATION REVIEW ANALYST
SENIOR MORTUARY TECHNICIAN
SENIOR PSYCHOLOGIST
SENIOR REHABILITATION COUNSELOR
AUGUST, 1991

D000656

SENIOR RESPIRATORY CARE THERAPIST LEVEL 1
SENIOR RESPIRATORY CARE THERAPIST LEVEL II
SENIOR SOCIAL WORKER
SENIOR SPECIAL OFFICER
SOCIAL WORKER
SPECIAL OFFICER
SPEECH CLINICIAN
STAFF NURSE
SUPERVISING ACTIVITY THERAPIST
SUPERVISING AUDIOLOGIST
SUPERVISING DENTAL ASSISTANT
SUPERVISING HOSPITAL CARE INVESTIGATOR
SUPERVISING HOUSEKEEPER
SUPERVISING MEDICAL RECORD SPECIALIST
SUPERVISING NUCLEAR MEDICINE TECHNOLOGIST
SUPERVISING SPEECH PATHOLOGIST
SUPERVISING THERAPIST (OCCUPATIONAL THERAPY; PHYSICAL THERAPY)
SUPERVISOR I (SOCIAL WORK)
SUPERVISOR II (SOCIAL WORK)
SUPERVISOR III (SOCIAL WORK)
SUPERVISOR OF NURSES

ULTRASOUND TECHNOLOGIST LEVEL I
ULTRASOUND TECHNOLOGIST LEVEL II

AUGUST, 1991

D000657

# NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

125 Worth Street • Room 513 • New York, New York 10013 • (212) 788-3485
(212) 964-9856 (FAX)

Thomas G. Doherty
Chief of Staff

Vice President
Corporate Affairs

## CHANGE NO. 2

## OPERATING PROCEDURE 20-40

## GROUP 12 EMPLOYEE PERFORMANCE EVALUATION

DATE:           March 13, 1992

TO:             Distribution "D"

FROM:           Thomas G. Doherty

---

1.  The annexed Attachment A, "Group 12 Criteria-Based Performance Evaluations", dated March, 1992 is hereby substituted for the August, 1991 list annexed to this Procedure.

2.  All other provisions of this Operating Procedure not changed herein shall remain in full force and effect.

3.  This change is effective immediately.

TGD/saw
Attachment

D000658

## ATTACHMENT A

### GROUP 12 CRITERIA-BASED
### PERFORMANCE EVALUATIONS

ACTIVITY THERAPIST
ADDICTION COUNSELOR
ADDICTION SPECIALIST
ASSISTANT ADDICTION COUNSELOR
ASSISTANT HEAD NURSE
ASSISTANT MEDIA SERVICES TECHNICIAN
ASSISTANT SUPERVISING SUPERVISOR LEVEL II
ASSOCIATE MEDICAL RECORD SPECIALIST
ASSOCIATE NURSE PRACTITIONER LEVEL I
ASSOCIATE NURSE PRACTITIONER LEVEL II
ASSOCIATE RADIOGRAPHER LEVEL I
ASSOCIATE RADIOGRAPHER LEVEL II
ASSOCIATE STAFF AUDIOLOGIST LEVEL I
ASSOCIATE STAFF AUDIOLOGIST LEVEL II
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL I
ASSOCIATE STAFF SPEECH PATHOLOGIST LEVEL II
ASSOCIATE SUPERVISING DIETITIAN LEVEL A
ASSOCIATE SUPERVISING DIETITIAN LEVEL B
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL I
ASSOCIATE SUPERVISORY RADIOGRAPHER LEVEL II
ASSOCIATE ULTRASOUND TECHNOLOGIST
AUDIOLOGY CLINICIAN
AUTO MECHANIC
AUTO MECHANIC (DIESEL)

BRICKLAYER

CARPENTER
CASEWORKER
CEMENT MASON
CERTIFIED OCCUPATIONAL THERAPY ASSISTANT
CERTIFIED PHYSICAL THERAPY ASSISTANT
CERTIFIED RESPIRATORY CARE TECHNICIAN
CHIEF PSYCHOLOGIST
CITY LABORER
CLINICAL DIETETIC TECHNICIAN
COOK

DENTAL ASSISTANT
DENTAL HYGIENIST
DIETARY AIDE
DIETITIAN

ELECTRICIAN
ELECTRICIAN'S HELPER
ELECTROCARDIOGRAPH TECHNICIAN

**MARCH 1992**

ELECTROENCEPHALOGRAPH TECHNICIAN
ELEVATOR MECHANIC

FOOD SERVICE SUPERVISOR

GLAZIER

HEAD DIETITIAN
HEAD NURSE
HOSPITAL CARE INVESTIGATOR
HOSPITAL SECURITY OFFICER
HOUSEKEEPER
HOUSEKEEPING AIDE

INSTITUTIONAL AIDE

LABORER
LICENSED PRACTICAL NURSE
LOCKSMITH

MACHINIST
MAINTENANCE WORKER
MASON'S HELPER
MEDIA SERVICES TECHNICIAN LEVEL I
MEDIA SERVICES TECHNICIAN LEVEL II
MEDICAL RECORD SPECIALIST
MEDICAL UTILIZATION REVIEW ANALYST
MEDICAL-SURGICAL TECHNICIAN
MORTUARY TECHNICIAN

NUCLEAR MEDICINE TECHNOLOGIST LEVEL I
NUCLEAR MEDICINE TECHNOLOGIST LEVEL II
NURSE PRACTITIONER
NURSE'S AIDE
NURSE'S AIDE (TRANSPORT ESCORT)

OCCUPATIONAL THERAPIST
OPERATING ROOM TECHNICIAN

PAINTER
PHARMACIST
PHARMACIST INTERN
PHLEBOTOMIST
PHYSICAL THERAPIST
PHYSICIAN ASSISTANT
PHYSICIAN ASSISTANT II
PLANT MAINTAINER OILER
PLANT MAINTAINER TENDER
PLASTERER
PLUMBER
PLUMBER'S HELPER
PRINCIPAL HOSPITAL CARE INVESTIGATOR

MARCH 1992

D000660

PRINCIPAL MORTUARY TECHNICIAN
PSYCHOLOGIST
PSYCHOLOGIST-IN-TRAINING

RADIOGRAPHER
RADIO REPAIR MECHANIC
REHABILITATION COUNSELOR
REHABILITATION TECHNICIAN
RESPIRATORY CARE TECHNICIAN
RESPIRATORY CARE TECHNICIAN TRAINEE
RESPIRATORY CARE THERAPIST LEVEL I
RESPIRATORY CARE THERAPIST LEVEL II
ROOFER

SENIOR ACTIVITY THERAPIST
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL I
SENIOR ASSOCIATE OCCUPATIONAL THERAPIST LEVEL II
SENIOR ASSOCIATE PHARMACIST LEVEL A
SENIOR ASSOCIATE PHARMACIST LEVEL B
SENIOR ASSOCIATE PHARMACIST LEVEL C
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL I
SENIOR ASSOCIATE PHYSICAL THERAPIST LEVEL II
SENIOR COOK
SENIOR ELECTROCARDIOGRAPH TECHNICIAN
SENIOR HOSPITAL CARE INVESTIGATOR
SENIOR HOUSEKEEPER
SENIOR MEDICAL UTILIZATION REVIEW ANALYST
SENIOR MORTUARY TECHNICIAN
SENIOR PSYCHOLOGIST
SENIOR REHABILITATION COUNSELOR
SENIOR STATIONARY ENGINEER
SENIOR RESPIRATORY CARE THERAPIST LEVEL I
SENIOR RESPIRATORY CARE THERAPIST LEVEL II
SENIOR SOCIAL WORKER
SENIOR SPECIAL OFFICER
SHEET METAL WORKER
SOCIAL WORKER
SPECIAL OFFICER
SPEECH CLINICIAN
STAFF NURSE
STEAMFITTER
STEAMFITTER'S HELPER
SUPERVISING ACTIVITY THERAPIST
SUPERVISING AUDIOLOGIST
SUPERVISING DENTAL ASSISTANT
SUPERVISING HOSPITAL CARE INVESTIGATOR
SUPERVISING HOUSEKEEPER
SUPERVISING MEDICAL RECORD SPECIALIST
SUPERVISING NUCLEAR MEDICINE TECHNOLOGIST
SUPERVISING SPEECH PATHOLOGIST
SUPERVISING THERAPIST (OCCUPATIONAL THERAPY; PHYSICAL THERAPY)
SUPERVISOR I (SOCIAL WORK)

**MARCH 1992**

D000661

SUPERVISOR II (SOCIAL WORK)
SUPERVISOR III (SOCIAL WORK)
SUPERVISOR AUTO MECHANICS
SUPERVISOR BRICKLAYER
SUPERVISOR CARPENTER
SUPERVISOR ELECTRICIAN
SUPERVISOR LOCKSMITH
SUPERVISOR OF MECHANICS
SUPERVISOR OF MECHANICS III
SUPERVISOR OF NURSES
SUPERVISOR PAINTER
SUPERVISOR PLASTERER
SUPERVISOR PLUMBER
SUPERVISOR SHEET METAL WORKER
SUPERVISOR STEAMFITTER

THERMOSTAT REPAIRER

ULTRASOUND TECHNOLOGIST LEVEL I
ULTRASOUND TECHNOLOGIST LEVEL II

WELDER

MARCH 1992

D000662

D000663

# NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

125 Worth Street • New York, New York 10013    (212)566-8038

Jo Ivey Boufford, M.D.
President

## OPERATING PROCEDURE 20-10*

## EMPLOYEE PERFORMANCE AND CONDUCT

DATE:          March 18, 1987

TO:            Distribution "D"
               Personnel Directors

FROM:          Jo Ivey Boufford, M.D.

-----------------------------------------------------------------

I.    PURPOSE

      The purpose of this procedure is to prescribe a management
policy and mechanism for achieving maximum employee performance
and appropriate employee conduct.

II.   SCOPE

      This procedure applies to all Group 12 employees.  All
Corporate facilities shall function within the parameters of this
procedure.

III.  POLICY

      A.  It is the policy of the Corporation to ensure
consistent, equitable treatment of its employees, both in the
application of work standards and the initiation of disciplinary
action.  Disciplinary action shall be taken with adherence to
objectivity (impartiality), fairness and sound supervisory/
managerial judgment.

-----------------------------------------------------------------

* This procedure supersedes Operating Procedure No. 20-10,
  Subject Employee Performance and Conduct April, 1980.

D000664

B.  Disciplinary action is to be taken when an employee
fails to achieve satisfactory performance and/or violates
Corporate Hospital rules and regulations.  Such disciplinary
action must be taken in accordance with the applicable rules,
regulations and collective bargaining agreements.

C.  Disciplinary actions taken must be fair and equitable,
without regard to race, creed, color, sex, age, sexual prefer-
ence, political beliefs or national origin.

IV.    PROCEDURES

Except in cases of incompetence or misconduct of a more
serious nature, disciplinary action shall be taken after reason-
able supervisory/managerial efforts have been made to assist an
employee in correcting a deficiency in performance or conduct.
In case of incompetence or misconduct of a more serious nature,
written charges may be preferred in accordance with applicable
rules, regulations, and collectively bargained agreements.

A.    Counselling

1.  Counselling, Generally

Generally, the objectives of counselling sessions
are to advise the employee of unsatisfactory performance,
misconduct or incompetence.  The counselling is intended to
motivate the employee to achieve the expected standard of
performance and conduct.

2. Counselling for Unscheduled Absence and Lateness.

a)  The objectives of counselling for unscheduled
absence and lateness are to advise the employee of patterns or
trends which could lead to unsatisfactory performance or
misconduct.  The counselling is intended to motivate the employee
to achieve the expected standard of performance and conduct.

b)  The supervisor/manager may conduct counselling
for an employee who has had three (3) unscheduled absences, or
two (2) unscheduled absences immediately before or after a
holiday or pass day during any six month period.  The super-
visor/manager may conduct additional counselling sessions for up
to two (2) additional unscheduled absences after the first
session.

c)  Generally, the supervisor/manager may conduct a
counselling session for an employee who is excessively tardy, as
defined in Operating Procedure 20-2 (three times or in excess of
thirty (30) minutes within one month).  No counsellings or
warnings shall be held for "excused" latenesses.

-2-

3.  Scheduling of Counselling Session

a)  The supervisor/manager shall schedule the counselling session and inform the employee and a union representative that a counselling session will be conducted.  The counselling session shall be held within a reasonable time after the event(s) to be cited.

b)  Counselling sessions may be postponed at the union's request within the discretion of the supervisor/manager. However, requests for postponement should not be unreasonably denied.  The supervisor/manager may set reasonable limits as to the number of postponements allowed and as to the number of union representatives present at the counselling sessions.  The Labor Relations Officer of the facility shall be apprised of issues concerning scheduling or representation.

4.  Counselling Session

The employee is to be informed at the counselling session as to the details of the unsatisfactory performance, misconduct and/or incompetence, and is to be advised of the corrective action to improve his/her performance or conduct.  The employee is to be informed of his/her right to submit a response to the counselling session report, within five (5) working days after the session, which shall become part of the record of the counselling session.

5.  Record of Counselling Session

Upon completion of the counselling session, the supervisor/manager is required to prepare a written memorandum for the employee's Personnel Folder, with copies to the employee, and the union representative.  The memorandum shall contain the following:

a)  The date of the session.

b)  The persons in attendance and their titles.

c)  The nature of the incompetence, misconduct or unsatisfactory performance.

d)  A brief narrative of the session.

e)  The corrective action needed.

B.  Warning Notice

1.  If the employee fails to heed corrective action recommended as a result of counselling session(s) conducted pursuant to Parts IV A (1) or IV A (2) of this Operating

-3-

D000666

Procedure, the supervisor/manager shall issue an Employee Warning Notice.

    2.  If the employee fails to heed the warning notice(s), disciplinary action shall be taken.

    3.  Where, in the supervisor's/manager's judgment, the employee's improper conduct or incompetence is of a more serious nature, a warning notice may be issued without prior counselling session.

    4.  The supervisor/manager shall complete the employee warning notice for the employee's Personnel Folder, with copies to the employee and the union representative.

    C.  <u>Written Charges</u>

    1.  If improper conduct or incompetence continues after counselling and warning, written charges shall be issued in accordance with applicable rules, regulations and collective bargaining agreements.

    2.  Where, in the supervisor's/manager's judgment, the employee's improper conduct or incompetence is a more serious nature, written charges may be preferred in accordance with applicable rules, regulations and collective bargaining agreements without prior counselling session(s) or issuance of warning notice(s).

    D.  <u>Responsibility</u>

    The Personnel Director at each facility shall be responsible for implementation of this procedure.

JIB/rn

Attachments:  Employee Warning Notice
                 Suggested Format for Memoranda for Employee
                 Counselling
                 Notice to Report for Counselling Session/Warning
                 Notice

D000667

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION
Internal Memorandum

_____Hospital

To:_____          Date:
     (Employee's name)

From:_____          Subject:  Notice to Report

_____


Please report to_____, on_____at_____
                    (room)              (date)        (time)

for ☐   Counselling Session  ☐   Warning Notice   concerning

the following:




If you are unable to attend at the above date and time, please
let me know immediately.  Your Union representative may be
present with you.


cc:  Personnel
     Union

D000668

_____ Hospital

Internal Memorandum

To: _____          Date:
        (Employee's name)

From: _____          Subject:  Report of Counselling
                                                    Session

_____

On_____at_____, a counselling session was
        (date)                    (time)
held to discuss the following:


As a result of this counselling session, the following corrective
action was agreed to:


The following persons attended this counselling session:


CC:  Department Files
     Personnel
     Union

                    I have received a copy of this report
                    of Counselling Session.

                    _____    _____

                    Employee Signature              Date

D000669

## Employee Warning Notice
New York City Health and Hospitals Corporation

| Institution |
|---|
| |

o be completed in quadruplicate. Original for personnel folder, one copy to the employee, one copy to the shop steward or other union representative, and one copy for department file. **Please print or type all information.**

| Employee's Name *(Please print)* | Social Security # | Department | Title |
|---|---|---|---|
| | | | |

| Issued by | Supervisor/Manager and Title |
|---|---|
| | |

**REASON FOR ISSUANCE -** *Description of unsatisfactory performance, misconduct, or incompetence.* (Explain as specifically as possible. Be sure to include date, time, place, persons involved, and any other pertinent information).

**EMPLOYEE'S COMMENTS (if any):**

| YOU ARE HEREBY WARNED THAT ANY REPETITION OF THIS UNSATISFACTORY PERFORMANCE OR ANY OTHER ACT OF MISCONDUCT MAY LEAD TO DISCIPLINARY ACTION AGAINST YOU, INCLUDING TERMINATION.<br><br>*I HAVE RECEIVED A COPY OF THIS EMPLOYEE WARNING NOTICE.* | Supervisor's/Manager's Signature | Date of Issue |
|---|---|---|
| | Employee's Signature* | Date |
| | Shop Steward's or Union Representative's Signature | Date |

*If either the employee or shop steward refuse to sign this form indicating their acknowledging receipt thereof, the supervisor/manager must complete the following:*

| On | Date | I personally served a copy of this Employee Warning Notice on |
|---|---|---|

| Employee's Name | and | Shop Steward's Name |
|---|---|---|

| that he/she (they) received a copy but refused to sign for and acknowledge same. | Supervisor's/Manager's Signature | Date |
|---|---|---|

HHC 120 (R Dec 84)

This form is available from Forms Management 442-4162

D000671

 **NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**
125 Worth Street • Room 514 • New York • New York 10013
212•788•3321   Fax: 212•788•0040

Luis R. Marcos, M.D.
President

## OPERATING PROCEDURE NO. 20-2

### TARDINESS

**TO:**    Distribution "D"

**FROM:**  Luis R. Marcos, M.D.

**DATE:**  January 25, 2001

---

**I.    PURPOSE:**

To set forth the policy and procedure on employee tardiness.

**II.    SCOPE:**

This policy and procedure is applicable to Group 12 employees.

**III.    POLICY:**

A.   All employees are obligated to report to work on time.  Employees are expected to be at their desks or work locations, in uniform (where applicable), ready for work promptly at the beginning of their scheduled tours.  Employees who are not at their work sites ready to work at the beginning of their scheduled tours are late.

B.   Except for regularly scheduled meal periods, employees must remain at their work locations until the end of their tours unless specifically authorized by their supervisors to be elsewhere. When the nature of an employee's duties and responsibilities requires presence at various work locations, the responsible supervisor must take whatever procedural steps are deemed necessary to insure that the employee reports for duty at the beginning of the scheduled tour at the specified work place.

C.   Employees who are covered by the Citywide contract shall be granted a five-minute grace period at the beginning of the work shift (with certain exceptions noted herein).

---

\* This procedure supercedes Operating Procedure 20-2, same subject, dated June 17, 1982.

1

D000672

IV. **DEFINITION:**

    A.   Tardiness
Any unauthorized absence that results in an employee's arrival at the desk or work location after the beginning of the scheduled tour. Each lateness, regardless of whether it is at the beginning of the scheduled work day or upon return from meal period is a separate unauthorized lateness.

    B.   Excessive Tardiness
Unexcused tardiness that results in an employee's late arrival on three (3) or more occasions in one month or in excess of 30 minutes in one month.

    C.   Five-Minute Grace Period (covered employees)
An excused period of up to five minutes following the employee's start of a tour wherein the employee is not to be considered tardy.

V. **PROCEDURE:**

    A.   Every employee is obligated to report for work as scheduled both at the beginning of the work shift and upon return from the meal period.

    B.   Supervisors should meet with tardy employees to explain the tardiness policy and to develop methods to avoid future lateness.

    C.   Employees who are entitled to the Five-Minute Grace Period*
Employees whose titles are covered by the Citywide Contract. Group 12 titles pending accretion to collective bargaining units are presumed covered by the Citywide.

    D.   Employees who are not entitled to the Five-Minute Grace Period
       1.  Employees serving in Prevailing Rate/Skilled Trade Titles
       2.  Employees serving in Intern and Resident Titles
       3.  Student interns and high school students serving in Special Program Titles
       4.  Employees on alternate work schedules
       5.  Employees who work on a part-time, hourly, per session, or per diem basis (except, per diem employees who worked full-time for at least 18 continuous months are covered)
       6.  Employees whose positions require, in the event of late reporting for work, that another employee be held over from a previous shift or be called in to substitute for the late employee, at premium rates of pay

*    Titles covered by the Citywide Contract are listed in Appendix A of that document.

2

D000673

E.  When a covered employee's lateness exceeds the five-minute grace period, the full period of time between the scheduled reporting time and the actual reporting time shall be charged against the employee. For example, a covered employee whose starting time is 9:00 A.M. who reports to work at 9:05 A.M. is not "late," but an employee with a 9:00 A.M. starting time who reports to work at 9:06 A.M. is six (6) minutes late.

F.  A non-covered employee shall be considered late for the full period of time between the scheduled reporting time and the actual reporting time. For example, a non-covered employee whose starting time is 9:00 A.M. who reports to work at 9:04 A.M. is four minutes late.

G.  "Excused" and "Not Excused" Latenesses
    1.  Lateness whether beyond the five-minute grace period for covered employees or beyond the scheduled starting time for non-covered employees, shall be classified as "excused" or "not excused."

    2.  Excused lateness shall not be charged against an employee's leave balances.

    3.  Lateness found by the Senior Vice President of the Network, Executive Director, the Central Office Cost Group Manager or his/her designee, to have been caused by transportation circumstances beyond the ability of the tardy employee to control shall be excused. The phrase "transportation beyond the ability of the tardy employee to control" encompasses circumstances, which cannot be anticipated, after the employee leaves for work (e.g., elevator breakdowns or private transportation breakdowns).

    4.  The tardy employee may be required to furnish proof satisfactory to the designated official of the cause of the lateness. A request for excusal shall not be unreasonably denied.

    5.  Lateness caused by a verified major failure of public transportation, such as a widespread or total power failure of significant duration or other catastrophe of similar severity, shall be excused.

    6.  Covered employees may appeal a refusal to excuse a lateness to the Commissioner of Labor Relations, whose decision shall be final.

H.  Deductions for unexcused lateness shall be made on a minute-for-minute basis from any compensatory time standing to an employee's credit or, if there is no such credited time, from the employee's annual leave balances.

3

D000674

I.     If the employee has neither compensatory time nor annual leave balances, at the discretion of the Department Head, the employee's time sheet may be marked as without pay for the period of lateness. The time sheets shall be appropriately coded and employees may not use tour changes to avoid deductions for lateness.

J.     The Corporation reserves the right and power appropriately and for just cause to discipline or to discharge an employee for excessive lateness in accordance with established disciplinary procedures.

K.     An unauthorized lateness shall not be considered if it occurred more than 12 months prior to the occurrence of the next lateness.

L.     No penalty or disciplinary action shall apply to excused lateness.

M.    Each facility/network will prepare contingency plans for operation during a major failure of public transportation, which would cause disabled employees, as defined by the American with Disabilities Act, great difficulty in reaching their regular work location. Such plans will include, where practicable and productive, provisions assigning disabled employees to report to agency locations closer to their homes. Such plans shall also include provisions for excusal by the facility/network designated official of absences on an individual basis for disabled employees. Decisions of Corporate officials with respect to absences under such plans shall not be subject to the grievance procedure.

## VI.   RESPONSIBILITY:

A.    Each Senior Vice President of the Network/Executive Director and Central Office Cost Group Manager shall be responsible for insuring compliance with this policy and procedure. They shall designate those supervisors whom they deem necessary to assist in carrying out this policy and procedure. They shall establish internal procedures for excusing tardiness in accordance with this policy and procedure.

B.    Supervisors are to be held responsible for proper and accurate records of their employees' work time in accordance with timekeeping procedures.

D000675

# NEW YORK CITY
## HEALTH AND HOSPITALS CORPORATION
### 125 WORTH STREET, NEW YORK, N.Y. 10013

October 1, 1980

TO:            Executive Directors
               Personnel Directors

FROM:          William C. Howe
               Vice President
               Personnel & Labor Relations

SUBJECT:       Time and Leave Regulations

-----------------------------------------------------------------

        Attached is the current edition of the City's
Standard Leave Regulations governing positions subject to the
Career and Salary Plan.

        Under Rule 10.4.7 of the Corporation's Personnel
Rules and Regulations, the Standard Leave Regulations constitute
the Time and Leave Rules of the Corporation for:

a)  All Group 12 employees except:

    1)  Prevailing rate per diem/per annum employees
       covered by Section 220 of the Labor Law.

    2)  House Staff.

    3)  Per diem, per hour, per session and seasonal
       employees, except as noted in the regulations.
       (Also refer to HHC P.O. 10/79 and the 1978-79
       Doctors Council Contract affecting part time
       and per session physicians.)

b)  Group 11 employees below the MPP level, except
    where otherwise noted (Also refer to Operating
    Procedure 20-26).

        The leave regulations for prevailing rate employees
and for administrative residents which were sent to you by this
office on December 16, 1977 remain in effect.  Group 11 employees
in MPP titles are covered by the leave regulations contained in
Operating Procedure 20-26.

        In the Health and Hospitals Corporation each Health
Care Facility Administrator shall exercise the powers delegated
to an agency head in the regulations.  In line with the decentral-
ization plan, prior approval of this office shall no longer be
required for granting employees terminal leave under the Catas-
trophic Illness Provisions of the City-wide Contract.

D000676

Time and Leave Regulations                    2                    10/1/80


          Also attached, for your information and guidance, are
Regulations governing Compensatory Time off, Compensation for
Overtime and Meal Allowance, and Payment for Shift Differentials
and Holidays for employees covered by the City-Wide Contract.


WCH:jga

Attach.

D000677

LEAVE REGULATIONS FOR EMPLOYEES WHO ARE

UNDER THE CAREER AND SALARY PLAN

1.0   These regulations shall apply to incumbents of positions subject
to the Career and Salary Plan approved by the Board of Estimate
on July 9, 1954 and to competitive employees reclassified by
the City Civil Service Commission from Career and Salary Plan
positions to Rule X positions, pursuant to resolution adopted
by the City Civil Service Commission on December 30, 1963
in accordance with a resolution of the Board of Estimate
(Cal. No. 415 adopted on May 22, 1963).  These regulations,
except as otherwise provided herein, shall not apply to per
diem, per hour, per session, per job, per entry, per abstract,
per summons, per folio and piece work employees, and incumbents
of lump-sum compensation positions, or positions where the
rate is fixed by contract, agreement or honorarium, and
to positions (other than those covered by the City-wide Contract
effective July 1, 1978, and as provided herein) in agencies
which are in the Career and Salary Plan upon their own election
under the terms of the Career and Salary Plan Resolution.

### 1.0 INTERPRETATIONS

A.   Listed in Appendix A.1 are agencies automatically under
the Career and Salary Plan and therefore under the Leave
Regulations, agencies excluded from the Career and Salary
Plan, and agencies in the Career and Salary Plan upon
their own election.

B.   Of those agencies which have elected to come into the
Career and Salary Plan, the following have also accepted the
Leave Regulations without reservation.

American Museum of Natural History
County Clerk - Bronx County
                     Kings County          Queens County
                     New York County        Richmond County
District Attorney - Bronx County          Richmond County
New York Botanical Garden
Public Administrator - Kings County
                     New York County        Queens County
                                             Richmond County

C.   Employees in the following categories are excluded from the
Career and Salary Plan, and are therefore excluded from
these Leave Regulations:

Exempt Class Employees
Prevailing Rate Employees

.OT YET
RELEASED

REFER T
COVERIN
MEMORAN-
DUM FOR
HHC
EXCLUSI

> *Uniform Forces of the Police, Fire and Correction Departments*
> *Uniform Officers of the Sanitation Department*
> *Positions in the Ferry, Marine and Rapid Transit Railroad Services as are set forth in the Classification and Compensation Schedules of the Classified Service.*
> *Custodians and Custodian-Engineer positions reimbursed in accordance with the indirect system of reimbursement.*

D. *Except as specified in these regulations or in amendments passed by the Board of Estimate, the accumulation and use of leave prior to July 1, 1956 shall be governed by the various departmental rules which were in effect prior to that date.*

E. *Time spent in the service of other jurisdictions, whether City, State or Federal, cannot be credited as New York City Employment for leave purposes.*

F. *The Comptroller's determination of December 17, 1958 put the title of "Laborer" under prevailing rate. Since the Career and Salary Plan Resolution of July 9, 1954 (Board of Estimate Cal No. 1) specifically excludes positions paid at prevailing rate as defined in Section 220 of the New York State Labor Law, laborers are no longer covered by the Career and Salary Plan Leave Regulations.*

G. *An employee who leaves a competitive position to take an exempt position retains the right to the same leave status held as a competitive employee.*

1.1 Each of the aforementioned agencies excepted from these regulations shall submit to the City Personnel Director and Budget Director within a period of six months from the effective date of these regulations, a statement as to whether these regulations are acceptable to it, and, if not, to submit leave regulations for its employees under the Career and Salary Plan.

NOT APPLICABLE TO HHC

The City Personnel Director shall report thereon to the Mayor.

2

D000679

## 2. ANNUAL LEAVE ALLOWANCE

2.0   A combined vacation, personal business and religious holiday leave allowance shall be established which shall be known as "annual leave allowance".

---

### 2.0 INTERPRETATIONS

A.   *Absence for religious observance, whether full or part day, must be charged to annual leave or compensatory time balances.*

B.   *Paid leave may be used only while an employee is on the staff of a City agency. An individual may at the discretion of the agency head be paid in a lump sum for unused leave after resignation but only pursuant to the provisions of Executive Order No. 76 of 1973 or Executive Order 30 and 31 of 1975.*

C.   *The beneficiary of a deceased employee may be paid in cash for the deceased employee's annual leave in accordance with Executive Order 34 of 1971.*

D.   *Annual leave is earned in units of time, not in units of pay. Therefore, compensation for vacation or other leave time must be at the rate of pay to which the employee is entitled by virtue of the employment status during the time such employee is on leave.*

3

D000680

2.1   Annual Leave allowance shall be credited to permanent employees who work a regularly scheduled standard work week consisting of five seven (7) hour, seven and one-half (7½) hour or eight (8) hour days, as follows:

| Category | Monthly Accrual Rate | Annual Leave Allowance* |
|---|---|---|
| a. For employees on staff prior to July 1, 1956 | 2 1/4 days | 27 workdays (five weeks and two days) |

b. For employees appointed after July 1, 1956

| Years in Service | | |
|---|---|---|
| At the beginning of the 15th year | 2 1/4 days | 27 workdays (five weeks and two days) |
| At the beginning of the 8th year | 2 days plus one additional day at the end of the leave year | 25 workdays (five weeks) |
| Prior to the beginning of the 8th year | 1 2/3 days | 20 workdays (four weeks) |

* Total after one full leave year at the monthly accrual rate.

c.   For the purpose of this Section 2.1 continuous service shall be defined as unbroken service except: (1) where a break in service is 31 calendar days or less, or (2) where a former employee returns within one year to permanent service. In HHC when former employee returns within one year to permanent service under reinstatement rules of Corporation (OP 20-29) or by appointment from open competitive list or by appointment to non-competitive title.

Time spent on a preferred list shall be deemed continuous service, and leave without pay shall not be considered a break in service. However, time in non-pay status shall not be counted as part of the years of service in determining annual leave accrual rate.

## 2.1 INTERPRETATIONS

A.  Regulation 2.1 uses the 5-day week for illustration only.
    It does not mandate that there should be a 5-day week.

B.  Charges against annual leave accrued under this section
    shall be made on a workday basis.

C.  The Leave Regulations became effective at 12:01 a.m.,
    July 1, 1956. Anyone appointed before this time is con-
    sidered to have been "on staff prior to the effective date of
    these regulations." An employee in this category who
    continues employment through July 1, 1956 without a break in
    service is entitled to 27 workdays annual leave per year of
    service. Employees appointed after said effective date
    are entitled to the appropriate amounts as indicated.

D.  If a person has had previous service in a City agency not
    covered by these regulations, and subsequently moves without
    a break in service to an agency which is covered by these
    regulations, such person's service in the agency not covered
    shall be counted in determining the annual leave allowance
    only if the person held a Career and Salary Plan position
    in that agency.

E.  If an employee resigns one position and takes another, the employee
    does not lose any leave rights or balances, regardless of whether
    the new position carries the same or a different title, or
    is in the same or different agency, provided both positions
    are under these Leave Regulations and there is no break in
    service.

F.  Provisional and temporary service except summer temporary
    service defined in Section 2.7 shall be counted the same as
    service in a permanent position for purposes of determining
    the rate at which an employee will accrue annual leave.

G.  An employee who resigns or is terminated prior to completion
    of the probationary period is not entitled to annual leave
    for that period.

H.  To qualify for annual leave in excess of 20 days per year,
    an employee must have the required number of years of
    unbroken service. Any separation of more than 31 calendar
    days constitutes a break in service, except where a permanent
    employee returns to City service within one year (See 1(d))

I.  An employee who returns from military service shall have
    such service counted toward the 8 or 15 years required for
    25 or 27 days of leave accrual.

5

J.   *On beginning his or her 8th or 15th year of full-time paid service, an employee starts to accrue annual leave at the rate of 25 or 27 work days per year so that upon completion of the 8 or 15 years of such service, the employee will have accrued the 25 or 27 days of annual leave to which entitled.*

2.2   Annual leave allowances for employees with different work weeks shall be granted in accordance with Section 6.4 or 6.9 of these regulations.

2.3   For the earning of annual leave credits, the time recorded on the payroll at the full rate of pay, and the first six months of absence while receiving Worker's Compensation payments shall be considered as time "served" by the employee.

In the calculation of annual leave credits, a full month's credit shall be given to an employee who has been in full pay status for at least 15 calendar days during that month, provided however, that (a) where an employee has been absent without pay for an accumulated total of more than 30 calendar days in the leave year, the employee shall lose the annual leave credits earnable in one month for each 30 days of such accumulated absence even though in full pay status for at least 15 calendar days in each month during this period; and (b) if an employee loses annual leave credits under this rule for several months in the leave year because the employee has been in full pay status for fewer than 15 days in each month, but accumulates during said months a total of 30 or more calendar days in full pay status, such employee shall be credited with annual leave credits earnable in one month for each 30 days of such full pay status.

### 2.3 INTERPRETATIONS

A.   *An employee who is using up accumulated annual leave credits just prior to separation from City service does not earn additional credits while on final leave.*

B.   *An employee returning from military service shall be given annual leave credits for the period of military service, not to exceed the amount the employee could have earned in one calendar year if the employee had remained in City employment.*

6

D000683

2.4   Calculation of annual leave credits shall be on a yearly basis beginning May 1, hereafter known as a "leave year." All annual leave allowance of an employee to an employee's credit on April 30 and not used in the succeeding leave year may be carried over from said leave year to the next succeeding leave time not used within the prescribed period shall be added to the employee's sick leave balance.

a.   All annual leave accumulations to the credit of employees on April 30, 1958, which exceed the allowances permitted in Regulation 2.4, shall remain to their credit but shall be reduced to the maximum set by the Leave Regulations by May 1, 1962. This shall be accomplished in the following manner:

1.   Any accumulations in excess of 54 days shall be established as an annual leave reserve bank, which shall be in existence until May 1, 1962.

2.   Any time left in the annual leave reserve bank on May 1, 1962 shall be transferred to the sick leave balances of employees. If any such transfer causes an employee's sick leave balance to rise above the 180-day maximum established by the Leave Regulations, the sick leave surplus which exceeds 180 days shall be placed in the employees' sick leave bank and shall remain to the employee's credit, notwithstanding the provisions of Regulation 3.1.

3.   After May 1, 1962, the full provisions of Regulation 2.4 apply.

b.   In the event, however, that the Mayor, an elected official of any department, or any agency head authorizes in writing an employee to forego vacation or any part thereof in any year, that portion thereof shall be carried over as annual leave even though the same exceeds the limits fixed in 2.4 and 2.4a above.

## 2.4 INTERPRETATION

A.   After May 1, 1962, an employee's leave balance must be reduced by May 1 in any given year to the amount accruable in the proceeding two years; for example, 54 days for those accruing annual leave at the 27-day rate, 50 days for those with 25-day

7

*accrual rate, and 40 days for those accruing at the
20-day rate. At any point during a year, however, an employee's
leave accumulations together with the employee's current
year's earnings may exceed this limit so long as the
total is reduced to the limit by the following May 1.*

2.5   The normal unit of charge against annual leave allowance shall
be one-half day, but annual leave approved by the agency head may
be used in units of one hour.  Smaller units of charge are
authorized for time lost due to tardiness, religious observance,
and for time lost by employee representatives duly designated
by certified employee organizations in activities specified
in Executive Order No. 75, as amended, dated March 22, 1973.  The
agency head is also authorized to make such other exceptions as
are warranted.

### 2.5 INTERPRETATIONS

A.  *Agency heads may require advance notice from employee union
representatives who wish to use annual leave for union
activity.*

B.  *Executive Order No. 75 of 1973, as amended, governing time
spent by employee representatives on union activities is in
no way intended to require agency heads to grant employees
leave to participate in any demonstration or other mass
activity.*

2.6  a.   Earned annual leave allowance shall be taken by the employees
at the time convenient to the department.  In exceptional
and unusual circumstances, an agency head may permit
use of annual leave allowance before it is earned, not
exceeding two weeks.

b.   An employee who plans to retire or otherwise terminate service
with the City should arrange with the agency, in advance of
retirement or termination, for the use of any outstanding
annual leave balances.  Each agency may determine for itself
when it is convenient to permit the use of annual leave
credits.

However, where an employee has an entitlement to accrued
annual leave and/or compensatory time, and the City's fiscal
condition requires employees who are terminated, laid off,
or who choose to retire in lieu of layoff, be removed from
the payroll on or before a specific date, or where an employee
cannot be considered for an extension of service past the
mandatory retirement age solely because of budgetary consid-

D000685

2.6 b.  erations, the employer shall provide in a lump sum the monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit.  Such payments shall be in accordance with the provisions of Executive Order No. 76 dated March 23, 1973 or Executive Order No. 30, dated June 24, 1975.

2.7 a.  Any employee who has completed four (4) months of service may be permitted to take approved annual leave as it accrues except that the employee may be permitted to use annual leave at any time for religious holidays.

b.  Where certification of eligible lists permits, provisional and temporary employees shall have the same annual leave benefits as regular employees.  Employees whose employment is temporary and limited to all or parts of the months of June, July, August, or September and who are designated as summer employees or summer replacements are excluded from the provisions of Section 2 - Annual Leave Allowance of the Leave Regulations.

## 2.7 INTERPRETATIONS

A.  *Temporary or provisional employees who resign their positions and, without any break in service, take another temporary or provisional position are entitled to carry their unused leave balances with them.  They will also accumulate annual leave at the same rate in the new position as they had in their previous position.  This provision does not apply to summer temporary employees as they do not accumulate annual leave.*

B.  *Seasonal and temporary employees may be covered by the provisions of section 6.4 and this section 2.7 shall apply to such employees*

2.8  Penalties for unexcused tardiness may be imposed by the head of each agency in conformance with established rules of the agency. As a minimum, however, all unexcused tardiness both in the morning and upon return from lunch shall be charged to the annual leave allowance.

## 2.8 INTERPRETATIONS

A.  *Each agency head may determine for agency employees whether or not a grace period will be allowed for lateness, and what the duration of the grace period shall be.*     IN HHC
OP 20-2
PREVAILS

9

D000686

B.   Unauthorized and unexcused early departure shall be treated
as absence without authorization and shall be charged to
leave balances.

C.   In cases of extreme weather conditions or other conditions
causing general breakdown of normal public transporation
facilities, a central determination will be made as to
whether lateness may be excused or early departure authorized
without charge to leave balances.  Agencies will be advised of
such authorization by the Department of Personnel.

2.9   a.   Effective January 1, 1975, the terminal leave provision for
all employees except as provided in paragraphs b. and c.
below shall be as follows:

Terminal leave with pay shall be granted prior to final
separation to employees who have completed at
least ten (10) years of service on the basis of
one (1) day terminal leave for each two (2) days
of accumulated sick leave up to a maximum of one
hundred twenty (120) days of terminal leave.  Such
leave shall be computed on the basis of work days
rather than calendar days.*

b.   Any employee who as of January 1, 1975 has a minimum of
fifteen (15) years of service as of said date may elect to
receive upon retirement a terminal leave of one (1)
calendar month for every ten (10) years of service prorated for
a fractional part thereof in lieu of any other terminal leave.
However, any sick leave taken by such employees subsequent
to July 1, 1974 in excess of an average annual usage of
six (6) days per year shall be deducted from the number of days
of terminal leave to which the employee would otherwise be
entitled at the time of retirement, if the employee chooses
to receive terminal leave under this paragraph.*

*   For an agency whose presently existing rules (as of June 30, 1956)
permit the use of sick leave credits of an employee in connection with
terminal leave with pay upon retirement, the agency is authorized
to grant an employee on staff prior to the effective date of these
Regulations but who retires subsequent thereto, either terminal leave
with pay as specified in Regulation 2.9 or terminal leave with pay
calculated under such presently existing agency rules, whichever is
the most liberal for the employee; provided that the sick leave
balance used in the application of the agency formula does not
exceed the sick leave balance to the credit of the employee at the
time these Regulations go into effect (July 1, 1956).

10

c.  In a case where an employee has exhausted all or most of the accrued sick leave due to a major illness, the agency head, in his or her discretion, may apply two and one-fifth (2-1/5) workdays for each year of paid service as the basis for computing terminal leave in lieu of any other terminal leave.

d.  Where an employee is entitled to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date or where an employee cannot be considered for an extension of service past the mandatory retirement age solely because of budgetary considerations the employer shall provide a monetary lump-sum payment for terminal leave in accordance with the provisions of Executive Order No. 31, dated June 24, 1975.

### 2.9 INTERPRETATIONS

A.  *Terminal leave under option b is calculated on the basis of calendar months rather than workdays. However, the deduction of excessive sick leave usage is done on the basis of workdays rather than calendar days.*

B.  *The amount of terminal leave granted to a retiring employee under Section 2.9 of the Leave Regulations is included in computing the duration of the employee's service for retirement purposes.*

*Example: John Smith wishes to retire after 30 years of service. On September 30 he will have 29 years, 9 months and several days of service. If his agency head allows him the maximum terminal leave of 2 months and 29 calendar days, this may be counted as part of the 30 years, and the date of his retirement will be December 29.*

C.  *Subject to the terms of Interpretation D below, a person on terminal leave shall be considered an employee in active service while on terminal leave.*

D.  *An employee does not earn sick or annual leave during terminal leave nor during the period of leave taken immediately prior to final separation which is chargeable to accrued overtime, accrued annual leave, and terminal leave.*

E.  *An employee may not be returned to duty solely to use sick leave, once terminal leave has started.*

F.  *An employee shall be entitled to any pay raise or increment that occurs during terminal leave.*

D000688

G. An employee who dies while on terminal leave is in the same position as one who dies during active service prior to such leave, and is not entitled to benefits as a retired employee.

H. The estate of an employee who dies while on terminal leave does not receive payment for the unused portion of terminal leave.

I. Terminal leave under option b may be given to eligible employees who retire under one of the City pension systems or under social security derived wholly or in part from City employment. This does not include surviving spouse's benefits or other derivative social security coverage.

J. Accumulated annual leave cannot be used after terminal leave begins.

K. An employee whose service with the City has been interrupted, will be eligible for terminal leave for the entire period of service only if the interruption was less than 12 months' duration: If the break in service was greater than one year the employee will be eligible for terminal leave only for employment subsequent to such break.

L. As terminal leave under option b is based on calendar months, it shall not be extended because of holidays falling within the terminal leave period.

M. This section applies to disability retirement as well as service retirement.

N. An employee who is receiving Worker's Compensation and who elects to retire may be granted terminal leave, but in calculating the amount of terminal leave which the employee may be given, the agency may not count as "service" more than the first six months of the time the employee was absent while receiving Worker's Compensation.

O. For the purpose of computing allowable terminal leave, the time spent on a preferred list is not considered as a break in service. This period of time, however, is not counted as a part of the total years of service, on which terminal leave credits are based.

P. In determining years of service upon which terminal leave computation will be based, only time in full pay status shall be included.

12

D000689

Q.  In order to be eligible for option  b, an employee must
    retire.  Vesting after 15 years of service is <u>not</u> considered
    retirement.

R.  There is a maximum of 1 year final leave which includes
    accrued overtime, annual leave and terminal leave per
    Executive Order No. 26, 1970.

S.  When the Medical Board of the Retirement System certifies
    to the Board of Estimate that a member whom they find to be
    disabled in the performance of duty "should be retired",
    the Board of Estimate "shall retire such member for accident
    disability forthwith".  Payment of a salary to one no longer
    rendering services "is an unconstitutional gift of public
    monies".  City agencies may not retain pensioners on the
    payroll after their retirement, unless they have been reinstated
    to active service.  (Law Department opinion No. 107226
    of 10.24.69).

T.  Where an employee returns to work after using terminal leave
    the employee is subject to the maximum amounts of terminal
    leave permitted and any amount of terminal leave used shall
    be subtracted from the maximum amount which can be used in
    the future.

13

D000690

## 3.0    SICK LEAVE ALLOWANCE

3.0   Sick leave allowance of one day per month of service shall be
      credited to permanent employees, provisional employees and
      temporary employees who work a regularly scheduled standard
      work week consisting of five seven (7) hour, seven and one-
      half (7½) hour or eight (8) hour days and shall be used only
      for personal illness of the employee. For employees with
      other work weeks, sick leave shall be credited in accordance
      with Sections 6.4 or 6.9 of these regulations.

### 3.0 INTERPRETATIONS

A.   *An illness which occurs during an employee's vacation may
     not be charged to sick leave, except as otherwise provided
     in Section 3.6 of these regulations.*

B.   *Disabled veterans who are required to report to a Federal
     agency for treatment or determination of disability status,
     may use their paid sick leave for this purpose. However,
     they may not be given additional paid leave over and above
     the sick or annual leave allowance.*

C.   *Absence due to illness in an employee's immediate family i
     not chargeable to sick leave. Such absence would fall in
     the category of "Personal Business" and as such could
     properly be charged against annual leave.*

D.   *Paid leave over and above the regular leave allowances may
     not be granted to employees to cover late arrivals or early
     departures.*

E.   *An employee required to report to the Worker's Compensation
     Board for examination may charge to sick leave time needed
     for this purpose. If no sick leave credits are available,
     such time must be charged to annual leave or compensatory
     time.*

F.   *Except as otherwise provided under Section 7.2 of these reg-
     ulations an employee who is covered by Worker's Compensation
     and who is injured in the performance of official duties,
     may not be given sick leave. The employee may, however, be
     given paid leave under Section 7.1 for the first week of
     incapacity. If there is any doubt as to whether or not the
     employee is covered by Worker's Compensation, the agency
     personnel officer should telephone the Worker's Compensation*

14

D000691

no credits shall be deducted from the employee's "holiday leave bank".

d. An employee may be advanced holiday leave credits consistent with the maximum set forth in Section 6.9 b. of these regulations. Any resulting nagetive leave balance shall be charged against subsequent holiday accruals. If as of May 1, of any year, an employee's "holiday leave bank" has a negative balance, said balance shall be charged against the employee's annual leave.

e. The "Annual Leave Allowance" shall accrue on an hourly basis. The rate of accrual shall be based on the number of hours in the work week and the number of years of service of the respective employee as follows:

| Work Week | Year Service | Monthly Accrual Rate | Annual Leave Allowance* |
|---|---|---|---|
| 40 hours | At the beginning of the 15th year | 18 hours | 216 hours |
| 40 hours | At the beginning of the 8th year | 16 2/3 hours | 200 hours |
| 40 hours | Prior to beginning of the 8th year | 13 1/3 hours | 160 hours |
| 37.5 hours | At the beginning of the 15th year | 16 3/4 and 1 1/2 hrs. at the end of leave year | 202.5 hours |
| 37.5 hours | At the beginning of the 8th year | 15 1/2 + 1 1/2 hours at the end of leave year | 187.5 hours |
| 37.5 hours | Prior to beginning of the 8th year | 12 1/2 hours | 150 hours |
| 35 hours | At the beginning of the 15th year | 15 3/4 hours | 189 hours |
| 35 hours | At the beginning of the 8th year | 14 1/2 + 1 hour at the end of leave year | 175 hours |
| 35 hours | Prior to beginning of the 8th year | 11 2/3 hours | 140 hours |

* Total after one full leave year at the monthly accrual rate.

31

D000692

6.9    f.    The "Sick Leave Allowance" shall accrue on an hourly basis. The number of hours of sick leave credited shall be based on the number of hours in the respective employee's workweek as follows:

| Workweek | Monthly Accrual |
|----------|-----------------|
| 40   hours | 8 hours |
| 37.5 hours | 7 1/2 hours |
| 35   hours | 7 hours |

g.    All existing leave balances shall be converted from daily to hourly balances.  The conversion rate shall be based on the number of hours in the workweek as follows:

| Workweek | Conversion Rate |
|----------|-----------------|
| 35   hours | 7 hours per day |
| 37.5 hours | 7 1/2 hours per day. |
| 40   hours | 8 hours per day |

h.    (1)  Employees who are entitled to a shortened workday schedule pursuant to Section 6.8 of these regulations shall be credited with five (5) hours of compensatory time, in lieu of any shortened workday schedule, for each week actually worked while shortened schedules are in effect.

(2)  Employees who are entitled to receive heat days pursuant to Section 6.8 of these regulations shall receive compensatory time for said heat days.  The number of hours credited for each heat day shall be based on the number of hours in the respective employee's workweek as follows:

| Workweek | Credit for Each Heat Day |
|----------|--------------------------|
| 35 hours | 7 hours |
| 37 1/2 hours | 7 1/2 hours |
| 40 hours | 8 hours |

D000693

## 7. ABSENCE DUE TO INJURY INCURRED IN THE
PERFORMANCE OF OFFICIAL DUTIES

7.0  a.  An employee physically disabled in the performance of official duties who has accrued sick and/or annual leave or has been advanced credits in accordance with the Career and Salary Plan Leave Regulations may elect one of the following, in addition to the benefits to which the employee is entitled under the Worker's Compensation Law, such election to be made within the first seven calendar days of absence by the employee or someone on his or her behalf:

  1.  To receive the difference between the amount of his or her weekly salary and the compensation rate, provided that:

      (a)  the injured employee or any authorized person acting on behalf of such employee makes the request in writing, and

      (b)  the injured employee or any authorized person acting on behalf of such employee agrees that a pro-rated charge be made against the sick leave and/or annual leave balances equal to the number of working days of absence less the number of working days represented by the Worker's Compensation payments, and

      (c)  the injured employee has the necessary accrued sick leave and/or annual leave balance or has been advanced credits in accordance with the Career and Salary Plan Leave Regulations against which the supplementary pay can be charged, and

      (d)  the injured employee was not guilty of willfull gross disobedience of safey rules or willful failure to use a safety device, or was not under the influence of alcohol or narcotics at the time of injury or did not willfully intend to bring about injury or death upon himself or herself or another, and

      (e)  the injured employee undergoes such medical examinations as are requested by the Worker's Compensation Division of the Law Department and the employing agency, and when found fit for duty by said physicians, returns to employment.

  2.  To receive Worker's Compensation benefits in their entirety with no charge against sick leave and/or annual leave.

33

b. During the period when an injured employee is receiving Worker's Compensation and the differential to bring the employee to full pay, the employee will be carried on full-pay status and this time shall be counted for retirement benefits.

## 7.0 INTERPRETATIONS

A. *Agencies should use election forms (DF-2002), which are obtainable from the Stock Section (Room 433) of the Department of Personnel.*

B. *The election of an option, as provided for in this section, should be made within the first seven consecutive calendar days following absence, in order that an employee, who so elects, is assured of receiving full pay during the period of Worker's Compensation coverage. The agency head's authority to grant leave with full pay, without charge to leave balances pursuant to Section 7.1, does not extend beyond the first seven consecutive calendar days following absence.*

C. *Where an employee has been absent for an initial period of less than a week and an extended subsequent absence may possibly result from the same disability or condition, the employee must elect a rate of charge (on Form DF-2002) within seven calendar days of the first day of absence in order to receive full pay, even though the employee has already returned to wor*

D. *An employee who fails to elect a rate of charge within the prescribed period shall be deemed to have selected Option 2 and will receive the benefits of Worker's Compensation only.*

E. *Provisional and temporary incumbents of Rule II (Career and Salary Plan) positions, and permanent employees reclassified from Career and Salary Plan Titles to Rule X titles pursuant to Resolution No. 63-130 adopted December 30, 1963 by the City Civil Service Commission, are also covered under the Worker's Compensation Law.*

7.1 The agency head is empowered to grant a leave of absence with pay for the first week's absence of an employee covered by Worker's Compensation who is physically disabled in the performance of official duties.

7.2 a. Upon the determination by the head of an agency that an employee has been physically disabled because of an assault arising out of and in the course of the employee's employment, the agency head will grant the injured employee a leave of absence with pay not to exceed eighteen (18) months. No such leave with pay shall be granted unless the Worker's Compensation Division of

34

D000695

7.2    a.    the Law Department advises the head of the agency in writing that the employee's injury has been accepted by the Division as compensable under the Worker's Compensation Law, or if such injury is not accepted by the Division as compensable under such law, unless the Worker's Compensation Board determines that such injury is compensable under such law.

For a permanent employee who has five (5) years or more of service who does not have sufficient leave credit to cover his/her absence pending a determination by the Worker's Compensation Division of the Law Department, the agency head shall advance the employee up to forty-five (45) calendar days of paid leave.   In the event the Worker's Compensation Division of the Law Department does not accept the injury as compensable under the law or the Worker's Compensation Board determines that such injury is not compensable under such law, the employee shall reimburse the City for the paid leave advance.

An employee who is granted a leave of absence with pay pursuant to this Section, shall receive the difference between the employee's weekly salary and the compensation rate without charge against annual leave or sick leave.   The employee shall, as a condition of receiving benefits under this Section, execute an assignment of the proceeds of any judgment or settlement in any third-party action arising from such injury in the amount of the pay and medical disbursements received pursuant to this Section, but NOT to exceed the amount of such proceeds.   Such assignment shall be in the form prescribed by the Corporation Counsel.   The injured employee shall undergo such medical examinations as are requested by the Worker's Compensation Division of the Law Department and the employing agency, and when found fit for duty by the Worker's Compensation Board shall return to employment.

No benefits shall be paid while an employee is suspended pending disciplinary action, or if an employee is subsequently found culpable of having commenced the assault or unnecessarily continued the assault.

Benefits provided under this section shall be in addition to, but not concurrent with, benefits provided under Section 7.0 and 7.1 of these regulations.

b.    For employees who do not come under the provisions of Section 7.2 a. of these regulations but who are injured in the course of employment, upon the determination of an agency head that an employee has been physically disabled because of an injury arising out of and in the course of employment, through no fault of the employee, the agency head will grant

35

7.2  b.   the injured employee an extended sick leave with pay not to
exceed three months after all the employee's sick leave and
annual leave balances have been exhausted.  This additional
leave must be taken immediately following the exhaustion of
such balances.  No such leave with pay shall be granted un-
less the Worker's Compensation Division of the Law Depart-
ment advises the agency head in writing that the employee's
injury has been accepted by the Division as compensable under
the Worker's Compensation Law, or if such injury is not accepted
by the Division as compensable under such law, unless the
Worker's Compensation Board determines that such injury
is compensable under such law.  An employee who is granted
extended sick leave with pay pursuant to this section, shall
receive the difference between the employee's weekly salary
and the compensation rate for the period of time granted.  The
employee shall, as a condition of receiving benefits under this
Section, execute an assignment of the proceeds of any judgment
or settlement in any third-party action arising from such
injury, in the amount of the pay and medical disbursements
received pursuant to this section, but not to exceed the
amount of such proceeds.  Such assignment shall be in the
form prescribed by the Corporation Counsel.  The injured
employee shall undergo such medical examinations as are request-
ed by Worker's Compensation Division of the Law Department
and the employing agency, and when found fit for duty by the
Worker's Compensation Board shall return to employment.
Benefits  provided under this section shall be in addition
to but not concurrent with benefits provided under Sections
7.0 and 7.1 of these regulations.  The benefits provided by
this section shall not be provided or continued beyond the
date on which disability retirement benefits become effective.

### 7.2 INTERPRETATION

A.   An "assignment" Form (DP-2010 obtainable from the Department
of Personnel Stock Section, Room 433) must be executed in
duplicate by the injured employee and submitted to the employ-
ing agency.  The employing agency shall forward the duplicate
copy to the Worker's Compensation Section of the Law
Department, and retain the original.

36

D000697