Index No.  18 Civ. 12137 (JPC)(JCC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA KAYE,

Plaintiff,

-against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION;   ELIZABETH   FORD;   PATRICIA
YANG;  ABHISHEK  JAIN;  and  JONATHAN  WANGEL
(said names being fictitious, the persons intended being
those who aided and abetted the unlawful conduct of the
names Defendants),

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Donna A. Canfield*
*Tel:  (212) 356-2461*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

ARGUMENT ...................................................................................................................3

    POINT I ........................................................................................................................3

        **PLAINTIFF'S EQUAL PAY ACT CLAIMS
        ARE WITHOUT MERIT**.............................................................3

    POINT II .......................................................................................................................8

        **PLAINTIFF'S TITLE VII, §1983, SHRL,
        AND CHRL DISPARATE TREATMENT
        CLAIMS ARE WITHOUT MERIT**...............................................8

    POINT III .....................................................................................................................11

        **PLAINTIFF'S RETALIATION CLAIMS
        ARE DEFICIENT AS A MATTER OF LAW** ..............................11

    POINT IV .....................................................................................................................14

        **PLAINTIFF'S FIRST AMENDMENT
        CLAIMS ARE WITHOUT MERIT**...............................................14

    POINT V ......................................................................................................................22

        **THE CLAIMS AGAINST THE
        INDIVIDUAL DEFENDANTS MUST BE
        DISMISSED**....................................................................................22

    POINT VI .....................................................................................................................22

        **THE INDIVIDUAL DEFENDANTS ARE
        ENTITLED TO QUALIFIED IMMUNITY** ..................................22

    POINT VII ....................................................................................................................23

**PLAINTIFF'S FAMILY MEDICAL LEAVE ACT ("FMLA") CLAIMS ARE WITHOUT MERIT** ...........................................................................23

POINT VIII.........................................................................................................25

**PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIMS FAIL** ...........................................................25

POINT IX............................................................................................................25

**PLAINTIFF'S N.Y. LABOR LAW 740 CLAIMS ARE WITHOUT MERIT**...............................................25

CONCLUSION....................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alam v. HSBC Bank USA, N.A.*,
    382 F. App'x ......................................................................................................20

*Belfi v. Prendergast*,
    191 F.3d 129 (2d Cir. 1999).............................................................................3, 4

*Bentley v. AutoZoners, LLC*,
    935 F.3d 76 (2d Cir. 2019)..................................................................................24

*Benvenisti v. City of New York*,
    2006 U.S. Dist. LEXIS 73373 (S.D.N.Y. Sept. 23, 2006)...................................18

*Brightman v. Prison Health Serv., Inc.*,
    108 A.D.3d 739 (2d Dep't 2013).........................................................................11

*Byrne v. Telesector Res. Grp., Inc.*,
    339 F. App'x 13 (2d Cir. 2009)............................................................................6

*Carmellino v. District 20 of New York City Dept. of Educ.*,
    No. 03 Civ. 5942 (PKC), 2006 U.S. Dist. LEXIS 63705 (S.D.N.Y. Sept. 6,
    2006) ...................................................................................................................22

*Chiaramonte v. Animal Med. Ctr.*,
    677 Fed. Appx. 689 (2d Cir. 2017) ......................................................................5

*Cobb v. Pozzi*,
    363 F.3d 89 (2d Cir 2003)....................................................................................16

*Conigliaro v. Horace Mann Sch.*,
    95 Civ. 3555 (CSH), 2000 U.S. Dist. LEXIS 556 (S.D.N.Y. Jan. 18, 2000) ...........................4

*Connick v. Myers*,
    461 U.S. 138 (1983).......................................................................................15, 16

*Conte v. Bergeson*,
    No. 17-3233, 2019 U.S. App. LEXIS 7322 (2d Cir. Mar. 13, 2019)....................15

*Corning Glass Works v. Bernnan*,
    417 U.S. 188 (1974).............................................................................................3

*Cotarelo v. Village of Sleepy Hollow Police Dep't*,
    460 F.3d 247 (2d Cir. 2006).................................................................................20

*D'Olimpo v. Crisafi*,
 718 F. Supp. 2d 340 (S.D.N.Y. 2010)........................................................................19

*De Cintio v. Westchester County Medical Center*,
 821 F.2d 111 (2d Cir. 1987)......................................................................................12

*DiNolfo v. Rochester Tel. Corp.*,
 972 F. Supp. 718 (W.D.N.Y. 1997).............................................................................5

*Equal Employment Opportunity Comm'n v. Port Authority of New York & New*
 *Jersey*,
 768 F.3d 247 (2d. Cir. 2014).........................................................................3, 4, 5, 6

*Eustache v. Home Depot USA, Inc.*,
 No. 13-CV-42L (SJF)(AKT), 2014 U.S. Dist. LEXIS 122912, 2014 WL
 4374588 (E.D.N.Y. Sept. 2, 2014)............................................................................22

*Ezekwo v. New York City Health & Hospitals Corp.*,
 940 F.2d 775 (2d Cir. 1991).......................................................................................18

*Fisher v. Vassar College*,
 70 F.3d 1420 (2d Cir. 1995), *abrogated on other grounds by Reeves v.*
 *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed.
 2d 105 (2000)...............................................................................................................6

*Garcetti v. Ceballos*,
 547 U.S. 410 (2006)..............................................................................................17, 18

*Graziadio v. Culinary Inst. of Am.*,
 817 F.3d 415 (2d Cir. 2016).......................................................................................24

*Hill v. N.Y. City Hous. Auth.*,
 2016 U.S. Dist. LEXIS 162992 (S.D.N.Y. Nov. 14, 2016).......................................10

*Lane v. Franks*,
 134 S.Ct. 2369 (2014)................................................................................................17

*Lennon v. Miller*,
 66 F.3d 416 (2d Cir. 1995).........................................................................................23

*Matthews v. City of New York*,
 779 F.3d 167 (2d Cir. 2015).......................................................................................15

*Monroe v. Pape*,
 365 U.S. 167, 81 S. Ct. 473 (1961)............................................................................22

*Morris v. Lindau*,
 196 F.3d 102 (2d Cir. 1999).......................................................................................16

*Nagle v. Marron*,
    663 F.3d 100 (2d Cir. 2011)................................................................................16

*Pena-Barrero v. City of N.Y.*,
    2017 U.S. Dist. LEXIS 47983 (S.D.N.Y. Mar. 30, 2017) ......................................10

*Pennsylvania State Police v. Suders*,
    542 U.S. 129 (2004)..............................................................................................25

*Perez v. City of N.Y*,
    843 F. App'x 406 (2d Cir. 2011) ...........................................................................14

*Perkins v. Rock-Tenn Servs., Inc.*,
    700 Fed. Appx. 452 (6th Cir. 2017)........................................................................7

*Potash v. Fla. Union Free Sch. Dist.*,
    972 F. Supp. 2d 557 (S.D.N.Y. 2013)......................................................................8

*Robinson v. Metro-North Commuter Railroad*,
    Co., 267 F.3d 147 (2d Cir. 2001) ............................................................................9

*Ross v. Breslin*,
    693 F.3d 300 (2d Cir. 2012)...........................................................................17, 18

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2009).................................................................................18

*Sanossian v. Valley Stream Cent. High Sch. Dist.*,
    No. 16 Civ. 4697 (JMA) (AYS), 2016 U.S. DIST. LEXIS 28343 (E.D.N.Y.
    February 16, 2022).................................................................................................21

*Saunders v. Queensborough Cmty. Coll.*,
    2015 U.S. Dist. LEXIS 128608 (E.D.N.Y. Sept. 24, 2015)......................................3

*Shumway v. UPS*,
    118 F.3d 60 (2d Cir. 1997).......................................................................................8

*Smith v. Da Ros*,
    777 F. Supp. 2d at 356 .........................................................................................20

*Stuart v. T-Mobile USA, Inc.*,
    No. 14 Civ. 4252 (JMF), 2015 U.S. Dist. LEXIS 106155, 2015 WL 4760184
    (S.D.N.Y. Aug. 12, 2015)......................................................................................23

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
    663 F.3d 556 (2d Cir. 2011)..................................................................................22

*Tomka v. Seiler Corp.*,
 66 F.3d 1295 (2d Cir. 1995)..................................................................3, 4

*Weintraub v. Bd. of Educ.*,
 593 F.3d 196 (2d Cir. 2010)................................................15, 17, 18, 19

*Williams v. New York City Hous. Auth.*,
 61 A.D.3d 62 (1st Dep't 2009) ................................................................10

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
 864 F.3d 158 (2d Cir. 2017)..............................................................23, 24

**Statutes**

29 U.S.C. § 206(d)(1) ...................................................................................3, 4

42 U.S.C. § 206, *et seq.*..................................................................................1

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983
 ("§1983") ...................................................................................1, 8, 9, 22

Criminal Procedure Law 390 ..........................................................................17

Criminal Procedure Law 730 ..........................................................................17

EPA ........................................................................................................ *passim*

Equal Pay Act ..................................................................................................3

Equal Pay Act of 1963 .....................................................................................1

Executive Law § 296, *et seq.*, New York City Human Rights Law ................1

Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* .........................1

FMLA ..................................................................................................... *passim*

FMLA (ii)........................................................................................................23

New York Labor Law .....................................................................................25

New York Labor Law § 740 .............................................................................1

State Human Rights Law ..................................................................................1

Title VII ...................................................................................................11, 24

**Other Authorities**

29 C.F.R. § 825.305(c)................................................................................................24

Federal Rules of Civil Procedure Rule 56 ..............................................................1,10

FRCP Rule 56 ..............................................................................................................10

https://www.nychealthandhospitals.org/wp-content/uploads/2016/07/hhc-salary-
   policy.pdf ..................................................................................................................7

https://www.nychealthandhospitals.org/wp-content/uploads/2018/01/OP-50-1-
   Corporate-Compliance-Program.pdf ......................................................................19

Local Rule 56.1 ..............................................................................................................2

Operating Procedure 50-1, "Corporate Compliance and Ethics Program,"..................19

## PRELIMINARY STATEMENT

Plaintiff, Melissa Kaye, the former Director of the Bronx Forensic Psychiatry Evaluation Center, brings this action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1983 ("§1983"), the Equal Pay Act of 1963 ("EPA"), as amended 42 U.S.C. § 206, *et seq*., the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601, *et seq*., New York State Human Rights Law, as contained in Executive Law § 296, *et seq*., ("NYSHRL"), New York City Human Rights Law, as contained in the Administrative Code of the City of New York § 8-107, *et seq*., ("NYCHRL"), and New York Labor Law § 740.  Plaintiff names defendants New York City Health and Hospitals Corporation ("H+H"), Patricia Yang, Senior Vice President of Correctional Health Services, Elizabeth Ford, the Chief of Psychiatry for Correctional Health Services ("CHS"), Abhishek Jain, Director of Forensic Psychiatry Evaluation Court Clinics, and Jonathan Wangel, Senior Director of Risk Mitigation and Management for CHS.  Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff is unable to establish any of her claims.  Her EPA claim fails, given that no evidence exists that she was paid less than male employees performing substantially equal work.  And, even if she could marshal any such evidence, the record clearly demonstrates that a "factor other than sex"—plaintiff's refusal to accept a managerial position, choosing instead to remain a member of Doctors Council, her collective bargaining unit—justifies any conceivable wage differential between plaintiff and her male comparators.

Plaintiff's discrimination claims likewise are baseless.  She levies complaints altogether trivial, like grousing that she was not selected to participate in a workgroup, or perturbed by restrictions under her mandated working hours as required by her union's collective

bargaining agreement. Plaintiff's contention that she was paid less because of discrimination is similarly groundless. The overwhelming evidence establishes that (1) plaintiff was not similarly-situated to her male comparator given that she had fewer supervisory responsibilities and conducted the least number of forensic examinations; and (2) she was compensated consistent with her title and at the collectively bargained rate. Beyond this, plaintiff proffered no other evidence demonstrating that any of the actions she complains of were the result of any discriminatory animus.

Third, plaintiff's FMLA claims lack merit. There is no evidence that she was denied FMLA leave or that she suffered any adverse employment action as a result of exercising her rights under the FMLA.

Finally, plaintiff's retaliation claims are also deficient. Plaintiff cannot demonstrate any causal connection between her complaints and any subsequent action, nor has plaintiff presented any other evidence sufficiently demonstrating retaliation.

In sum, plaintiff's litany of workplace complaints, do not, as a matter of law, violate any law. The record amply supports that her claims are entirely without merit. Accordingly, the Court should grant Defendants' motion, and dismiss the Amended Complaint.

## STATEMENT OF FACTS

For a full statement of the material facts to which there is no genuine issue to be tried, the Court is respectfully referred to Defendants' Local Rule 56.1 Statement of Material Undisputed Facts, dated March 4, 2022 ("Defs. 56.1"), the supporting evidence cited to in Defendants' 56.1 as outlined in the Declaration of Donna A. Canfield, dated March 4, 2022 ("Canfield Decl.").

## ARGUMENT

### POINT I

### PLAINTIFF'S EQUAL PAY ACT CLAIMS ARE WITHOUT MERIT

**A. Applicable Standard**

"The Equal Pay Act, passed by Congress in 1963, prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999); *see also* 29 U.S.C. § 206(d)(1); *Equal Employment Opportunity Comm'n v. Port Authority of New York & New Jersey*, 768 F.3d 247, 254-55 (2d. Cir. 2014) ("Port Authority"). The Second Circuit has held that in order "[t]o prove a violation of the EPA, a plaintiff must first establish a prima facie case of discrimination by showing: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort and responsibility; and iii) the jobs are performed under similar working conditions.'" *Belfi*, 191 F.3d at 135 (internal citation omitted); *see also Corning Glass Works v. Bernnan*, 417 U.S. 188, 195 (1974). "While the equal work inquiry does not demand evidence that a plaintiff's job is 'identical' to a higher-paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are 'substantially equal.'" *Port Authority*, 768 F.3d at 255. "However, jobs which are 'merely comparable' are insufficient to satisfy a plaintiff's prima facie burden." *Tomka v. Seiler Corp*., 66 F.3d 1295, 1310 (2d Cir. 1995) (citation omitted); *Saunders v. Queensborough Cmty. Coll*., 2015 U.S. Dist. LEXIS 128608, *27 (E.D.N.Y. Sept. 24, 2015) (same). Similarly, "the performance of some common tasks does not make jobs substantially equal when material differences also

3

exist." *See Conigliaro v. Horace Mann Sch.,* 95 Civ. 3555 (CSH), 2000 U.S. Dist. LEXIS 556, at * 21 (S.D.N.Y. Jan. 18, 2000). "[A] successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory allegations of sex discrimination, cannot suffice." *Port Authority*, 768 F.3d at 256. Unlike discrimination claims, the EPA does not have an intent requirement. *Tomka*, 66 F.3d at 1295.

If a plaintiff shows that she was paid less than an employee of the opposite sex for substantially equal work, the burden of proof shifts to defendants to show by a preponderance of the evidence that the differential is justified under one of the EPA's exceptions: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any factor other than sex that is implemented for a legitimate business reason. *See* 29 U.S.C. § 206(d)(1); *Belfi*, 191 F.3d at 136. Where defendants come forward with proof of a justification, plaintiff may counter with evidence that the defense is actually a pretext for sex discrimination. *Id.*

### B.  Plaintiff Has Failed to Support a Claim for Disparate Pay

Plaintiff can point to no evidence showing that a male employee at Bellevue or CHS was paid more for performing substantially equal work. As an initial matter, there is no evidence in the record that clearly establishes that Dr. Ciric, a Physician Specialist, was compensated at a higher rate than plaintiff, an Attending Physician. But even assuming he was, there is no evidence that the work was substantially equal.

An "equal work" analysis requires a micro-level, rather than a macro-level, approach to comparing job responsibilities, skills and requirements. *See Port Auth.*, 768 F.3d at 257 ("[B]land abstractions—untethered from allegations regarding Port Authority attorneys'

actual job duties—say nothing about whether the attorneys were required to perform 'substantially equal' work"). That both plaintiff and Dr. Ciric directed criminal court clinics does not mean that they performed "equal work." The "equal work" must "focus on job content." *Id*. at 255. Here, the evidence in the record establishes that plaintiff and Dr. Ciric did not perform "equal work." Though each was the director of their respective court clinic, the overwhelming evidence is that the Manhattan court clinic, overseen by Dr. Ciric, was substantially busier, seeing approximately 1,200 to 1,400 criminal defendants annually. *See* Defs. 56.1. at ¶15. The Bronx Criminal Court clinic, by comparison, saw the least number of criminal defendants, with an average of approximately 300 criminal defendants annually. *Id*.; *see Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 942 (S.D.N.Y. 1996) ("When the additional tasks of one job in comparison to another job are substantial, then jobs are not congruent and the work is not equal").

Further, the evidence establishes that between 2014 and 2017, the time period during which Dr. Ciric was reportedly compensated at a higher rate, plaintiff supervised only one full-time employee, Dr. Winker, a psychologist, whereas, at the Manhattan court clinic, Dr. Ciric supervised two part-time psychiatrists, two part-time psychologists, one full-time social worker, and a forensic fellow. Defs. 56.1 at ¶16; *see DiNolfo v. Rochester Tel. Corp.*, 972 F. Supp. 718, 723 (W.D.N.Y. 1997) (court held that one of the factors which made jobs not substantially equal was fact that lower paid female supervised no employees while higher paid males each had "reportables"). *See Chiaramonte v. Animal Med. Ctr.*, 677 Fed. Appx. 689, 691-92 (2d Cir. 2017) ("The fact that [plaintiff] and the alleged comparators are department head whose positions share some common responsibilities is insufficient to demonstrate substantially equal work in light of the drastic differences in job content . . . "). It is well established that the focus

of the equal work inquiry is "on the congruity and equality of actual job content between the plaintiff and comparator." *See Port Auth.*, 768 F.3d at 255.  The fact that plaintiff and Dr. Ciric are clinic heads whose positions share some common responsibilities is insufficient to demonstrate substantially equal work in light of the drastic differences in job content—that is, differences in case load and supervisory responsibilities.  *See, e.g., Fisher v. Vassar College*, 70 F.3d 1420, 1452 (2d Cir. 1995) (reversing judgment in favor of plaintiff asserting an EPA claim because—although she and her better-paid male co-worker were both college professors—the plaintiff "never introduced evidence establishing that she and [her coworker] performed equivalent work"), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see also Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 16 (2d Cir. 2009) (summary order) (affirming summary judgment in favor of defendant, notwithstanding that plaintiff and higher-paid male co-workers had same job title, because "[f]or purposes of an equal pay claim . . . a finding of substantial equality must be based on actual job content").

Plaintiff likewise asserts disparate pay existed between herself and Dr. Mundy, who succeeded Dr. Ciric as the head of the Manhattan Court Clinic.  Yet again, and still, the record evidence establishes that plaintiff and Dr. Mundy did not perform substantially equal work.  Dr. Mundy assumed the same responsibilities held by Dr. Ciric: overseeing the busiest of the four criminal court clinics, and supervising three part-time psychiatrists, a psychologist, a Forensic Fellow, and a social worker.  *See* Defs. 56.1 at ¶ 70.  Simply put, given the substantially *unequal* work each performed, plaintiff's EPA claim fails.

### C.  Factor Other Than Sex

Finally, even if plaintiff were able to establish a prima facie EPA claim, the wage differential with respect to Drs. Ciric and Mundy is justified by legitimate business reasons, or a "factor other than sex."  With respect to Dr. Ciric, he, like plaintiff, was compensated consistent with his title as negotiated in the Doctors Council collective bargaining agreement.  Defs. 56.1 at ¶ 12.  Although plaintiff may claim that she "was hired as an Attending Physician Level III while her male counterparts were hired as Physician Specialists," there is no evidence in the record to suggest that the titles of Attending Physicians and Physician Specialists perform substantially similarly work, or that a policy or practice existed to hire female doctors in what plaintiff characterizes as a "lesser title."

As to Dr. Mundy, by accepting a managerial title, his salary was "established by surveys, conducted by Central Office and facility representatives, of comparable health care titles in the consolidated Metro area" as set forth in H+H's Operating Procedure 20-41, "Health and Hospitals Corporation Salary Policy.  *See*  https://www.nychealthandhospitals.org/wp-content/uploads/2016/07/hhc-salary-policy.pdf.  Plaintiff too was offered a managerial position, but declined the offer and instead chose to remain a member of the Doctors Council, with her rate of pay established through union negotiations with H+H.  Defs. 56.1 at ¶¶ 13, 73.  Thus, any wage differential existing between Dr. Mundy and plaintiff resulted entirely from the different measures of compensation between them. *See Perkins v. Rock-Tenn Servs., Inc*., 700 Fed. Appx. 452, 457 (6th Cir. 2017) ("paying one employee more than another based on a different measure of compensation (hours worked versus an annual salary) in accordance with an agreement with a union is a legitimate business reason").  Plaintiff's EPA claim thus is fully foreclosed by the record evidence and, accordingly, should be dismissed.

**POINT II**

**PLAINTIFF'S TITLE VII, §1983, SHRL, AND
CHRL DISPARATE TREATMENT CLAIMS
ARE WITHOUT MERIT**

Plaintiff's Title VII, §1983, SHRL, and CHRL claims that she was paid less or received less favorable terms and conditions of her employment because of her gender also fail. There is no record evidence, whatsoever, to suggest, much less establish, that plaintiff's gender played any role in the wages she was paid, how she was treated, or the schedule that she was required to work. Claims of disparate treatment under Title VII, §1983, and SHRL are analyzed using the *McDonnell Douglas* burden-shifting framework: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "When a plaintiff seeks to meet her prima face case by reference to the disparate treatment of an allegedly similarly situated employee, 'the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'" *Potash v. Fla. Union Free Sch. Dist*., 972 F. Supp. 2d 557, 579 (S.D.N.Y. 2013) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)). "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare [herself] must be similarly situated in all material respects." *Shumway v. UPS*, 118 F.3d 60,64 (2d Cir. 1997).

Here, for the reasons set forth in Point I, plaintiff's disparate pay claims fail because no evidence exists that she was paid less than similarly situated men, nor that defendants acted with discriminatory animus. The differences in job content, such as the substantially larger case load and supervisory responsibilities of both Drs. Ciric and Mundy at the Manhattan Criminal Court clinic, demonstrate that plaintiff—whose clinic saw the least number of criminal

defendants and had only one direct report—was not performing substantially similar work as compared to Drs. Ciric and Mundy.  Accordingly, plaintiff's concomitant Title VII, §1983, and SHRL claims necessarily fail for the same reasons.

Moreover, even assuming she were able to make out the elements of a *prima facie* EPA claim and therefore satisfy the first two elements of a Title VII, §1983, and SHRL claim, her claims would still be fatally deficient because there is no credible evidence giving rise to an inference of discriminatory animus on the part of H+H or CHS.  Plaintiff appears to allege some sort of systemic discrimination, claiming that she and other female doctors are hired as an Attending Physician while male doctors are hired as Physician Specialists.  Yet plaintiff ignores the fact that Dr. Mundy, prior to accepting a managerial position, held the title of Attending Physician.  Defs. 56.1 at ¶ 57.  Plaintiff likewise lacks any evidence to support her speculation that widespread acts of intentional discrimination permeate H+H's or CHS's pay practices. Nowhere in the record can plaintiff demonstrate, through statistical evidence or testimonial evidence, from herself or her female co-workers detailing specific instances of discrimination, the existence of a policy or pattern of intentional discrimination.  *See Robinson v. Metro-North Commuter Railroad*, Co., 267 F.3d 147, 158 (2d Cir. 2001).

As to her complaints that she was treated differently in the terms and conditions of her employment when (1) she was required to change her work schedule from 9 a.m. to 5 p.m., to 8 a.m. to 5 p.m., and when (2) she was required to take a one-hour lunch as a CHS employee, compared to the half-hour lunch she was allowed at Bellevue, the evidence does not support her claims.  Though it is correct that plaintiff was working a 9 a.m. to 5:30 p.m. shift with a half hour lunch while employed by Bellevue, following the transition to CHS, the evidence establishes that all Group 12 employees at CHS were required to take a one-hour lunch

consistent with the 40 hours they were required to work, and plaintiff was no exception. Defs. 56.1 at ¶¶ 96, 99, 100.  This sheer and indisputable fact altogether obviates plaintiff's claim of disparate treatment.

For the same reasons, plaintiff's CHRL claims similarly fail because there is no evidence that she was treated less well because of her gender. The CHRL requires "an independent liberal construction analysis in all circumstances, . . . targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial purposes,' which go beyond those of counterpart state or federal civil rights laws." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009). "The proper inquiry under the []CHRL is whether a plaintiff 'was treated 'less well' because of her [membership in a protected class].'" *Pena-Barrero v. City of N.Y.*, 2017 U.S. Dist. LEXIS 47983 at *37-38 (S.D.N.Y. Mar. 30, 2017). However, even under the CHRL's more liberal standard, summary judgment remains appropriate where a plaintiff has not presented evidence that the challenged actions were taken for discriminatory reasons and that similarly situated individuals who did not share plaintiff's protected characteristics were treated more favorably. *Pena-Barrero*, 2017 U.S. Dist. LEXIS 47983, at *38 (holding that "[c]laims under the []CHRL are subject to McDonnell Douglas burden-shifting" and that "[e]ven under []CHRL's more liberal standards, Plaintiff's race, . . . discrimination claims fail as a matter of law because Plaintiff has not shown 'that the conduct [complained of wa]s caused by a discriminatory motive,' even in part." (citation omitted)); *see also Hill v. N.Y. City Hous. Auth.*, 2016 U.S. Dist. LEXIS 162992 *23 (S.D.N.Y. Nov. 14, 2016) ("[C]ourts have repeatedly noted that the CHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under FRCP Rule 56." (citation omitted)).

Here, as set forth above, there is no evidence that plaintiff was treated less well than similarly situated individuals or that she was treated that way for discriminatory reasons. Thus, plaintiff's CHRL claim should also be dismissed.

## POINT III

## PLAINTIFF'S RETALIATION CLAIMS ARE DEFICIENT AS A MATTER OF LAW

Plaintiff's retaliation claim is also governed by the *McDonnell Douglas* burden-shifting framework. To establish a prima case of retaliation under Title VII and the SHRL, a plaintiff must adduce sufficient evidence (1) that she "engaged in protected activity under the anti-discrimination statutes, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Gachette v. Metro North-High Bridge*, No. 17-CV-209, 722 Fed. Appx. 17, 2018 U.S. App. LEXIS 1142, at *2 (2d Cir. Jan. 18, 2018). An action is sufficiently adverse to sustain a claim of retaliation where it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (internal quotation marks omitted).

To establish a *prima facie* case under the CHRL, a plaintiff must demonstrate: "(1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *See Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 740

(2d Dep't 2013).   Causation can be demonstrated indirectly by showing that the protected activity was followed closely [in time] by discriminatory treatment, through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.   *De Cintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted).

Here, the majority of Plaintiff's retaliation claims fail because Plaintiff cannot establish a causal connection between any protected activity and a subsequent, allegedly adverse action. Plaintiff registered the following complaints of discrimination: (1) her May 3, 2018 complaints to Dr. Yang and her EEOC Charge filed in May 22, 2018, both of which complain of unequal pay; (2) her September 2018 supplemental EEOC charge; and (3) her May 2019 amended complaint.   Defs. 56.1 at ¶¶ 124, 127. While acknowledging that plaintiff engaged in protected activity, as explained below, there is no evidence that any alleged adverse action of which she complains resulted from of retaliatory animus.

First, plaintiff claims that her title change from "Medical Director" to "Director" of the Bronx Forensic Psychiatric Evaluation Center in May 2018 was made in retaliation for her complaints of disparate pay.   *See* Defs. 56. 1 at ¶ 81. But the record establishes that this measure was implemented categorically, for plaintiff and others, and to simplify and mainstream the titles of the court clinic directors.   *Id*. at ¶¶ 78-80.   Plaintiff also complains that she was "locked" out of Kronos, the timekeeping system utilized by CHS, and excluded from meetings. As to Kronos, the evidence establishes that plaintiff was locked out because of her transition to CHS, that this was immediately corrected, and that it occurred to other CHS employees who had not complained.   *Id*. at ¶¶ 129-131.   Her claim that she was excluded from meetings is unsupported

by the record evidence, which illustrates efforts made by CHS to schedule and, at times, reschedule meetings, to accommodate plaintiff's schedule.  *Id*. at ¶ 128.

Plaintiff also claims that (1) her shift was changed in August 2018; (2) her "personal and confidential" information was improperly shared in September and December 2018 and again in June 2019; (3) she was denied educational leave in July 2018; (4) denied her full retention bonus in October 2018; and (5) she was docked pay and leave in October 2019 in retaliation for her protected activity. [CITE]. As to the shift change and the requirement to take a 1-hour lunch, all employees covered by the Doctors Council agreement were required to adhere to this work schedule.  *Id*. at ¶¶ 96, 99-100.  With respect to the disclosure of confidential information, there is no evidence that this rises to a level of an adverse employment action, much less that this occurred due to retaliatory animus.  Instead, the evidence establishes that due to a glitch in the PeopleSoft database as a result of the clinics' transition to CHS, Dr. Mundy was incorrectly listed as plaintiff's supervisor.  Moreover, once this mistake was reported, CHS undertook all efforts to correct the error. *Id*. at ¶¶ 109-115.

Regarding her claim that she was denied educational leave for her Child and Adolescent Boards, CHS' policy and practice for all doctors was to approve only time spent taking the exam –plaintiff was treated in accordance with this uniform policy.  At any rate, after plaintiff complained to her union, CHS later revised its practice to include travel time.  *Id*. at ¶¶ 107-108.  To the extent plaintiff claims she was denied her full retention bonus in October 2018, the evidence established that plaintiff was not the only doctor who had their retention bonus miscalculated, undermining any inference of retaliation. *Id*. at ¶ 122.  And, as with the data sharing glitch, mistakes were determined and corrected, with plaintiff paid her full retention bonus for which she was eligible. *Id*. at ¶ 123.

With respect to her claims that she was docked pay in retaliation for her complaints, the evidence establishes that plaintiff had exhausted all of her leave balances, and was therefore not paid when she took time off for Yom Kippur in late October 2019, and FMLA leave on October 15-26, and November 13-14, 2019.  *Id*. at ¶ 149.  Finally, as to plaintiff's claim that she received a warning letter on May 9, 2019, after an investigation by the Office of Corporate Compliance ("OCC") into allegations that plaintiff had electronically recorded, on multiple occasions, evaluations of patients using her personal cell phone and without prior consent, there is no evidence to establish retaliatory intent. *Id*. at ¶¶ 150-153.  Although the referral to OCC was made on March 20, 2019, and the results of the investigation were issued on May 9, 2019, four days after plaintiff filed her amended complaint (her original complaint was never served), plaintiff cannot establish an inference of retaliation where an employer is considering the employment action in question before the protected activity occurred. *See Perez v. City of N.Y*, 843 F. App'x 406, 408 (2d Cir. 2011) (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

In sum, plaintiff seeks to escalate universal policy matters, ministerial snafus, and well-founded admonitions for her improper conduct into acts of retaliation.  As outlined above, no causal connection can be established sufficient to permit such a misguided amplification and, accordingly, plaintiff's retaliation claims should be dismissed.

## POINT IV

## PLAINTIFF'S FIRST AMENDMENT CLAIMS
## ARE WITHOUT MERIT

A public employee asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant[s] took adverse action against him; and (3) there was a causal connection between this adverse action

and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citations omitted). Whether a public employee's speech is protected is determined by a two-step inquiry. The first step requires determining whether the employee spoke as a citizen on a matter of public concern. This first step, in turn, encompasses two separate sub-questions: (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee. *See Conte v. Bergeson*, No. 17-3233, 2019 U.S. App. LEXIS 7322, at *2-4 (2d Cir. Mar. 13, 2019) (internal citations and quotations omitted). If the answer to either question is no, that is the end of the matter.

To assess whether the plaintiff's speech was a matter of public concern, courts consider whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose. *Id.* To determine whether a plaintiff spoke as an employee or a citizen, courts examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. *Id.*

"Speech can be 'pursuant to' a public employee's official job duties even though it is not required by or included in that employee's job description." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (concluding that speech was pursuant to employee's official duties because it related to his "ability to properly execute his duties"). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *See Connick v. Myers*, 461 U.S. 138, 146 (1983). The Supreme Court has distinguished between speech which seeks "to bring to light actual or potential wrongdoing or breach of public trust"

which may be protected and speech which "reflect one employee's dissatisfaction…and an attempt to turn that displeasure into a cause celebre," which is not.  *Id.* at 148.

"Causation can be established either indirectly by means of circumstantial evidence, or directly by evidence of retaliatory animus."  *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citations omitted).  However, "a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link."  *See Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir 2003).  The plaintiff must produce "some tangible proof to demonstrate that [his] version of what occurred was not imaginary."  *Id.*

Even where there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech.  *See Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011).

### A.  Plaintiff's Complaints Were Pursuant to Her Official Job Duties And Not Matters of Public Concern

Plaintiff claims that as early as 2015, she complained about CHS's interference with the 730 examination process and criticized CHS as "politicizing exams."  56.1 at ¶ 82-83.  In early 2018, plaintiff also complained about using unredacted medical records when performing 730 examinations.  56.1 at ¶ 40.  After the formal transition to CHS, plaintiff states that in January 2019, she complained about CHS' psychological testing policy believing that "this proposed administrative policy [ ] places restrictions upon the MD clinic directors," since "physicians are to have unfettered independence within their standard of practice . . . and undermines the credibility of the examination results."  *Id.* at ¶ 85.  Plaintiff also states that in March 2019, she complained about CHS's private practice policy, believing that allowing forensic evaluators to perform private work for the same stakeholders would cause them to "develop[ ] overly friendly

relationships with lawyers and being influenced in how in the findings of their 730 exams in order to establish a business relationship that would get them private referrals." *Id.* at ¶ 86. Yet, even assuming that plaintiff credibly complained about the foregoing, it is evident that plaintiff was acting pursuant to her official duties.

First, governmental workers speak as employees, rather than citizens, when their statements are made "pursuant to their job duties." *See Lane v. Franks*, 134 S.Ct. 2369, 2378 (2014) (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). In *Garcetti*, the Court held that a deputy district attorney's memorandum recommending dismissal of a case was written as part of the employee's "official duties" and was thus unprotected speech. In *Weintraub*, the Court held that a teacher's grievance about his school's failure to discipline a student was made "pursuant to his job duties," and thus non-protected speech. This finding thus is dispositive, that plaintiff's speech "was part-and-parcel of his concerns about his ability to properly execute his duties . . . as a public school teacher—namely, to maintain classroom discipline." *Weintraub*, 593 F. 3d at 203 (internal quotations and citations omitted); *see also Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (holding that plaintiff spoke pursuant to her official duties as payroll clerk typist when she made several reports of financial irregularities, and thus her speech was not protected under the First Amendment). As Director of the Bronx Criminal Court clinic, plaintiff was responsible for conducting court-ordered forensic examinations consistent with Criminal Procedure Law 730 ("CPL 730"), to determine whether a defendant is competent to stand trial, and Criminal Procedure Law 390 ("CPL 390"), which are pre-pleading/pre-sentencing examinations. Given that plaintiff's duties and responsibilities clearly involved the policies and processes for conducting forensic examinations, the alleged complaints she aired were implicit in her job duties and, accordingly, cannot constitute protected speech.

Indeed, plaintiff's gripes about CHS's oversight of the 730 examination process, the use of redacted records, and the proposed policies and procedures concerning testing and outside employment, fall squarely within the scope of her job duties.  Like the deputy district attorney in *Garcetti*, who wrote the memorandum about a prosecution, or the payroll clerk in *Ross*, who reported financial irregularities, CHS paid plaintiff to exercise oversight and management over the conduct of CHS forensic examinations.  Like *Weintraub*, plaintiff's complaints were "part-and-parcel of h[er] concerns about h[er] ability to properly execute h[er] duties."

Moreover, in the First Amendment context, speech that is "calculated to redress personal grievances" rather than address "a broader public purpose" is not a matter of public concern.  *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2009) (citations omitted). Indeed, the thrust of plaintiff's aforementioned complaints was not that the alleged actions by CHS posed an independent problem requiring public attention.  Rather, plaintiff was personally affronted by the changes, telling a Legal Aid attorney with whom she worked, "I am a very senior, highly qualified examiner [and] I was not asked to participate in this process to 'standardize and streamline' 730s."  56.1 ¶ 36.  As held by this Court, "where the speech is buried in a context that overwhelmingly suggests that the plaintiff was merely speaking as an employee on matters of internal office affairs, such speech is not entitled to First Amendment protection."  *Benvenisti v. City of New York*, 2006 U.S. Dist. LEXIS 73373 *39 (S.D.N.Y. Sept. 23, 2006) (citing *Ezekwo v. New York City Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir. 1991) ("[T]he mere fact that one or two of Ezekwo's comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements"); *Ezekwo*, 940 F.2d 781 (finding complaints that were "personal in nature," where the plaintiff "was not on

a mission to protect the public welfare" and "her primary aim was to protect her own reputation and individual development" not protected speech).

Lastly, to the extent that plaintiff claims that the acts of CHS were fraudulent and her complaints sought to protect the constitutional interests of criminal defendants, the court in *Weintraub* held that "when a public employee airs a complaint or grievance, or expresses concern about misconduct. . . pursuant to a clear duty to report imposed by law or employer policy, he or she is speaking as an employee and not as a citizen." *Weintraub*, 489 F. Supp. 2d at 219; *see also D'Olimpo v. Crisafi*, 718 F. Supp. 2d 340, 354 (S.D.N.Y. 2010) ("[s]peech made pursuant to a public employee's legal obligations [complaints to the Inspector General] is not made "as a citizen"). Here, plaintiff had an obligation, pursuant to her duties as an employee of H+H in accordance with Operating Procedure 50-1, "Corporate Compliance and Ethics Program," to report "fraud," "waste," and "abuse." See https://www.nychealthandhospitals.org/wp-content/uploads/2018/01/OP-50-1-Corporate-Compliance-Program.pdf. Plaintiff's complaints concerning the interference of CHS in the 730 examination process, the use of redacted records in the exam process, and the promulgation of policies concerning psychological testing and private practice, undoubtedly fall within the conduct contemplated by H+H's Operating Procedure 50-1. Accordingly, plaintiff's speech, made pursuant to her official job duties, was not protected under the First Amendment.

And, even so, for the reasons below, no causal connection exists between the alleged speech and any adverse employment action. Moreover, the defendants had legitimate business reasons for the actions taken against plaintiff, and would have done so in the absence of such speech.

**B.  There is No Causal Connection And Such Actions Would Have Occurred In the Absence of Speech**

For a First Amendment retaliation claim, "the causal connection must be sufficient to warrant the inference that the protected speech was a motivating factor in the adverse employment action." *Cotarelo v. Village of Sleepy Hollow Police Dep't,* 460 F.3d 247, 251 (2d Cir. 2006) (citations omitted).

Here, plaintiff cannot establish a causal connection between her alleged speech and any alleged adverse employment action.  With respect to plaintiff's complaints in 2015 concerning the alleged interference by Dr. Yang at CHS in the 730 examination process, and her January 2018 complaints about the use of redacted records in the exam process, there is simply no nexus at all, since these complaints are too attenuated to establish a causal relationship between the exercise of a federal constitutional right and any adverse employment action. District courts within the Second Circuit consistently have found that lapses of more than two or three months between protected activity and allegedly retaliatory actions do not support inferences of causation.  *Smith v. Da Ros*, 777 F. Supp. 2d at 356 (collecting cases); *see also Alam v. HSBC Bank USA, N.A.*, 382 F. App'x at 75.   In any event, as to plaintiff's complaints regarding the use of redacted records, the record demonstrates that many of the doctors registered this same complaint.  Defs. 56.1 at ¶40.

Likewise, there is no causal connection between plaintiff's complaints about the promulgation of policies concerning psychological testing and private practice in January 2019 and March 2019, respectively, and the fact that plaintiff received two counseling memos in July 2019.  First, as to the counseling memo regarding the recording of forensic evaluations with consent, there is no evidence that Mr. Wangel was aware of plaintiff's purported complaints regarding the policies issued by CHS clinical staff when he referred plaintiff to the Office of Corporate Compliance on March 20, 2019.  As to the second counseling memo, regarding the

finding that plaintiff engaged in professional misconduct in her interactions with Ms. Swenson, that memo was issued in June 2019, too remote to plaintiff's January and March 2019 complaints, and moreover, plaintiff is unable to shepherd any evidence to suggest that the issuance of the counseling memo was done with retaliatory intent.   In any event, an investigation of an employee for on-the-job conduct, which does not lead to disciplinary action, is not an adverse employment action.  See *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014) ("An employer's investigation of a . . . complaint, . . . without more—that is, without additional particularized facts evidencing a retaliatory intent and resulting in, or amounting to, adverse job consequences for the complainant—cannot sustain a valid retaliation complaint"); *see also Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 224 (D. Conn. 2005) ("mere participation in an internal investigation—standing alone, without allegations of attendant material disadvantage in employment terms—could support a First Amendment retaliation claim. Indeed, case law on this subject holds precisely the opposite").  While Plaintiff may contend that the counseling memos have prevented her from securing a medical license in New Mexico, this is mere conjecture. Plaintiff admits that she has not completed the employment verification process of her application, because she believes the memos will negatively affect her medical licensing in that state.   Defs. 56.1 at ¶¶ 173-174.

Finally, as a matter of law, a counseling memo is not an adverse employment action sufficient to support a prima facie case of retaliation.  "The prospective ramifications and subjective concern regarding the consequences of being issued a counseling memorandum, without supporting evidence, is insufficient to raise an issue of fact on whether the memorandum amounted to an adverse employment action." *Sanossian v. Valley Stream Cent. High Sch. Dist.*, No. 16 Civ. 4697 (JMA) (AYS), 2016 U.S. DIST. LEXIS 28343 at *42 (E.D.N.Y. February 16,

2022); *Carmellino v. District 20 of New York City Dept. of Educ.,* No. 03 Civ. 5942 (PKC), 2006 U.S. Dist. LEXIS 63705, at *48 (S.D.N.Y. Sept. 6, 2006) (rejecting the plaintiff's argument that negative letters placed in her file constituted an adverse employment action since they created a permanent record that, according to her belief, would prevent another school from hiring her); *See also, Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568-70 (2d Cir. 2011) (nine employment acts, including a counseling memo do not amount to adverse employment action in case alleging retaliation; *Eustache v. Home Depot USA, Inc.*, No. 13-CV-42L (SJF)(AKT), 2014 U.S. Dist. LEXIS 122912, 2014 WL 4374588, at *33 (E.D.N.Y. Sept. 2, 2014) (counseling memo does not amount to retaliation in case alleging retaliation).

## POINT V

### THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED

In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.  *See e.g., Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473 (1961).  For the reasons set forth above, plaintiff cannot establish individual liability on the part of any of the individually named defendants.

## POINT VI

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As set forth above, plaintiff's rights under the Constitution have not been violated. Additionally, the Individual Defendants are entitled to qualified immunity because, even if plaintiff could demonstrate a constitutional violation—which she cannot—voicing one's opinion about her current work environment is not a "clearly established" First Amendment right such

that it "would be clear" to the Individual Defendants that their "conduct was unlawful." Accordingly, the Individual Defendants are entitled to qualified immunity on plaintiff's constitutional claims regardless of whether this Court ultimately determines that plaintiff's constitutional rights were violated. *See Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995).

**POINT VII**

**PLAINTIFF'S FAMILY MEDICAL LEAVE ACT ("FMLA") CLAIMS ARE WITHOUT MERIT**

"FMLA claims come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).  To succeed on a claim of FMLA interference, a plaintiff is required to establish: "(i) that she is an eligible employee under the FMLA (ii) that defendant is an employer as defined by the FMLA; (iii) that she was entitled to leave under the FMLA; (iv) that she gave notice to the defendant of her intention to take leave; and (v) that she was denied benefits to which she was entitled under the FMLA."  *Ziccarelli v. N.Y. Univ. Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017) (quoting *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004)). "[W]hatever the nature of the alleged interference, a plaintiff can establish a violation of the Act *only* if the employer's actions 'ultimately result in the denial of a benefit under the FMLA.'"  *Stuart v. T-Mobile USA, Inc.*, No. 14 Civ. 4252 (JMF), 2015 U.S. Dist. LEXIS 106155, 2015 WL 4760184, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 2015 WL 1915641, at *14 (D. Conn. 2015)).

Plaintiff complains in the Amended Complaint and in her deposition testimony that defendants interfered with and denied her ability to take FMLA leave to care for her child who has been "diagnosed with severe and superimposed allergic atopic and contact dermatitis."

Ex. "A," at ¶¶ 127-128; Ex. "B" at 294:7-295:17. Plaintiff is incorrect. The evidence establishes that on October 15, 2018, plaintiff submitted her completed FMLA paperwork to take care of her son from "10/15 thru 10/26." Defs. 56.1 at ¶ 136. On October 30, 2018, plaintiff's leave request was retroactively approved. *Id*. at ¶ 138. On November 8, 2018, plaintiff again notified HR that she planned to be out on FMLA leave on "11/13 and 11/14." In response, HR requested clarification regarding the frequency/duration of plaintiff's requests for FMLA intermittent leave, finding the absences described "as 1 - 4 times per 5 - 180 weeks for 1 - 2 months" as requiring further clarification. *Id*. at ¶ 139. To the extent plaintiff considers the request for additional information as interference, the regulations provide that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). Regardless, once plaintiff provided the additional FMLA paperwork on January 18, 2019, her FMLA leave was retroactively approved on February 15, 2019, thus plaintiff cannot establish a FMLA interference claim. Defs. 56.1 at ¶ 140.

To establish a prima facie case of FMLA retaliation, a plaintiff must show that: "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* (citation omitted). The plaintiff raises an inference of retaliatory intent if she demonstrates that exercising her rights under the FMLA was used as a "negative factor" in the defendant's employment actions. *Woods*, 864 F.3d at 169 (citation omitted). The temporal proximity of events may give rise to such an inference but is insufficient by itself to defeat summary judgment at the pretext stage. *Bentley v. AutoZoners, LLC,* 935 F.3d 76, 90 (2d Cir. 2019) (Title VII retaliation. *Graziadio v. Culinary*

*Inst. of Am.,* 817 F.3d 415, 431 (2d Cir. 2016)("Temporal proximity, together with other evidence such as inconsistent or implausible employer explanations, may defeat summary judgment") (citation omitted).

Here, for the reasons set forth in Point III above, plaintiff is unable to establish an inference of retaliatory animus as there is no causal connection between her use of FMLA leave and any alleged adverse employment action.

## POINT VIII

### PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIMS FAIL

For the reasons set forth above, there is no evidence that plaintiff's employment conditions were so intolerable that plaintiff had no other recourse than to resign or retire from her employment at CHS.  *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) ("hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.").

## POINT IX

### PLAINTIFF'S N.Y. LABOR LAW 740 CLAIMS ARE WITHOUT MERIT

For the reasons outlined above, plaintiff's claim under New York Labor Law cannot be established in this matter because plaintiff cannot establish a causal connection between his reported complaints and any alleged adverse employment action.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment to defendants on all of plaintiff's claims, dismiss this action in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              March 4, 2022

                                 Hon. Sylvia O. Hinds-Radix
                                 Corporation Counsel of the
                                 City of New York
                                 Attorney for Defendants
                                 100 Church Street, Room 2-124
                                 New York, New York 10007
                                 (212) 356-2461
                                 dcanfiel@law.nyc.gov

                              By:    ECF    /s/  _____
                                        DONNA A. CANFIELD
                                        Assistant Corporation Counsel