UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...........................................................................................X

MELISSA KAYE,

         PLAINTIFF,

 -against-

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION;
ELIZABETH FORD; PATRICIA YANG; ABHISHEK JAIN; and
JONATHAN WANGEL (said names being fictitious, the persons
intended being those who aided and abetted the unlawful
conduct of the named Defendants),

   18-cv-12137
   (JPC)(JLC)

         DEFENDANTS.
...........................................................................................X

## NOTICE OF MOTION FOR CHARGING LIEN

PLEASE TAKE NOTICE that Special Hagan, Esq., the previous attorney of record for Plaintiff, MELISSA KAYE, pursuant to Local Civil Rule 1.4 and the Order of the Court dated June 29, 2022 (ECF Dkt. 285), moves this Court to Set an Order for a Charging Lien. The following are attached in further support of the application herein: Plaintiff's retainer agreement; invoices to Plaintiff; emails to Plaintiff of charging lien and attempts to serve Plaintiff notifying her of a charging lien; correspondence and email to Plaintiff's current counsel that acknowledged receipt of the notice of charging lien; correspondence and email to Defense Counsel Donna Canfield, Esq of Counsel's charging lien; and Plaintiff's invoices for legal fees incurred in this matter.

Dated:  Queens, New York
     July 8, 2022

1

Respectfully submitted,

/s/
_____
LAW OFFICES OF SPECIAL HAGAN
88-08 Justice Avenue Apt. 16i
Elmhurst, New York 11373

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
....................................................................................X
MELISSA KAYE,

                      PLAINTIFF,

          -against-                                AFFIRMATION IN
                                                          SUPPORT OF MOTION FOR

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION;    A CHARGING LIEN
ELIZABETH FORD; PATRICIA YANG; ABHISHEK JAIN; and
JONATHAN WANGEL (said names being fictitious, the persons    **18-cv-12137**
intended being those who aided and abetted the unlawful                    **(JPC)(JLC)**
conduct of the named Defendants),

                                                   DEFENDANTS.
....................................................................................X

      SPECIAL HAGAN, an attorney duly admitted to practice law before the United States District Court, Southern District of New York, as well as former attorney for Plaintiff, Melissa Kaye, herein affirms the following to be true under the penalties of perjury.

1. I am fully familiar with the facts and circumstances regarding the above captioned case as I was the sole attorney retained to litigate the matter from December 2018 until I was relieved as Counsel by Plaintiff and the Court on June 28, 2022.

2. Accordingly, I submit this affirmation in support of my application for an Order setting a Charging Lien and thereby permitting the Court to enforce my contractual rights vis a vis the Plaintiff's potential recovery in this matter as laid out in Paragraph VII of the parties' retainer, written and verbal agreements.

3. I provided services to Plaintiff between October 10, 2018 and December 24, 2018 without a retainer and without compensation beyond her initial consultation fee of $250.

4. I was eventually retained by Plaintiff on December 24, 2018. At that time, I presented

3

Plaintiff with a proposed litigation budget based on the taking of 3 depositions, the terms of the representation were based on the litigation budget as proposed and estimated costs of $33,000.  **(Exhibit 1: Plaintiff's Retainer Agreement)**

5. Accordingly, Plaintiff paid a retainer of $10,000 upon execution of the aforementioned retainer.

6. Between December 2018 and February 2020, I provided services to Plaintiff and incurred costs without additional remuneration.

7. In or around February 2020, Plaintiff began to change the terms of the agreement.

8. At that time, Plaintiff resigned from her job against my advice.  Also since she wanted to take additional depositions, beyond those listed in the litigation budget, I told her that she would have to cover more of the fees and costs associated with the case.

9. Plaintiff insisted that 9 people be deposed as opposed to the 3 people to which we had originally agreed.

10. Consistent with Paragraph VII of the retainer, our verbal discussions and emails, in or around February 25, 2020, I billed Plaintiff for costs and legal fees at a rate of $350 an hour.  At that time Plaintiff paid those fees pursuant to our written email correspondence and verbal agreements. **(Exhibit 2:  February 25, 2020 Invoice)**

11. At that time, Plaintiff had me drafting any number of letters and documents, which far exceeded the scope of my representation.  I acquiesced based on Plaintiff's representations that she did not want to hurt her case in any written correspondence. At that time, Plaintiff seemed bent on assessing my intellectual acumen and making me her de facto secretary.

4

12. In or around September 2020, I began to experience problems with my health. At that time, as I shared with Plaintiff, I began to have problems with my vision, conjunctivitis debilitating migraines and other forms of respiratory distress. Also at that time, I began to lose noticeable amounts of weight without any plausible explanation. Plaintiff was on notice about my declining health at that time.

13. Throughout my representation of Plaintiff, we spoke numerous times a week on the phone, for which I never billed. We also exchanged copious amounts of emails and texts both directly and indirectly related to her case.

14. Between October 2020 and December 2020, I continued to experience various medical complications, including but not limited to clotting in my leg, intermittent loss of vision, debilitating migraines and an inability to walk. Again Plaintiff was on notice of each of these ailments; and at that time she suggested that I seek medical attention. Despite these limitations, we continued to work and prepare for discovery in this matter.

15. In or around January 5, 2021, my symptoms became so pronounced that I was unable to comply with the Court's deadline in this case. At that time, Plaintiff insisted that I go to the hospital and get tested for COVID.

16. I took Plaintiff's advice, and on that night, I went to the hospital to get tested and to be treated. When I arrived at triage, I learned that they would not be able to do anything for me until the next day. Accordingly, I went to a testing site the following morning; this was after I had experienced a mild stroke the night before. Upon administration of the test, I would learn that I had contracted COVID.

17. At the testing site, I was strongly advised to go to the hospital. Instead: I went home; called

Plaintiff and all of my other clients; and contacted the Court in all of my cases and requested a 60-day stay.

18. The judges in all of my pending matters at that time granted my request, and I used the 60 days to recover. Unbeknownst to me at the time, I would experience long-haul symptoms, including but not limited to: ongoing weight and hair loss; ongoing respiratory complications; persistent fatigue; appetite loss; and other neurological issues.

19. Plaintiff was aware that I requested a 60-day stay in all of my cases in January 2021. This stay took place before the bulk of the depositions in this matter took place. At the end of the stay, Plaintiff did not express to me that she was dissatisfied with my representation.

20. Instead, despite being fully aware of my long-haul COVID status, Plaintiff increased her demands.

21. In fact, the bulk of the depositions in this matter were taken after the stay and while I continued to experience long haul COVID, again of which Plaintiff was fully aware.

22. At the end of the 12 depositions in this matter, again Plaintiff did not express any concerns or dissatisfaction about my performance.

23. At the conclusion of discovery, Defendants submitted their motion for summary judgment.

24. During the pendency of the response, I expressed to Plaintiff that I may not be able to comply with the Court's deadlines. I also expressed my concern that due to the acrimonious relationship I had with opposing counsel and the Court, that she may want to obtain other counsel to file her opposition.

25. Plaintiff resisted that suggestion, in kind I submitted additional invoices for the deposition costs associated with her case. At that time, I told Plaintiff that she must pay for the

billable hours that have accrued in this case. At that time she agreed again and we proceeded accordingly.

26. Between February 2022 and May 2022, Plaintiff and I exchanged emails about outstanding legal fees and expenses. **(Exhibit 3: May 26, 2022 Invoice for Outstanding Fees)**

27. Plaintiff also insisted on only paying the costs of the depositions. Due to the volume of work involved I told her that this would be unfair and eventually Plaintiff acquiesced in writing.

28. Plaintiff continued to withhold payment of the remaining $5,000 in deposition costs, which was originally invoiced in February 2022, until the Court began to accept her submission in opposition to Defendants' motion for summary judgment.

29. Plaintiff also insisted on reviewing the submission. Instead of just allowing Plaintiff to review the submissions, I requested that she provide me with her comments on Defendants' Rule 56.1 Statement.

30. Instead of complying with my request, Plaintiff sent two separate emails with documents that did not have any responses or comments.

31. I nevertheless proceeded to work on Plaintiff's opposition, but did not raise any concerns with her until it came time for her to approve her declaration in further opposition to Defendants' motion.

32. At that time, I requested that she make revisions and correct already existing errors to the document. I explained to her that the declaration was not a complete recitation of the facts, but was meant to fill in the gaps in discovery and to clarify points of contention.

33. Instead of complying with my request, under the premise that there were substantive

7

errors, Plaintiff exponentially increased the length of the declaration so that it read like an Amended Complaint. After six drafts of the same document and my insistence that we needed to meet the Court's deadlines, I submitted the declaration with a cut and pasted copy of Plaintiff's signature. To be clear, before I made the submission I insisted on Plaintiff's consent, to which she emailed.

34. At that time, I explained to Plaintiff that this needed to be done because she had continued to change the document and I could not rely on her to provide it to me without any substantive changes. I also explained to her that I needed for the document to remain the same so that I could reference the paragraphs in the other parts of the opposition. Up until I made the final submission, Plaintiff did as she saw fit and continued to change the document.

35. At the end of the exercise, there were at least 6 drafts of the declaration, which clearly evidenced Plaintiff's intent to draft an amended complaint without paying me for any additional services.

36. Due to Plaintiff's numerous changes to the documents and my ongoing health issues, I was unable to submit the entire opposition at the same time.

37. In or around May 26, 2022 I provided Plaintiff with another invoice and explained to her that I could not continue to do this volume of work without remuneration, that due to the size of the submission with over 176 exhibits I would expend a tremendous amount of time money to produce courtesy copies. Again, Plaintiff responded that she would pay the invoice, which did not cover the actual costs or fees associated with the summary judgment motion.

38. In or around May 27, 2022, I continued to work on Plaintiff's Rule 56.1 Statement and intermittently worked on her memorandum of law in opposition.

39. In or around June 11, 2022 after the non-mandatory Rule 56.1 Statement was rejected by the Court, I fully submitted a declaration with exhibits and a memorandum of law in opposition to Defendants' motion for summary judgment.

40. Since I was tied up with other work, also on June 11, 2022: I sent Plaintiff an email with the complete opposition; updated her on the status of her case and requested for the third time, written confirmation about her plan to address the outstanding legal fees in this matter.

41. Instead of a response, for the first time Plaintiff expressed concerns about my performance and notified the Court that she sought to obtain new counsel.

42. On the same day, the Court scheduled a conference based on the premise that Plaintiff would be obtaining new counsel.

43. Subsequent to the Court's order I sought leave to withdraw from the case and to file for liens in this matter. I later withdrew this application without prejudice based on the outcome of the hearing on June 28, 2022.

44. At that time, even though I had not expressed a desire to withdraw as Counsel, the Court based on Plaintiff's representations removed me from the case.  It was also at that time that the Court accepted my submission of Plaintiff's declaration, exhibits and memorandum of law in opposition to Defendants' motion for summary judgment.

THE LAW OFFICES OF SPECIAL HAGAN IS ENTITLED TO A
<u>CHARGING LIEN</u>

45. A Charging Lien is a Common Law device used by the Courts for attorneys' protection

9

against the swindling and chicanery of their clients, by disabling them from receiving the fruits of recoveries without paying for the valuable services by which recoveries are procured. Schick v. Invex, 215 B.R. 13 (U.S. Bankr. Ct. S.D. 1997) Accordingly, a charging lien gives an attorney equitable ownership interests in the client's cause of action and ensures that the attorney can collect her fee from a fund the attorney has created and obtained on behalf of the client. (Settlement Offer or Monetary Verdict N.Y. McKinney's Judiciary Law § 475)

46. Under New York Law, the attorney would have a charging lien against any recovery or settlement if the fee has not yet been paid for her services and disbursements. People v. Keefe, 50 N.Y.2nd 149, 428 N.Y.S. 2nd 446, 405 N.E.2nd 1012, (1980)

47. The prerequisites for the creation of a charging lien are that, as a result of an attorney's efforts: (1) the client must have filed a lawsuit; (2) which can result in proceeds; (3) payable to or for the benefit of the client. N.Y. McKinney's Judiciary law § 475. In the matter herein, it is undisputed that these prerequisites have been met.

48. As a result of the tireless work put in on this matter, as per Paragraph VII of the retainer agreement I am entitled to 1/4th of any settlement reached in this matter along with the accrued attorney's fees should this case settle without going to trial.

49. Further, I respectfully submit that I was discharged without cause since the Court accepted my opposition to Defendants' motion for summary judgment, and since I completed all of the work required on this case from its inception to summary judgment.

50. Accordingly, I served notice of my charging lien on Defense Counsel; Plaintiff's current lawyer and Plaintiff. **(See Exhibits 4 through 6)**

10

51. If in fact this matter is not resolved in Plaintiff's favor either via settlement or at trial, I request that I be compensated on a quantum meruit basis along with such other and further relief as this Court may deem fit. In order to facilitate that process, I have attached a copy of the invoice of outstanding fees owed by Plaintiff to date. **(Exhibit 3)**

52. As defined, quantum meruit means "as much as he deserves" and is a method typically utilized by the Courts by calculating the number of hours worked multiplied by a reasonable hourly rate. " In fixing an award of legal fees in quantum meruit, the Court should consider evidence of the time and skill required in that case, the complexity of the matter, the attorney's experience, ability and reputation, the client's benefit from the services and the fee usually charged by other attorneys for similar services. Padilla v. Sansivieri, 31 A.D. 3d 64 (2nd Dept. 2006)

53. Therefore I respectfully submit that should the matter be settled or a verdict reached, I would have a charging lien based upon the total amount of hours that were dedicated to the litigation of this matter up to the date that I was relieved, which was on June 28, 2022. As previously mentioned, the attorney fee sum does not include the costs of the depositions taken in this matter, since Plaintiff already made payments to address these in full and accordingly these costs are not at issue.

WHEREFORE, I, Special Hagan, respectfully request an Order setting a Charging lien as indicated supra.

Dated:      Elmhurst, New York
            July 8, 2022

_____/s/_____
Special Hagan, Esq.